**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

THESLET BENOIR and CLEMENE
BASTIEN, a married couple; and EBEN-EZER
HAITIAN FOOD TRUCK LLC,

        *Plaintiffs*,

v.

TOWN OF PARKSLEY, VIRGINIA; and
HENRY NICHOLSON, in his official and
individual capacities,

        *Defendants*.

Civil Case No. _____

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

---

Plaintiffs Theslet Benoir, Clemene Bastien, and Eben-Ezer Haitian Food Truck LLC, by and through their undersigned counsel, hereby file this lawsuit and sue Defendants Town of Parksley, Virginia, and Henry Nicholson, in his official and individual capacities, as follows:

## INTRODUCTION

1.      This civil-rights lawsuit seeks to vindicate the rights of Plaintiffs Theslet Benoir, Clemene Bastien, and their business, Eben-Ezer Haitian Food Truck LLC. Theslet and Clemene are a married couple that emigrated from Haiti over a decade ago and began life anew on Virginia's Eastern Shore, eventually settling in the Town of Parksley. In May 2023, they obtained their town's first-ever food truck permit, and in June, they opened the town's first-ever food truck, which they operate on their own private property next to the store that they already own. Little did they know that this would outrage Town Councilmember Nicholson and some of his friends in the town's government.

2.      First, Town Councilmember Henry Nicholson engaged in a pattern of abusive conduct. Shortly after Plaintiffs began operating their food truck, Nicholson marched over to their property and berated Theslet and Clemene for attempting to compete with nearby restaurants with which he has close relationships. When Nicholson saw that a delivery truck was arriving, he used his car to physically block the delivery truck from delivering products to the food truck. While doing so, he screamed at Clemene, in front of witnesses, to: "Go back to your own country!" Nicholson also trespassed on Theslet's and Clemene's property and cut their food truck's water line, resulting in both damage to their equipment and over a thousand dollars in food spoilage, while claiming that his position as a town councilmember provided him with the authority to do so.

3.      When Nicholson's attempts to intimidate Theslet and Clemene failed, he persuaded his fellow town councilmembers to pass a food truck ban on October 9, 2023. But when they did,

Parksley's mayor publicly stated that because the town had sold Theslet and Clemene a one-year food truck permit, the town did not intend to enforce the new ban until the permit expired.

4.      Second, Parksley's town government unconstitutionally retaliated against Theslet and Clemene for daring to stand up for themselves. Theslet and Clemene spoke with attorneys, and on November 2, 2023, a letter was sent on their behalf to the town government in the hope that the town might repeal the ban before Plaintiffs' food truck permit expired. The day after the letter was circulated to the mayor and town council, the town's attorney mailed a letter to Clemene and Theslet. The letter from the town's attorney completely changed the town council's official position from the one announced by the town's mayor. The town attorney's letter said that Clemene and Theslet must immediately cease and desist operating their food truck and that they had already committed misdemeanor crimes each time they had operated the food truck. According to the letter, each past offense of operating the food truck was separately punishable by up to 30 days in jail and fines. Terrified, Theslet and Clemene gave in to the letter's demands and have refrained from operating their food truck. Their speech has also been chilled.

5.      The string of abuses that Theslet and Clemene have suffered is not just outrageous—it is unconstitutional. Under the Fourth and Fourteenth Amendments, local legislators cannot take the law into their own hands, damaging private property and shutting off essential utilities in the process. And the First Amendment protects individuals from government retaliation for consulting with attorneys to petition for a change in the law. In their attempts to prevent Theslet and Clemene from operating their food truck, Nicholson and Parksley have violated these constitutional mandates.

## JURISDICTION AND VENUE

6.      Plaintiffs are suing under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. § 2201, and Virginia tort law.

7.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331, civil-rights jurisdiction under 28 U.S.C. § 1343, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

8.      Venue lies in this Court under 28 U.S.C. § 1391(b)(2) because, as described below, the events giving rise to the claims in this action occurred in Parksley, Virginia, which is located within this Court's district.

## PARTIES

9.      Plaintiff Theslet Benoir is a United States citizen and resides in the Town of Parksley. He is the co-owner and registered agent of Eben-Ezer Food Truck LLC.

10.     Plaintiff Clemene Bastien is a United States permanent resident and resides in the Town of Parksley. She is the other co-owner of Eben-Ezer Food Truck LLC.

11.     Plaintiff Eben-Ezer Haitian Food Truck LLC is a limited liability company incorporated under the laws of the Commonwealth of Virginia and located in the Town of Parksley.

12.     Defendant Town of Parksley is a local government organized under the laws of the Commonwealth of Virginia.

13.     Defendant Henry Nicholson is a Town Councilmember of the Town of Parksley. He is sued in both his official and individual capacities.

## STATEMENT OF FACTS

**Theslet and Clemene Come to the United States to Live Their American Dream**

14.     Theslet Benoir and Clemene Bastien, a married couple, immigrated to the United States from Haiti in 2009, seeking (and receiving) asylum.

15.     In the years since they arrived in America, Theslet has become a United States citizen, and Clemene is a lawful permanent resident.

16.     Like many other Haitian immigrants, Theslet and Clemene began life anew in Virginia's Eastern Shore, and in 2018 they moved to the Town of Parksley.

17.     Parksley is a small town. Parksley has approximately four brick-and-mortar restaurants.

18.     After moving to Parksley, Theslet and Clemene purchased land in the town's commercial district at 24312 Bennett Street, Parksley, VA 23421, and opened a brick-and-mortar store in 2019. That store, the Eben-Ezer Variety Market, sells groceries, home goods, and other merchandise that serves the needs of the Eastern Shore's Haitian population.

**Theslet and Clemene Expand Their Entrepreneurial Operations by Opening the Eben-Ezer Haitian Food Truck**

19.     In early 2023, Theslet and Clemene decided to expand their business ventures in Parksley by opening the town's first-ever food truck through Plaintiff Eben-Ezer Haitian Food Truck LLC.

20.     Plaintiffs possess all the necessary licenses and meet all applicable requirements to operate a food truck on their private property in the Commonwealth of Virginia and in Accomack County.

21.     Before issuing Theslet and Clemene the requisite state-level permits to operate the Eben-Ezer Haitian Food Truck, the Virginia Department of Health inspected the food truck, which the truck passed.

22.     In May 2023, Theslet and Clemene paid the Town of Parksley $30 to obtain a one-year business license to operate the Eben-Ezer Haitian Food Truck in the town.

23.     As Parksley is a small town that had not previously had a food truck, this caused substantial conversation among local officials.

24.     Parksley officials understood that the license was to operate a food truck, and the town government decided to issue the license to Plaintiffs.

25.     The one-year license from Parksley clearly states that it was issued to "Eben-Ezer Haitian Food Truck." It was issued on May 14, 2023, by the Town of Parksley Clerk.

26.     After receiving their license, Theslet and Clemene parked the food truck on their own private property at 24312 Bennett Street and began selling meals from the food truck in June.

27.     Theslet and Clemene have never operated their food truck at a location other than their own private property at 24312 Bennett Street.

28.     Prior to the retaliation described below, Parksley officials never told Theslet and Clemene that operating a food truck in Parksley violated the town's zoning code.

29.     Prior to the retaliation described below, Parksley officials stated that the town had no restrictions limiting food trucks whatsoever.

**Councilmember Nicholson Attempts to Drive the Food Truck out of Business**

30.     Defendant Henry Nicholson is a member of the Parksley Town Council.

31.     Nicholson owns Henry's Appliances, which is a business located at 24262 Bennett Street, Parksley, VA 23421.

32.     Upon information and belief, Henry's Appliances derives revenue from selling appliances to Parksley's restaurants and servicing the appliances the restaurants already own.

33.     Upon information and belief, Nicholson has close personal connections to the restaurants. These include close personal connections to the owners of restaurants located near Plaintiffs' property.

34.     On June 16, 2023, Nicholson walked over to Plaintiffs' property at 24312 Bennett Street and began berating Theslet and Clemene for opening their food truck.

35.     While confronting Theslet and Clemene on June 16, Nicholson claimed that competition from the food truck would negatively impact the profitability of Parksley's restaurants and Nicholson's business.

36.     Later that day, Nicholson cut the food truck's water line.

37.     The equipment that Nicholson cut needed to be replaced.

38.     By incapacitating the food truck, Nicholson caused over one-thousand dollars of food spoilage.

39.     Nicholson is not a member of law enforcement.

40.     Nicholson claimed that his position as a town councilmember gave him the authority to cut the water line.

41.     Nicholson's position as a town councilmember did not give him the authority to cut the water line.

42.     There was no legitimate reason to cut the water line.

43.     Even if, *arguendo*, there had been a legitimate reason to cut a water line, Nicholson is not authorized to be the one to do so.

44.     Even if, *arguendo*, there been a legitimate reason to cut a water line, Nicholson is not authorized to direct someone to do so.

45.     The food truck was parked on private property at the time when Nicholson cut its water line.

46.     When Nicholson entered Plaintiffs' private property, he did so without permission.

47.     When Nicholson entered Plaintiffs' private property, he did so without invitation.

48.     When Nicholson entered Plaintiffs' private property, he did so without a warrant.

49.     When Nicholson entered Plaintiffs' private property, he did so without any lawful right to do so.

50.     Nicholson's entry onto Plaintiffs' private property was unlawful.

51.     Nicholson falsely claimed that the food truck's water line was illegal, so Clemene immediately drove to the Accomack County Health Department. The Accomack County Health Department's officials assured Clemene that the food truck's water line was perfectly legal and should not have been cut.

52.     After the food truck's water line was severed, state and county government officials inspected the area due to problems with the sewers that Nicholson falsely claimed were caused by the food truck. All found that the problems alleged by Nicholson were completely unrelated to the food truck.

53.     Before the food truck's water line was severed, Theslet's and Clemene's employees were in the process of preparing food, which cost approximately $1,300.

54.     Because the food truck could not operate without a functional water line, the food within the food truck could not be cooked or sold.  As a result, the food spoiled. This cost the Plaintiffs approximately $1,300 in spoilage, in addition to the cost to replace the equipment that Nicholson had severed.

55.     But Nicholson was not through. The next day, June 17, he returned to 24312 Bennett Street—this time to prevent a box truck from delivering groceries to the food truck.

56.     When the driver of the box truck began offloading its goods, Nicholson commanded the driver not to complete his delivery.

57.     Clemene, who was present, confronted Nicholson.

58.  Nicholson was enraged.

59.  Nicholson yelled at Clemene: "Go back to your own country!"

60.  Clemene called the police.

61.  When the police arrived, Nicholson falsely told the responding officers that Clemene did not have the proper licenses and permits to operate the Eben-Ezer Haitian Food Truck.

62.  Clemene showed the officers her state, county, and local permits and licenses that proved she was, in fact, allowed to operate a food truck in Parksley.

63.  The officers informed Nicholson that the food truck was perfectly legal.

64.  The officers informed Nicholson that they did not intend to shut the food truck down.

65.  In front of witnesses, Nicholson told the police officers that he had cut the food truck's water line because he considered the food truck's activities to be illegal.

66.  The police officers found no illegal conduct by any of the Plaintiffs or their food truck.

67.  The only illegal conduct found by the police officers was by Nicholson, and they instructed Nicholson to leave the premises.

68.  Nicholson told the police officers, in front of witnesses, that his position as a town councilmember gave him the authority to cut the food truck's water line.

69.  The police officers instructed Nicholson, in front of witnesses, that his position as a town councilmember did not give him the authority to cut the food truck's water line.

70.  The police officers expressly instructed Nicholson, in front of witnesses, that he did not have authority to cut the water line and should not have done so.

9

71.     In response, Nicholson became hostile to the police officers.

72.     When Nicholson realized that the police would not do his bidding, he walked to his nearby car, drove it to 24312 Bennett Street, and parked it directly in front of the Eben-Ezer Haitian Variety Market's front door. He then exited his car and left.

73.     Upon information and belief, Nicholson parked his car in front of the market to block pedestrians from seeing the storefront and to make it more difficult for customers to enter the store.

74.     Nicholson refused to move his car.

75.     This made it more difficult for customers to enter the store.

76.     Eventually, the police had to have someone else move Nicholson's car.

**Clemene Obtains Two Protective Orders Against Councilmember Nicholson**

77.     Councilmember Nicholson's outrageous behavior on June 16 and 17 scared Clemene.

78.     Clemene feared that, so long as she and Theslet operated the Eben-Ezer Haitian Food Truck, Nicholson would continue to pose a threat to her person and her property by interfering with the food truck's operations.

79.     On June 17, Clemene secured an emergency protective order against Nicholson from the Accomack County General District Court.

80.     The June 17 emergency protective order expired on its own terms on June 20, 2023.

81.     On June 21, Clemene secured a preliminary protective order against Nicholson from the Accomack County General District Court.

82.     The June 21 preliminary protective order commanded Nicholson to have "no contact of any kind" with Clemene.

83.     The June 21 preliminary protective order commanded Nicholson to have "no contact of any kind with the family or household members" of Clemene—including Theslet.

84.     The June 21 preliminary protective order provided for no exceptions to the above prohibitions.

85.     The June 21 preliminary protective order has also expired.

**Parksley Passes a Sweeping Food Truck Ban to Get Rid of Plaintiffs' Food Truck**

86.     On September 11, 2023, the Parksley Town Council held a public hearing to discuss a proposed near-total ban on food trucks.

87.     Councilmember Nicholson was the councilmember pushing the town council to enact the ban.

88.     Prior to this point, the position of Parksley's town council and other government officials was that food trucks were completely allowed in Parksley.

89.     At the September 11 meeting, Town of Parksley Mayor Frank Russell explained that the food truck ban was enacted to entice new businesses by protecting existing ones.

90.     The practical effect of the ban would be to shut down Plaintiffs' new food truck business.

91.     The ban protected certain businesses in Parksley at the expense of Plaintiffs' new food truck business.

92.     Councilmember Ricky Taylor claimed, "We want to be able to control the food trucks."

93.     When Councilmember Taylor made this statement, he was referring to Plaintiffs' new food truck business.

94.     Not all Parksley government officials agreed with severely restricting Plaintiffs' economic rights. Councilmember Sam Welch felt that the town was preparing to "target[] one business type, which . . . is wrong."

95.     Nevertheless, at a public meeting on October 9, the Parksley Town Council passed Ordinance 23-01—a sweeping food truck ban—by a vote of 3-2

96.     Councilmember Nicholson was among the three councilmembers who voted in favor of the food truck ban.

97.     The food truck ban, entitled "Ordinance Governing the Use of Mobile Truck Food Units," only allowed owners to operate food trucks during special events—in all other cases, they were forbidden.

98.     Nevertheless, Mayor Russell publicly stated at the time, including to reporters, that Parksley did not intend to enforce the food truck ban against the Eben-Ezer Haitian Food Truck until its one-year business license from the town expired in May 2024.

99.     Due to Mayor Russell's statements, Plaintiffs continued to operate their food truck in reliance on those statements.

**Theslet and Clemene Discuss Their Situation with Counsel, Who Call on Parksley to Rescind Its Food Truck Ban**

100.     After Parksley passed its food truck ban, Clemene and Theslet spoke with attorneys.

101.     As a result, a letter was sent to Parksley's mayor and town council on November 2, 2023. A true and correct copy of the letter is attached hereto as Exhibit "A."

102.     The letter was emailed to the town council's email address at 8:25 a.m. on November 2, 2023. A true and correct copy of the email is attached hereto as Exhibit "B."

103.     Fourteen minutes later, at 8:39 a.m. on November 2, 2023, Parksley's town government sent a responsive email saying that the letter had been received and forwarded to

Parksley's mayor and town council. A true and correct copy of the email is attached hereto as Exhibit "C."

104.    The next day, on November 3, 2023, Parksley's attorney mailed via U.S. mail a letter to Theslet and Clemene. True and correct copies of the envelope showing the postmark of November 3, 2023, and the letter itself are attached hereto as Exhibit "D."

105.    The letter from Parksley's attorney was received by Theslet and Clemene on November 6, 2023.

106.    The letter, entitled "Re: Your Operation of Food Truck in Parksley, VA," claimed that operating a food truck in the Town of Parksley was illegal.

107.    The letter claimed that operating any food truck in the Town of Parksley had always been illegal, even before the ban was passed.

108.    The position taken by the Town of Parksley in the letter had never been its position prior to the letter from Plaintiffs' counsel.

109.    The town attorney's letter took the new position that food trucks were illegal under the town's "longstanding" zoning code.

110.    According to Parksley's new position, as stated through its attorney, operating a food truck in the town is—and always has been—illegal under its zoning ordinances.

111.    The letter also informed Theslet and Clemene that they could be fined $250 and imprisoned in county jail for up to 30 days *for each day* they had operated their food truck—stretching all the way back to the date they first opened the food truck.

112.    The letter ends by commanding Plaintiffs to "cease operation" of the Eben-Ezer Haitian Food Truck "immediately to avoid further action related to this ongoing violation of the Town's Zoning Ordinance."

113.    Parksley's attorney misdated the letter as November 1, 2023.

114.    The envelope clearly shows that the Parksley attorney's letter was mailed out November 3, 2023.

115.    Upon information and belief, Parksley officials asked Parksley's attorney to send the letter to Theslet and Clemene in response to the November 2 letter calling on the town to repeal its October 9 food truck ban.

116.    Other than the letter that was emailed to Parksley's mayor and town council on the morning of November 2, no other event took place during the days leading up to the town's attorney's letter that would have caused the town's attorney's letter to be sent.

117.    No other event could be a plausible catalyst for the town attorney's letter to Plaintiffs aside from the November 2 letter calling on the town to repeal its October 9 food truck ban.

118.    Prior to the November 2 letter, Parksley's town government stated that it intended to allow Plaintiffs to continue operating their food truck until June 2024.

119.    Parksley's town government changed its position regarding its zoning code in response to the November 2 letter calling on the town to repeal its October 9 food truck ban.

120.    The letter from the town's attorney threatening Plaintiffs with years in jail and thousands of dollars in fines for operating a business for which they received a license from Parksley terrified Theslet and Clemene.

121.    Upon receiving the letter from the town's attorney threatening them with years in jail and thousands of dollars in fines for operating a business for which they received a license from Parksley, Plaintiffs immediately ceased operating the food truck.

122.    Plaintiffs' food truck now sits dormant next to Clemene's and Theslet's brick-and-mortar store at 24312 Bennett Street.

123.    Since receiving the letter from the town's attorney, Theslet and Clemene are afraid to air their grievances with town officials, regardless of whether the issue is the food truck ban or another issue, for fear that the Town of Parksley will jail and impose fines on them.

124.    The town council has repealed the October 9 food truck ban.

125.    Despite the October 9 food truck ban's repeal, Plaintiffs remain barred from operating their food truck business due to the change in position Parksley's government took in response to the November 2 letter.

126.    Presently, although Parksley officials claimed that they had no ordinances governing the operation of food trucks before the October 9 food truck ban was enacted, and despite the fact that the ban has since been repealed, Theslet and Clemene remain barred from operating their food truck due to the town's change in position in retaliation for the letter sent to the town on their behalf.

## INJURY TO PLAINTIFFS

127.    Plaintiffs Theslet, Clemene, and Eben-Ezer Haitian Food Truck LLC have suffered severe harm from the violations of their constitutional and common law rights.

**Damages Caused by Councilmember Nicholson**

128.    Nicholson's unwarranted and uninvited intrusion onto Theslet's and Clemene's private property at 24312 Bennett Street interfered with their right of exclusive use and possession of their property.

129.    As a result of Nicholson's intrusion onto Theslet's and Clemene's private property at 24312 Bennett Street to sever their water line, their food truck's access to an essential utility was shut off.

130.    Because of the damages caused when Nicholson cut Plaintiffs' food truck's water line, Theslet and Clemene were forced to pay a local handyman to remove the severed line and install a new one.

131.    But for Nicholson's intrusion onto Theslet's and Clemene's private property at 24312 Bennett Street to sever their water line, Plaintiffs would have continued to operate their food truck for the entire day on June 16, 2023.

132.    Being forced to close the food truck cost Plaintiffs lost profits on June 16.

133.    While the food truck was inoperable on June 16, roughly $1,300 of food that was in the process of being prepared spoiled. All this food had to be discarded.

134.    But for Nicholson's intrusion onto Theslet's and Clemene's private property at 24312 Bennett Street to sever their water line, none of the food that had to be discarded would have spoiled.

**Damages Caused by the Town Government's Retaliation**

135.    Parksley's change in position in retaliation for the November 2 letter barred Plaintiffs from operating their food truck.

136.    But for Parksley's change in position in response to the November 2 letter, Plaintiffs would have continued operating their food truck and would still be operating their food truck today.

137.    But for Parksley's change in position in response to the November 2 letter, Plaintiffs would have continued to earn profits from operating their food truck.

138.    Thus, Parksley's change in position in response to the November 2 letter caused Plaintiffs to suffer lost profits each day from November 6, 2023, to present.

139.   Parksley's change in position in response to the November 2 letter has also caused other damages to Plaintiffs' food truck business, including harm to goodwill, business relationships, and relationships with customers.

140.   Parksley's retaliatory letter sent by the town attorney has also chilled Theslet's and Clemene's speech by causing them to fear speaking out against town policies.

141.   Parksley's retaliation against Plaintiffs has also chilled the speech of other individuals, including other Americans of Haitian descent, who otherwise would have spoken out against Parksley's government.

## CLAIMS FOR RELIEF

### Count I

### 42 U.S.C. § 1983—Fourth and Fourteenth Amendments

### (Illegal Search and Seizure Claim Against Nicholson Personally)

142.   Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

143.   The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures of their persons, houses, papers, and effects.

144.   These Fourth Amendment guarantees are incorporated against the states through the Fourteenth Amendment.

145.   Nicholson—a town councilmember—entered Theslet's and Clemene's private property at 24312 Bennett Street, searched their food truck, and seized its water line (including by destroying it) on June 16, 2023.

146.   When Nicholson performed these acts on and to Plaintiffs' property, Nicholson claimed to be acting under color of law as a town councilmember.

147.    Not only did Nicholson claim this at the time, but Nicholson subsequently stated that when he had performed these acts on and to Plaintiffs' property, he had been acting under color of law as a town councilmember.

148.    When Nicholson did these acts on and to Plaintiffs' property, Nicholson was acting outside the scope of his authority as a town councilmember.

149.    When Nicholson entered 24312 Bennett Street on June 16, Theslet and Clemene had actual possession of the land.

150.    Nicholson did not have a warrant.

151.    Nor could Nicholson have a warrant. Nicholson is a local legislator—not a law enforcement officer.

152.    No exception to the warrant requirement applied.

153.    Nicholson did not have permission to enter 24312 Bennett Street.

154.    Nicholson did not have permission to conduct a search at 24312 Bennett Street.

155.    Nicholson did not have permission to seize Plaintiffs' property.

156.    Nicholson did not have permission to cut the food truck's water line.

157.    Nicholson was not invited to enter 24312 Bennett Street.

158.    Nicholson was not invited to search 24312 Bennett Street.

159.    Nicholson was not invited to seize Plaintiffs' property.

160.    Nicholson was not invited to cut the food truck's water line.

161.    Nicholson did not have any lawful reason to enter 24312 Bennett Street.

162.    Nicholson did not have any lawful reason to search 24312 Bennett Street.

163.    Nicholson did not have any lawful reason to seize Plaintiffs' property.

164.    Nicholson did not have any lawful reason to cut the food truck's water line.

165.    Nicholson's entry onto 24312 Bennett Street was unlawful.

166.    Nicholson's search at 24312 Bennett Street was unlawful.

167.    Nicholson's seizure of the food truck's water line was unlawful.

168.    Nicholson's cutting of the food truck's water line was unlawful.

169.    Nicholson claimed that his position as a town councilmember gave him the authority to do these things.

170.    Nicholson's position as a town councilmember did not give him the authority to do these things.

171.    It is clearly established that government officials can be held personally accountable for constitutional violations unless their challenged actions were within (or reasonably related to) their discretionary duties.

172.    Immunity does not apply to governmental officials operating outside the scope of their official duties.

173.    It is clearly established that legislative branch officials (like Councilmember Nicholson) have no authority—and no discretion—to personally enforce local ordinances.

174.    It is clearly established that Nicholson's actions were unconstitutional.

175.    Every reasonable government official would have had fair warning that Nicholson's actions were unconstitutional.

176.    Later that same day when Nicholson cut the water line, Accomack County government officials told Clemene that Nicholson should not have done so.

177.    Later that same day when Nicholson cut the water line, Accomack County government officials told Clemene that Nicholson had no authority to do so.

178.    Nicholson told police officers that he had cut the water line.

179.    The police officers told Nicholson that he should not have cut the water line.

180.    Nicholson told the police officers that this position as a town councilmember gave him the authority to cut the water line.

181.    The police officers told Nicholson that his position as a town councilmember did not give him the authority to cut the water line.

182.    The constitutional violations at issue here were, or reasonably should have been, obvious to Nicholson.

183.    Upon information and belief, Nicholson, acting under color of state law, used his position as a town councilmember to facilitate the commission of abusive acts that were outside the scope of his authority.

184.    Nicholson's unconstitutional search of Theslet's and Clemene's property—alongside his unconstitutional seizure of the food truck's water line—directly harmed Plaintiffs by violating their Fourth and Fourteenth Amendment rights, damaging the food truck itself, causing food spoilage, rendering the food truck inoperable until Theslet hired a local handyman to repair it, costing Plaintiffs lost profits, and damaging the food truck business's good will, business relationships, and relationships with customers.

185.    For these violations of their rights under the Fourth and Fourteenth Amendments, Plaintiffs seek declaratory relief against Nicholson.

186.    For these violations of their rights under the Fourth and Fourteenth Amendments, Plaintiffs seek monetary damages against Nicholson personally in the form of nominal damages and compensatory damages.

**Count II**

**42 U.S.C. § 1983—Fourth and Fourteenth Amendments**

**(Illegal Search and Seizure Claim Against the Town of Parksley and Against**

**Councilmember Nicholson in his Official Capacity)**

187.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

188.    The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures of their persons, houses, papers, and effects.

189.    These Fourth Amendment Guarantees are incorporated against the states through the Fourteenth Amendment.

190.    Councilmember Nicholson entered Theslet's and Clemene's private property at 24312 Bennett Street, searched their food truck, and seized its water line (including by destroying it) on June 16, 2023.

191.    When Councilmember Nicholson performed these acts on and to Plaintiffs' property, Nicholson claimed to be acting under color of law as a town councilmember.

192.    Not only did Nicholson claim this at the time, but Nicholson subsequently stated that when he had performed these acts on and to Plaintiffs' property, he had been acting under color of law as a town councilmember.

193.    When Nicholson did these acts on and to Plaintiffs' property, Nicholson was acting outside the scope of his authority as a town councilmember.

194.    Upon information and belief, Nicholson, acting under color of state law, used his position as a town councilmember to facilitate the commission of abusive acts that were outside the scope of his authority.

195.    Upon information and belief, some of Councilmember Nicholson's abusive acts were taken as part of a Parksley custom or policy whereby Councilmember Nicholson and other town officials knowingly took actions outside of the scope of their official duties against disfavored individuals while other Parksley officials chose to ignore the abuses.

196.    Councilmember Nicholson had, and continues to have, ill will towards Plaintiffs.

197.    Upon information and belief, Parksley government officials other than Councilmember Nicholson also had, and continues to have, ill will towards Plaintiffs.

198.    Councilmember Nicholson had, and continues to have, animus towards Plaintiffs.

199.    Upon information and belief, Parksley government officials other than Councilmember Nicholson also had, and continue to have, animus towards Plaintiffs.

200.    Upon information and belief, when Councilmember Nicholson performed his unconstitutional acts against Plaintiffs and their property, other Parksley government officials were aware of Councilmember Nicholson's unconstitutional acts and supported Councilmember Nicholson doing them.

201.    When Councilmember Nicholson entered 24312 Bennett Street on June 16, Theslet and Clemene had actual possession of the land.

202.    Councilmember Nicholson did not have a warrant.

203.    Nor could Councilmember Nicholson have a warrant. Councilmember Nicholson is a local legislator—not a law enforcement officer.

204.    No exception to the warrant requirement applied.

205.    Councilmember Nicholson did not have permission to enter 24312 Bennett Street.

206.    Councilmember Nicholson did not have permission to conduct a search at 24312 Bennett Street.

207.   Councilmember Nicholson did not have permission to seize Plaintiffs' property.

208.   Councilmember Nicholson did not have permission to cut the food truck's water line.

209.   Councilmember Nicholson was not invited to enter 24312 Bennett Street.

210.   Councilmember Nicholson was not invited to search 24312 Bennett Street.

211.   Councilmember Nicholson was not invited to seize Plaintiffs' property.

212.   Councilmember Nicholson was not invited to cut the food truck's water line.

213.   Councilmember Nicholson did not have any lawful reason to enter 24312 Bennett Street.

214.   Councilmember Nicholson did not have any lawful reason to search 24312 Bennett Street.

215.   Councilmember Nicholson did not have any lawful reason to seize Plaintiffs' property.

216.   Councilmember Nicholson did not have any lawful reason to cut the food truck's water line.

217.   Councilmember Nicholson's entry onto 24312 Bennett Street was unlawful.

218.   Councilmember Nicholson's search at 24312 Bennett Street was unlawful.

219.   Councilmember Nicholson's seizure of the food truck's water line was unlawful.

220.   Councilmember Nicholson's cutting of the food truck's water line was unlawful.

221.   Councilmember Nicholson claimed that his position as a town councilmember gave him the authority to do these things.

222.   Councilmember Nicholson's position as a town councilmember did not give him the authority to do these things.

223.    Later that same day when Councilmember Nicholson cut the water line, Accomack County government officials told Clemene that Councilmember Nicholson should not have done so.

224.    Later that same day when Councilmember Nicholson cut the water line, Accomack County government officials told Clemene that Councilmember Nicholson had no authority to do so.

225.    Councilmember Nicholson told police officers that he had cut the water line.

226.    The police officers told Councilmember Nicholson that he should not have cut the water line.

227.    Councilmember Nicholson told the police officers that this position as a town councilmember gave him the authority to cut the water line.

228.    The police officers told Councilmember Nicholson that his position as a town councilmember did not give him the authority to cut the water line.

229.    It is clearly established that government officials can be held personally accountable for constitutional violations unless their challenged actions were within (or reasonably related to) their discretionary duties.

230.    Immunity does not apply to governmental officials operating outside the scope of their official duties.

231.    It is clearly established that legislative branch officials (like Councilmember Nicholson) have no authority—and no discretion—to personally enforce local ordinances.

232.    It is clearly established that Nicholson's actions were unconstitutional.

233.    Every reasonable government official would have had fair warning that Nicholson's actions were unconstitutional.

234.    The constitutional violations at issue here were, or reasonably should have been, obvious to Nicholson.

235.    Upon information and belief, despite knowing that Councilmember Nicholson's actions were unconstitutional, other Parksley government officials encouraged Councilmember Nicholson to do them anyway.

236.    Upon information and belief, Councilmember Nicholson, acting under color of state law, used his position as a town councilmember to facilitate the commission of abusive acts that were outside the scope of his authority.

237.    Upon information and belief, other Parksley government officials were aware that Councilmember Nicholson was acting under color of state law and using his position as a town councilmember to facilitate the commission of abusive acts that were outside the scope of his authority, and they supported him doing so and encouraged him to do so.

238.    Councilmember Nicholson's unconstitutional search of Theslet's and Clemene's property—alongside his unconstitutional seizure of the food truck's water line—directly harmed Plaintiffs by violating their Fourth and Fourteenth Amendment rights, damaging the food truck itself, causing food spoilage, rendering the food truck inoperable until Theslet hired a local handyman to repair it, costing Plaintiffs lost profits, and damaging the food truck business's good will, business relationships, and relationships with customers.

239.    For these violations of their rights under the Fourth and Fourteenth Amendments, Plaintiffs seek declaratory relief against the Town of Parksley and Councilmember Nicholson.

240.    For these violations of their rights under the Fourth and Fourteenth Amendments, Plaintiffs seek monetary damages against the Town of Parksley and Councilmember Nicholson in his official capacity, in the form of nominal damages and compensatory damages.

**Count III**

**42 U.S.C. § 1983—Fourteenth Amendment**

**(Equal Protection Claim Against Nicholson Personally)**

241.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

242.    Nicholson has engaged in a pattern and practice of abusive conduct against Plaintiffs.

243.    When Nicholson engaged in this abusive conduct, Nicholson claimed to be acting under color of law as a town councilmember.

244.    Not only did Nicholson claim this at the time, but Nicholson subsequently stated that when he had engaged in this abusive conduct, he had been acting under color of law as a town councilmember.

245.    When Nicholson engaged in this abusive conduct, Nicholson was acting outside the scope of his authority as a town councilmember.

246.    If Plaintiffs were located in a different town within this same county, they would not have been subjected to this abusive conduct.

247.    If Plaintiffs' food truck business were located in a different part of Parksley further away from Parksley's restaurants, they would not have been subjected to this abusive conduct.

248.    If Theslet and Clemene were not of Haitian descent, they would not have been subjected to this abusive conduct.

249.    If Theslet and Clemene were not of Haitian descent, Councilmember Nicholson would not have screamed at either of them: "Go back to your own country!"

250.    Nicholson had, and continues to have, ill will towards Plaintiffs.

251.   Nicholson had, and continues to have, animus towards Plaintiffs.

252.   Plaintiffs are similarly situated to other businesses in Parksley.

253.   Plaintiffs have been treated differently by Nicholson than other businesses in Parksley.

254.   There is no constitutionally legitimate rational basis for the disparate treatment.

255.   There is no constitutionally legitimate reason at all for the disparate treatment.

256.   The disparate treatment would fail any standard of review.

257.   Plaintiffs are similarly situated to food trucks located further from Parksley's restaurants.

258.   Plaintiffs are being treated differently than food trucks located further from Parksley's restaurants.

259.   There is no constitutionally legitimate rational basis for the disparate treatment.

260.   There is no constitutionally legitimate reason at all for the disparate treatment.

261.   The disparate treatment would fail any standard of review.

262.   Plaintiffs are similarly situated to food trucks located in other towns.

263.   Because of Nicholson's acts, Plaintiffs have been treated differently than other food truck owners in other towns.

264.   There is no constitutionally legitimate rational basis for the disparate treatment.

265.   There is no constitutionally legitimate reason at all for the disparate treatment.

266.   The disparate treatment would fail any standard of review.

267.   Plaintiffs are similarly situated to Parksley business owners and businesses where the business owners are not of Haitian descent.

268.    Because of Nicholson's acts, Plaintiffs have been treated differently than other Parksley business owners because Theslet and Clemene are of Haitian descent.

269.    There is no constitutionally legitimate reason for the disparate treatment.

270.    The disparate treatment would fail any standard of review.

271.    If Plaintiffs' food truck business were located further from Parksley's restaurants, Parksley's government would not have engaged in this abusive conduct towards Plaintiffs.

272.    If Plaintiffs' food truck business were located further from Parksley's restaurants, Parksley's government would not have engaged in this unconstitutional conduct towards Plaintiffs.

273.    If Theslet and Clemene were not of Haitian descent, Parksley's town government would not have engaged in this abusive conduct towards Plaintiffs.

274.    If Theslet and Clemene were not of Haitian descent, Parksley's town government would not have engaged in this unconstitutional conduct towards Plaintiffs.

275.    Nicholson's unconstitutional conduct towards Plaintiffs has caused Plaintiffs to suffer financial harm.

276.    It is clearly established that government officials can be held financially liable for these types of constitutional violations.

277.    Every reasonable government official would have had fair warning that Nicholson's actions were unconstitutional.

278.    No immunity applies here.

279.    Later that same day when Nicholson cut the water line, Accomack County government officials told Clemene that Nicholson should not have done so.

280.    Later that same day when Nicholson cut the water line, Accomack County government officials told Clemene that Nicholson had no authority to do so.

281.    Nicholson told police officers that he had cut the water line.

282.    The police officers told Nicholson that he should not have cut the water line.

283.    Nicholson told the police officers that this position as a town councilmember gave him the authority to cut the water line.

284.    The police officers told Nicholson that his position as a town councilmember did not give him the authority to cut the water line.

285.    The constitutional violations at issue here were, or reasonably should have been, obvious to Nicholson.

286.    Nicholson's unconstitutional actions have directly harmed Plaintiffs.

287.    The financial damages inflicted on Plaintiffs by Nicholson's unconstitutional actions include damaging Plaintiffs' equipment, causing food spoilage, rendering the food truck inoperable until Theslet hired a local handyman to repair it, costing Plaintiffs lost profits, and damaging the food truck's goodwill, business relationships, and relationships with customers.

288.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek declaratory relief against Nicholson.

289.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek monetary damages against Nicholson personally in the form of nominal and compensatory damages.

**Count IV**

**42 U.S.C. § 1983—Fourteenth Amendment**

**(Equal Protection Claim Against the Town of Parksley and Against Councilmember Nicholson in his Official Capacity)**

290.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

291.    Councilmember Nicholson has engaged in a pattern and practice of abusive conduct against Plaintiffs.

292.    Upon information and belief, Councilmember Nicholson's abusive conduct was done with the knowledge and consent of other Parksley government officials.

293.    When Nicholson engaged in this abusive conduct, Nicholson claimed to be acting under color of law as a town councilmember.

294.    Not only did Nicholson claim this at the time, but Nicholson subsequently stated that when he had engaged in this abusive conduct, he had been acting under color of law as a town councilmember.

295.    When Nicholson engaged in this abusive conduct, Nicholson was acting outside the scope of his authority as a town councilmember.

296.    Upon information and belief, Nicholson, acting under color of state law, used his position as a town councilmember to facilitate the commission of abusive acts that were outside the scope of his authority.

297.    Upon information and belief, some of Councilmember Nicholson's abusive acts were taken as part of a Parksley custom or policy whereby Councilmember Nicholson and other

town officials knowingly took actions outside of the scope of their official duties against disfavored individuals while other Parksley officials chose to ignore the abuses.

298.   If Plaintiffs were located in a different town within this same county, they would not have been subjected to this abusive conduct.

299.   If Plaintiffs' food truck business were located in a part of Parksley further away from Parksley's restaurants, they would not have been subjected to this abusive conduct.

300.   If Theslet and Clemene were not of Haitian descent, they would not have been subjected to this abusive conduct.

301.   If Theslet and Clemene were not of Haitian descent, Councilmember Nicholson would not have screamed at either of them: "Go back to your own country!"

302.   Councilmember Nicholson had, and continues to have, ill will towards Plaintiffs.

303.   Upon information and belief, Councilmember Nicholson's ill will towards Plaintiffs was, and continues to be, known to other Parksley government officials.

304.   Upon information and belief, Councilmember Nicholson's ill will towards Plaintiffs was consented to by other Parksley government officials.

305.   Upon information and belief, Councilmember Nicholson's ill will towards Plaintiffs was, and continues to be, shared by other Parksley government officials.

306.   Councilmember Nicholson had, and continues to have, animus towards Plaintiffs.

307.   Upon information and belief, Councilmember Nicholson's animus towards Plaintiffs was, and continues to be, known to other Parksley government officials.

308.   Upon information and belief, Councilmember Nicholson's animus towards Plaintiffs was, and continues to be, consented to by other Parksley government officials.

31

309.    Upon information and belief, other Parksley government officials shared, and continue to share, Nicholson's animus towards Plaintiffs.

310.    Plaintiffs are similarly situated to other businesses in Parksley.

311.    Plaintiffs have been treated differently by Parksley's government officials than other businesses in Parksley.

312.    There is no constitutionally legitimate rational basis for the disparate treatment.

313.    There is no constitutionally legitimate reason at all for the disparate treatment.

314.    The disparate treatment would fail any standard of review.

315.    Plaintiffs are similarly situated to food trucks located further from Parksley's restaurants.

316.    Plaintiffs are being treated differently than food trucks located further from Parksley's restaurants.

317.    There is no constitutionally legitimate rational basis for the disparate treatment.

318.    There is no constitutionally legitimate reason at all for the disparate treatment.

319.    The disparate treatment would fail any standard of review.

320.    Plaintiffs are similarly situated to food trucks located in other towns.

321.    Because of Councilmember Nicholson's acts and the Town of Parksley's acts, Plaintiffs have been treated differently than other food truck owners in other towns.

322.    There is no constitutionally legitimate rational basis for the disparate treatment.

323.    There is no constitutionally legitimate reason at all for the disparate treatment.

324.    The disparate treatment would fail any standard of review.

325.    Plaintiffs are similarly situated to Parksley business owners and businesses where the business owners are not of Haitian descent.

326.    Because of Councilmember Nicholsons's acts, Plaintiffs have been treated differently than other Parksley business owners because Theslet and Clemene are of Haitian descent.

327.    There is no constitutionally legitimate reason for the disparate treatment.

328.    The disparate treatment would fail any standard of review.

329.    Parksley's government and Councilmember Nicholson have engaged in a pattern and practice of abusive conduct towards Plaintiffs.

330.    If Plaintiffs' food truck business were located in a different part of Parksley that is further from Parksley's restaurants, Parksley's government and Councilmember Nicholson would not have engaged in this abusive conduct towards Plaintiffs.

331.    If Theslet and Clemene were not of Haitian descent, Parksley's town government and Councilmember Nicholson would not have engaged in this abusive conduct towards Plaintiffs.

332.    The unconstitutional conduct by the Parksley's town government and Councilmember Nicholson has caused Plaintiffs to suffer financial harm.

333.    It is clearly established that government bodies and government officials can be held financially liable for these types of constitutional violations.

334.    Every reasonable government official would have had fair warning that these actions were unconstitutional.

335.    No immunity applies here.

336.    The constitutional violations at issue here were, or reasonably should have been, obvious to Councilmember Nicholson and all other Parksley government officials.

337.     Upon information and belief, some or all of the unconstitutional actions at issue here reflect a custom or policy of the Town of Parksley's government to treat Plaintiffs worse than similarly situated individuals and businesses.

338.     Upon information and belief, some of the unconstitutional actions at issue here would not have happened but for the custom or policy of the Town of Parksley's government to treat Plaintiffs worse than similarly situated individuals and businesses.

339.     Later that same day when Nicholson cut the water line, Accomack County government officials told Clemene that Councilmember Nicholson should not have done so.

340.     Later that same day when Councilmember Nicholson cut the water line, Accomack County government officials told Clemene that Councilmember Nicholson had no authority to do so.

341.     Councilmember Nicholson told police officers that he had cut the water line.

342.     The police officers told Councilmember Nicholson that he should not have cut the water line.

343.     Councilmember Nicholson told the police officers that this position as a town councilmember gave him the authority to cut the water line.

344.     The police officers told Councilmember Nicholson that his position as a town councilmember did not give him the authority to cut the water line.

345.     The unconstitutional actions by the Town of Parksley and Councilmember Nicholson have directly harmed Plaintiffs.

346.     The financial damages inflicted on Plaintiffs by these unconstitutional actions include damaging Plaintiffs' equipment, causing food spoilage, rendering the food truck

inoperable until Theslet hired a local handyman to repair it, costing Plaintiffs lost profits, and damaging the food truck's goodwill, business relationships, and relationships with customers.

347.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek declaratory relief and injunctive relief against the Town of Parksley and Councilmember Nicholson.

348.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek monetary damages against the Town of Parksley and Councilmember Nicholson in his official capacity, in the form of nominal and compensatory damages.

**Count V**

**42 U.S.C. § 1983—Fourteenth Amendment**

**(Due Process of Law Claim Against Nicholson Personally)**

349.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

350.    The Due Process of Law component of the Fourteenth Amendment to the United States Constitution limits the ability of government officials to deprive people of a property or liberty interest.

351.    The deprivation of utilities—for any appreciable period of time—is a deprivation of a property interest under the Fourteenth Amendment.

352.    When Nicholson cut Plaintiffs' food truck's water line on June 16, 2023, he did so in a manner that was unconstitutionally arbitrary.

353.    When Nicholson cut Plaintiffs' food truck's water line on June 16, 2023, he did so without following any usual procedures.

354.    Plaintiffs had permission to use the water line and to connect it to the sewer system.

355.    The permission to do this that Plaintiffs received included permission from the Accomack County government.

356.    Nicholson does not work for the Accomack County government.

357.    Nicholson does not have any authority from the Accomack County government.

358.    The Accomack County government did not give Nicholson permission to cut the water line.

359.    Plaintiffs did not give Nicholson permission to cut the water line.

360.    No one with authority to do so gave Nicholson permission to cut the water line.

361.    Nicholson was not the appropriate governmental official authorized to determine whether the water line should be cut.

362.    When Nicholson engaged in this abusive conduct, Nicholson claimed to be acting under color of law as a town councilmember.

363.    Not only did Nicholson claim this at the time, but Nicholson subsequently stated that when he had engaged in this abusive conduct, he had been acting under color of law as a town councilmember.

364.    When Nicholson engaged in this abusive conduct, Nicholson was acting outside the scope of his authority as a town councilmember.

365.    Nicholson had, and continues to have, animus towards Plaintiffs.

366.    Nicholson had, and continues to have, ill will towards Plaintiffs.

367.    Later that same day when Nicholson cut the water line, Accomack County government officials told Clemene that Nicholson should not have done so.

368.    Later that same day when Nicholson cut the water line, Accomack County government officials told Clemene that Nicholson had no authority to do so.

369.   Nicholson told police officers that he had cut the water line.

370.   The police officers told Nicholson that he should not have cut the water line.

371.   Nicholson told the police officers that this position as a town councilmember gave him the authority to cut the water line.

372.   The police officers told Nicholson that his position as a town councilmember did not give him the authority to cut the water line.

373.   Nicholson's procedural due process violation harmed Plaintiffs.

374.   Nicholson's unconstitutional acts rendered Plaintiffs' food truck inoperable.

375.   Plaintiffs were unable to restore the food truck's connection to the sewer system until they hired a local handyman to remove the damaged water line and install a new water line.

376.   Due to Nicholson's unconstitutional actions, Plaintiffs' food truck lacked access to an essential utility—a connection to the sewer system.

377.   Nicholson's unconstitutional actions damaged Plaintiffs' equipment, caused their food to spoil, cost them lost profits, and damaged their goodwill and relationships with customers.

378.   It is clearly established that government officials can be held personally accountable for constitutional violations unless their challenged actions were within or were reasonably related to their discretionary duties.

379.   It is clearly established that legislative branch officials like Nicholson have no authority—and no discretion—to personally enforce local ordinances.

380.   It is clearly established that legislative officials like Nicholson have no authority—and no discretion—to personally deprive an individual of access to essential utilities.

381.   Nicholson is not protected by any immunity, as his actions were outside the scope of his official duties.

382.    It is clearly established that denying individuals their right to due process of law as described above is a violation of the Fourteenth Amendment.

383.    Every reasonable government official would have had fair warning that Nicholson's actions were unconstitutional.

384.    The constitutional violations were obvious to Nicholson.

385.    The constitutional violations should have been obvious to Nicholson.

386.    Nicholson's unconstitutional actions directly harmed Plaintiffs by damaging their equipment, causing food spoilage, rendering the food truck inoperable until Theslet was able to hire a local handyman to repair it, and costing them lost profits, goodwill, business relationships, and relationships with customers.

387.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek declaratory relief against Nicholson.

388.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek monetary damages against Nicholson personally in the form of nominal damages and compensatory damages.

**Count VI**

**42 U.S.C. § 1983—Fourteenth Amendment**

**(Due Process of Law Claim Against the Town of Parksley and Councilmember Nicholson in his Official Capacity)**

389.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

390.    The Due Process of Law component of the Fourteenth Amendment to the United States Constitution limits the ability of government officials to deprive people of a property or liberty interest.

391.    The deprivation of utilities—for any appreciable period of time—is a deprivation of a property interest under the Fourteenth Amendment.

392.    When Councilmember Nicholson cut Plaintiffs' food truck's water line on June 16, 2023, he did so in a manner that was unconstitutionally arbitrary.

393.    When Councilmember Nicholson cut Plaintiffs' food truck's water line on June 16, 2023, he did so without following any usual procedures.

394.    Plaintiffs had permission to use the water line and to connect it to the sewer system.

395.    The permission to do this that Plaintiffs received included permission from the Accomack County government.

396.    Councilmember Nicholson does not work for the Accomack County government.

397.    Councilmember Nicholson does not have any authority from the Accomack County government.

398.    The Accomack County government did not give Councilmember Nicholson permission to cut the water line.

399.    Plaintiffs did not give Councilmember Nicholson permission to cut the water line.

400.    No one with authority to do so gave Councilmember Nicholson permission to cut the water line.

401.    Councilmember Nicholson was not the appropriate governmental official authorized to determine whether the water line should be cut.

402.    When Councilmember Nicholson engaged in this abusive conduct, Councilmember Nicholson claimed to be acting under color of law as a town councilmember.

403.    Not only did Councilmember Nicholson claim this at the time, but Councilmember Nicholson subsequently stated that when he had engaged in this abusive conduct, he had been acting under color of law as a town councilmember.

404.    When Councilmember Nicholson engaged in this abusive conduct, Councilmember Nicholson was acting outside the scope of his authority as a town councilmember.

405.    Upon information and belief, Councilmember Nicholson's abusive conduct was done with the knowledge and consent of other Parksley government officials.

406.    When Nicholson engaged in this abusive conduct, Nicholson claimed to be acting under color of law as a town councilmember.

407.    Not only did Nicholson claim this at the time, but Nicholson subsequently stated that when he had engaged in this abusive conduct, he had been acting under color of law as a town councilmember.

408.    When Nicholson engaged in this abusive conduct, Nicholson was acting outside the scope of his authority as a town councilmember.

409.    Upon information and belief, Nicholson, acting under color of state law, used his position as a town councilmember to facilitate the commission of abusive acts that were outside the scope of his authority.

410.    Upon information and belief, some of Councilmember Nicholson's abusive acts were taken as part of a Parksley custom or policy whereby Councilmember Nicholson and other town officials knowingly took actions outside of the scope of their official duties against disfavored individuals while other Parksley officials chose to ignore the abuses.

411.   Councilmember Nicholson had, and continues to have, ill will towards Plaintiffs.

412.   Upon information and belief, Parksley government officials other than Councilmember Nicholson also had, and continue to have, ill will towards Plaintiffs.

413.   Upon information and belief, Councilmember Nicholson's ill will towards Plaintiffs was, and continues to be, known to other Parksley government officials.

414.   Upon information and belief, Councilmember Nicholson's ill will towards Plaintiffs was consented to by other Parksley government officials.

415.   Councilmember Nicholson had, and continues to have, animus towards Plaintiffs.

416.   Upon information and belief, Councilmember Nicholson's animus towards Plaintiffs was, and continues to be, known to other Parksley government officials.

417.   Upon information and belief, Councilmember Nicholson's animus towards Plaintiffs was, and continues to be, consented to by other Parksley government officials.

418.   Upon information and belief, other Parksley government officials shared, and continue to share, Nicholson's animus towards Plaintiffs.

419.   Upon information and belief, some or all of the unconstitutional actions at issue here reflect a custom or policy of the Town of Parksley's government to treat Plaintiffs worse than similarly situated individuals and businesses.

420.   Upon information and belief, some of the unconstitutional actions at issue here would not have happened but for the custom or policy of the Town of Parksley's government to treat Plaintiffs worse than similarly situated individuals and businesses.

421.   Later that same day when Councilmember Nicholson cut the water line, Accomack County government officials told Clemene that Councilmember Nicholson should not have done so.

422.    Later that same day when Councilmember Nicholson cut the water line, Accomack County government officials told Clemene that Councilmember Nicholson had no authority to do so.

423.    Councilmember Nicholson told police officers that he had cut the water line.

424.    The police officers told Councilmember Nicholson that he should not have cut the water line.

425.    Councilmember Nicholson told the police officers that this position as a town councilmember gave him the authority to cut the water line.

426.    The police officers told Councilmember Nicholson that his position as a town councilmember did not give him the authority to cut the water line.

427.    These unconstitutional acts harmed Plaintiffs.

428.    These unconstitutional acts rendered Plaintiffs' food truck inoperable.

429.    Plaintiffs were unable to restore the food truck's connection to the sewer system until they hired a local handyman to remove the damaged water line and install a new water line.

430.    Due to these unconstitutional actions, Plaintiffs' food truck lacked access to an essential utility—a connection to the sewer system.

431.    These unconstitutional actions damaged Plaintiffs' equipment, caused their food to spoil, cost them lost profits, and damaged their goodwill and relationships with customers.

432.    It is clearly established that these actions were unconstitutional.

433.    No immunity applies to Defendants here.

434.    It is clearly established that denying individuals their right to due process of law as described above is a violation of the Fourteenth Amendment.

435.    Every reasonable government official would have had fair warning that these actions were unconstitutional.

436.    The constitutional violations were obvious.

437.    The constitutional violations should have been obvious to Councilmember Nicholson and all other Parksley government officials.

438.    The unconstitutional actions directly harmed Plaintiffs by damaging their equipment, causing food spoilage, rendering the food truck inoperable until Theslet was able to hire a local handyman to repair it, and costing them lost profits, goodwill, business relationships, and relationships with customers.

439.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek declaratory relief against the Town of Parksley and Councilmember Nicholson.

440.    For these violations of their rights under the Fourteenth Amendment, Plaintiffs seek monetary damages against the Town of Parksley and against Councilmember Nicholson in his official capacity, in the form of nominal damages and compensatory damages.

## Count VII

## Trespass to Land and Trespass to Chattels

### (Virginia Tort Claims Against Nicholson Personally)

441.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

442.    On June 16, 2023, Councilmember Nicholson entered Theslet's and Clemene's property at 24312 Bennett Street and severed the Eben-Ezer Haitian Food Truck's water line.

443.    Virginia common law establishes that trespass is an unauthorized entry onto property that results in interference with the property owner's possessory interest therein.

444.    Nicholson had no right, authority, or invitation to enter 24312 Bennett Street on June 16.

445.    When Nicholson entered 24312 Bennett Street on June 16, Theslet and Clemene had actual possession of the land.

446.    Thus, when Nicholson entered 24312 Bennett Street on June 16, he interfered with Theslet's and Clemene's ownership interest in their real property.

447.    Virginia common law establishes that trespass to chattels occurs when one party intentionally uses or intermeddles with personal property in rightful possession of another without authorization.

448.    When Nicholson severed Plaintiffs' food truck's water line, he did so intentionally.

449.    Nicholson had no right, authority, or permission to sever the water line.

450.    When Nicholson severed the water line, he irreparably damaged the water line itself. It had to be replaced.

451.    When Nicholson severed the water line, he also rendered the food truck inoperable until Theslet was able to hire a local handyman to replace the water line and reconnect it to the sewer system.

452.    Because Nicholson severed the water line, approximately $1,300 in food spoiled as Theslet and Clemene scrambled to remedy the damage.

453.    Because Nicholson severed the water line, Plaintiffs lost profits that they would have earned.

454.    Because Nicholson severed the water line, Plaintiffs' food truck business's goodwill, business relationships, and relationships with customers were damaged.

455.    Nicholson's actions were outside the scope of his official duties.

456.   No immunity protects Nicholson.

457.   Nicholson had no authority or permission to perform these acts.

458.   Nicholson's actions were unlawful.

459.   For these violations of their rights under Virginia tort law, Plaintiffs seek declaratory relief against Nicholson.

460.   For these violations of their rights under Virginia tort law, Plaintiffs seek monetary damages against Nicholson personally in the form of nominal damages and compensatory damages.

## Count VIII

### 42 U.S.C. § 1983—First and Fourteenth Amendments

### (Federal Retaliation Claim Against the Town of Parksley)

461.   Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 141 of this complaint, as if fully stated herein.

462.   The First Amendment to the United States Constitution guarantees freedom of speech and the right to petition the government for redress of grievances.

463.   Consulting with an attorney and petitioning the government for a change in the law are activities protected by the First Amendment.

464.   These First Amendment guarantees are incorporated against the states through the Fourteenth Amendment.

465.   One way the government violates the First Amendment is if (1) the plaintiff was engaged in constitutionally protected activity, and (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that

activity, and (3) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

466.    Plaintiffs were engaged in constitutionally protected activity when they consulted with counsel with the goal of sending Parksley a letter urging it to rescind its food truck ban that it had enacted on October 9, 2023.

467.    Plaintiffs were engaged in constitutionally protected activity when the attorney's letter was sent to Parksley on their behalf.

468.    In retaliation for that constitutionally protected activity, Parksley changed its position as to whether Plaintiffs could continue to operate their food truck until their annual permit expired.

469.    In retaliation for that constitutionally protected activity, Parksley threatened Plaintiffs with retroactive enforcement of its reinterpreted zoning code, which amounted to thousands of dollars in fines and years in prison.

470.    Parksley's retaliatory actions against Plaintiffs were motivated by their decision to consult with counsel to petition Parksley for relief, as well as the letter itself that was sent on their behalf and resulting media interest.

471.    Parksley's retaliatory actions against Plaintiffs were also motivated by the substantive criticism of Parksley's policy stated by Plaintiffs and stated in the November 2 letter.

472.    Prior to the November 2 letter, the Town of Parksley's position was that it did not intend to enforce the food truck ban until Plaintiffs' annual license expired.

473.    Prior to the November 2 letter, Parksley's mayor publicly stated that the Town of Parksley did not intend to enforce the food truck ban until Plaintiffs' annual license expired.

474. Prior to the November 2 letter, Parksley's mayor stated to reporters that the Town of Parksley did not intend to enforce the food truck ban until Plaintiffs' annual license expired.

475. These statements by Parksley's mayor were printed in a local newspaper.

476. Plaintiffs continued to operate their food truck business in reliance on the mayor's statements.

477. Shortly after receiving the November 2 letter, the Town of Parksley changed its position as to whether Plaintiffs could keep operating their food truck until their annual license expired.

478. Upon information and belief, the Town of Parksley's change in position was in retaliation for the November 2 letter.

479. Upon information and belief, the Town of Parksley's change in position was in retaliation for Plaintiffs consulting with attorneys.

480. If the November 2 letter had not been sent, the Town of Parksley would not have changed its position.

481. If the November 2 letter had not been sent, Plaintiffs would have been allowed to continue operating their food truck business.

482. If the Town of Parksley had not retaliated against Plaintiffs because of the November 2 letter, Plaintiffs would still be operating their food truck business today.

483. If Plaintiffs had not consulted with attorneys, the Town of Parksley would not have changed its position.

484. If Plaintiffs had not consulted with attorneys, Plaintiffs would have been allowed to continue operating their food truck business.

485.    If the Town of Parksley had not retaliated against Plaintiffs for consulting with attorneys, Plaintiffs would still be operating their food truck business today.

486.    The Town of Parksley's change in position not only caused Plaintiffs to stop operating their food truck business, but the Town of Parksley also threatened Plaintiffs with incarceration and fines for operating the food truck in the past.

487.    The Town of Parksley's retaliation against Plaintiffs was done with ill will towards Plaintiffs.

488.    The Town of Parksley's retaliation against Plaintiffs was done with animus towards Plaintiffs.

489.    The Town of Parksley's retaliation against Plaintiffs fails any standard of review.

490.    The Town of Parksley's retaliation has chilled Plaintiffs' speech.

491.    The Town of Parksley's retaliation has chilled the speech of other individuals as well.

492.    No immunity protects the Town of Parksley for its retaliation against Plaintiffs for exercising their constitutional rights.

493.    For these violations of their rights under the First and Fourteenth Amendments, Plaintiffs are seeking declaratory relief, injunctive relief, and monetary damages against the Town of Parksley. The monetary damages are in the form of nominal damages and compensatory damages.

**REQUEST FOR RELIEF**

Plaintiffs respectfully request:

A.  An award of compensatory damages against the Town of Parksley for the financial harms caused to Plaintiffs by the Town of Parksley;

B.  An award of compensatory damages against Councilmember Nicholson, both personally and in his official capacity, for the financial harms caused to Plaintiffs by Councilmember Nicholson;

C.  An award of $1 in nominal damages against both the Town of Parksley and Councilmember Nicholson for their violations of Plaintiffs' constitutional rights;

D.  An award of $1 in nominal damages against Councilmember Nicholson for his violations of Virginia law;

E.  Declaratory relief stating that Councilmember Nicholson has violated the Fourth and Fourteenth Amendments to the United States Constitution;

F.  Declaratory relief stating that Councilmember Nicholson has violated Virginia law.

G.  Declaratory relief stating that the Town of Parksley has violated the First and Fourteenth Amendments to the United States Constitution;

H.  Injunctive relief against the Town of Parksley and Councilmember Nicholson enjoining their disparate treatment towards Plaintiffs;

I.  Injunctive relief against the Town of Parksley enjoining its retaliation against Plaintiffs;

J.  An award of reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988; and

K.  Any further legal and equitable relief that the Court deems just and proper.


DATED this 23rd day of January, 2024.

Respectfully submitted,

/s/ Paul M. Sherman

Justin Pearson* (FL Bar No. 597791)          Paul M. Sherman (VA Bar No. 73410)
INSTITUTE FOR JUSTICE                         Dylan Moore* (ME Bar No. 010327)
2 South Biscayne Blvd., Suite 3180            INSTITUTE FOR JUSTICE
Miami, FL 33131                               901 North Glebe Road, Suite 900
Tel: (305) 721-1600                           Arlington, VA 22203

Fax: (305) 721-1601
Email: jpearson@ij.org

Tel: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org
       dmoore@ij.org

*Attorneys for Plaintiff*
\*Application for admission
*pro hac vice* forthcoming