## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

| | | |
|---|---|---|
| **THESLET BENOIR, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:24-cv-64** |
| | ) | |
| **TOWN OF PARKSLEY,** | ) | |
| **VIRGINIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Theslet Benoir, Clemene Bastien, and Eben-Ezer Haitian Food Truck LLC ("Plaintiffs") have sued Defendants the Town of Parksley, Virginia, and Henry Nicholson alleging certain tort and constitutional violations in connection with their operation of a food truck in Parksley. Before the Court is Plaintiffs' Motion to Use Formerly Privileged Materials and for Leave to Amend the Complaint ("the Motion") and memorandum in support, filed on February 20, 2025. ECF Nos. 36–37.

By their motion, Plaintiffs seek to use documents and deposition testimony in this litigation disclosed by Defendants under a purported limited waiver of the attorney-client privilege. ECF No. 37, *passim*. Plaintiffs also seek to preclude Defendants from relying on potential testimony from the Town's attorney, Andre Wiggins. *Id.* Finally, Plaintiffs seek leave to amend their Complaint in order to supplement and clarify the factual allegations supporting their claims that they learned through discovery, and add a claim for punitive damages against Nicholson. *Id.* Defendants filed a Response in Opposition ("the Opposition") on February 28, 2025, ECF No. 41, and Plaintiffs filed a Reply on March 6, 2025. ECF No. 46. After the briefing was completed, the

Court ordered the parties to submit the privileged material to the Court *in camera*. ECF No. 47 at 3. The Court then held a hearing on the Motion on March 19, 2025. ECF No. 51. Accordingly, the Motion is ripe for disposition. As explained below, the Court **GRANTS** Plaintiffs' Motion in part and **DENIES** Plaintiffs' Motion in part.

## I. BACKGROUND

Theslet Benoir and Clemene Bastien are a married couple and own Eben-Ezer Haitian Food Truck LLC. ECF No. 1 at ¶ 1. Plaintiffs opened their food truck business in the Town of Parksley, Virginia in 2023. *Id.* Following several actions allegedly taken by Defendants, Plaintiffs filed this lawsuit on January 23, 2024. *Id.* Their suit arises from two separate interactions with Defendants Nicholson and the Town of Parksley ("the Town").

First, Plaintiffs allege that Nicholson, a member of the Parksley Town Council, illegally severed a pipe connected to Plaintiffs' food truck in order to interrupt their food truck business. *Id.* at ¶¶ 30–76, 142–460. Second, Plaintiffs allege that the Town illegally retaliated against them for engaging in constitutionally protected activity. *Id.* at ¶¶ 86–126; 461–93. The Town Council passed an ordinance banning food trucks after Plaintiffs opened their business. ECF No. 37 at 2. But Plaintiffs allege that the Town's mayor, Frank Russell, said that they would be allowed to operate their food truck until their business license expired. *Id.*; ECF No. 1 at ¶ 89. Despite the mayor's assurance, Plaintiffs allege that the Town reversed course and later ordered them to close their food truck business before their business license expired and after they publicly opposed the food truck ban and discussed their situation with an attorney. ECF No. 37 at 2.[1]

---

[1] The Complaint lists a total of eight counts against Defendants. In Count I, plaintiffs allege that Nicholson, in his personal capacity, affected an illegal search and seizure of their property in violation of the Fourth and Fourteenth Amendments. ECF No. 1 at ¶¶ 142–86. In Count II, Plaintiffs allege that Nicholson, acting in his official capacity, and the Town of Parksley conducted an illegal search and seizure of their property in violation of the Fourth and Fourteenth Amendments. *Id.* at ¶¶ 187–240. In Count III, Plaintiffs allege that Nicholson, acting in his personal capacity, violated the Equal Protection Clause of the Fourteenth

The retaliation claim involves two letters. Plaintiffs' counsel sent the Town a letter on November 2, 2023, calling for the Town to repeal its food truck ban ordinance ("Letter to the Town"). ECF No. 37, attach. 2 at 2–3. After sending the Letter to the Town, Plaintiffs received a letter from Town Attorney Andre Wiggins ("Letter to Plaintiffs") postmarked November 3, 2023. ECF No. 37, attach. 5 at 3–4. The Letter to Plaintiffs is dated November 1, 2023, and it informed Plaintiffs that the Town would fine them if they continued to operate their business because local zoning ordinances prohibited food trucks. *Id.* The Complaint originally alleged that the Town misdated the Letter to Plaintiffs, and that, based on the date of the postmark, it was sent to Plaintiffs in retaliation for Plaintiffs' counsel sending the Letter to the Town. ECF No. 1 at ¶ 470.

**A. The discovery dispute arises during Parksley Town Clerk Lauren Lewis's deposition.**

The dispute presented in the Motion arose between the parties during discovery. Plaintiffs deposed Parksley Town Clerk Lauren Lewis on September 16, 2024. *See* ECF No. 37, attach. 8 at 2. Following Plaintiffs counsel's direct examination, Defense counsel asked Lewis a series of questions about emails she sent to and received from Wiggins discussing the Letter to Plaintiffs.[2] *Id.* at 5–7. On October 20, 2023, Lewis emailed Wiggins: "Andre, please proceed with revising the food truck ordinance per the council." ECF No. 37, attach. 9 at 2. On November 1, 2023,

---

Amendment. *Id.* at ¶¶ 241–289. In Count IV, Plaintiffs allege that the Town and Nicholson, acting in his official capacity, violated the Equal Protection Clause of the Fourteenth Amendment. *Id.* at ¶¶ 290–348. In Count V, Plaintiffs allege that Nicholson, acting in his personal capacity, violated the Due Process of Law Clause of the Fourteenth Amendment. *Id.* at ¶¶ 349–88. In Count VI, Plaintiffs allege that the Town and Nicholson, acting in his official capacity, violated the Due Process Clause of the Fourteenth Amendment. *Id.* at ¶¶ 389–440. In Count VII, Plaintiffs allege that Nicholson committed Trespass to Land and Trespass to Chattels pursuant to Virginia law. *Id.* at ¶¶ 441–60. Finally, in Count VIII, Plaintiffs allege that the Town retaliated against them in violation of the First and Fourteenth Amendments for engaging in constitutionally protected activity. *Id.* at ¶¶ 461–93. Plaintiffs' proposed amended complaint seeks, *inter alia,* to remove Counts V and VI. ECF No. 37 at 13.

[2] Lewis explained that, as the Parksley Town Clerk, she frequently facilitates communication between Russell, the Town Council, and Wiggins. ECF No. 37, attach. 8 at 12 ("I, as an employee full-time for the town, am constantly checking email. It is going to get to [Russell and the Town of Parksley Council] much faster if it is sent directly to me.").

Wiggins replied to that email with a draft version of the Letter to Plaintiffs and wrote "[P]lease review and respond." *Id.*

Defendants' counsel introduced the emails between Wiggins and Lewis at the deposition to show that Wiggins had already drafted the letter by November 1, one day before the Town received Plaintiffs' counsel's Letter to the Town. ECF No. 41 at 9. They wanted to demonstrate that, because Wiggins drafted the Letter to Plaintiffs before Defendants received the Letter to the Town, the Letter to Plaintiffs could not have been sent to retaliate against Plaintiffs for consulting an attorney. *Id.*

When Defendants' counsel finished questioning Lewis about her email exchange with Wiggins, Plaintiffs' counsel immediately argued that Defendants had waived attorney-client privilege for the entire email conversation between Lewis and Wiggins and any other communications between Defendants and Wiggins that discussed the same subject. ECF No. 37, attach. 8 at 8. Defendants' counsel disagreed, but they allowed Plaintiffs' counsel to ask Lewis questions about the email conversation. *Id.* at 8–21.

**B. Defendants agree to produce additional privileged communications and allow Plaintiffs to re-depose Russell and Lewis.**

After Lewis's deposition, the parties attempted to resolve the issue of whether Defendants' use of the October 20, 2023, and November 1, 2023, emails at the deposition waived attorney-client privilege for any other communications between Defendants and Wiggins. ECF No. 37 at 5. They eventually reached an agreement. *Id.* Defendants agreed to produce a series of allegedly privileged communications that occurred between the Town and Wiggins over a specific period, in addition to the October 20, 2023, and November 1, 2023, emails discussed at the deposition. *Id.* They also agreed to allow Plaintiffs to re-depose Lewis and Russell and ask them about the new communications. *Id.* Additionally, the parties agreed that Plaintiffs would not argue that

4

Defendants waived attorney-client privilege for the new communications because they produced them to the Plaintiffs. *Id.*

In return, Plaintiffs promised to review the new communications and the depositions of Lewis and Russell to evaluate their retaliation claim. *Id.* Plaintiffs agreed to voluntarily dismiss their retaliation claim if the new communications and testimony undermined their retaliation claim.[3] *Id.* And they agreed that, before using the new communications or evidence from Lewis and Russell's second depositions, Plaintiffs would seek a ruling from the Court as to whether Defendants waived attorney-client privilege for those materials. *Id.*

Defendants produced more than 175 documents that contained correspondence between Lewis on behalf of the Town, Wiggins, the Town Council, and Russell. Docs. 317–26, 394–568.[4] They also produced a partial billing statement from Wiggins that reflected his work for the Town. Docs. 569–572. Plaintiffs re-deposed Lewis and Russell on January 14, 2025.

### C. Plaintiffs file the Motion to Use Materials and Amend Complaint after reviewing the new communications and re-deposing Lewis and Russell.

After they re-deposed Lewis and Russell and reviewed the new communications, Plaintiffs filed the Motion to Use Materials and Amend Complaint in accordance with the agreement between the parties before using any new information. *See* ECF No. 36. Plaintiffs also filed a Request for Status Conference and Motion to Extend Summary Judgment Briefing Until After the Status Conference ("Motion to Extend Summary Judgment Briefing"). ECF No. 40. Therein, they

---

[3] Defendants allege that they entered the agreement "with the understanding . . . that Plaintiffs were evaluating dropping, not amending, the retaliation claim." ECF No. 41 at 10. Plaintiffs assert that the parties agreed that "if the new information supported the claim, then Plaintiffs would continue to assert the claim in their amended complaint." ECF No. 37 at 5.

[4] The Court cites to the disputed documents submitted by the parties for *in camera* review by their Bates numbers.

requested that the Court hold a status conference during which it would rule on the Motion to Use

Materials and Amend Complaint and set new summary judgment briefing deadlines. *Id.* at 2.

Defendants agreed to Plaintiffs' request for a status conference, but they opposed Plaintiffs'

request to change the summary judgment briefing deadline. ECF No. 44 at 2. The Court granted

the Motion to Extend Summary Judgment Briefing in part by suspending the summary judgment

deadlines and directing the parties to schedule a hearing on the Motion to Use Materials and

Amend Complaint. ECF No. 47 at 3. The Court also ordered the parties to independently produce

the disputed communications and the transcripts of the second depositions of Lewis and Russell

for *in camera* review. *Id.*

 The Court held a hearing on the Motion to Use Materials and Amend Complaint on March

19, 2025. ECF No. 51. At the hearing, the Court ordered the parties to file a Joint Notice

explaining which of the documents produced for *in camera* review remained subject to the

privilege dispute ("Joint Notice"). The parties filed the Joint Notice on March 21, 2025, and agreed

that "any documents not listed [in the Joint Notice] are not privileged." ECF No 52 at 1.[5] The

Court refers to the documents listed in the Joint Notice, and the communications contained therein,

as "the disputed documents." Defendants produced the disputed documents to Plaintiffs after

Lewis's first deposition pursuant to the agreement between the parties. *See supra* Section I.B.

 The Motion to Use Materials and Amend Complaint seeks three forms of relief. First, the

Motion requests that the Court find that Plaintiffs may use "the formerly attorney-client privileged

communications that have already been produced, including the emails and partial billing

---

[5] The parties listed the following documents, identified by Bates number, as the subject of the privilege
dispute: 394, 395, 400, 402, 404, 405, 418, 420, 422 (in part), 426, 427 (in part), 430, 432, 433, 446, 450,
451, 452, 453, 454, 456, 458, 459, 460, 461, 462 (in part), 466 (in part), 470, 480, 481, 518, 519, 520, 522,
523, 566, 568, 569, 569, 570, 571, and 572. ECF No. 52 at 1–3.

statement, as well as the related depositions that have already been taken." ECF No. 36 at 1–2. In short, Plaintiffs seek to use the disputed documents and related testimony from Lewis and Russell's second deposition. *Id.* Second, Plaintiffs request leave to file an amended complaint. *Id.* Finally, Plaintiffs request that the Court order Defendants not to rely on Wiggins's testimony in the future because Defendants have objected to Plaintiffs deposing Wiggins in the past. *Id.* Defendants argue that the Motion should be denied in its entirety. ECF No. 41 at 1. The Court addresses each request in turn.

## II. DISCUSSION

**A. Subject to the Exceptions Outlined Below, the Court Grants Plaintiffs' Motion to Use Formerly Privileged Materials Because Defendants Waived Attorney-Client Privilege as to Documents that Address the Same Subject Matter as Documents 434 through 437.**

The parties agree that Defendants waived attorney-client privilege for Documents 434 through 437, but they disagree over whether that waiver applies to the disputed documents and related testimony gathered during Lewis and Russell's depositions as well.

Defendants concede that they waived attorney-client privilege for Documents 434 through 437. ECF No. 41 at 8; ECF No. 52 at 1.[6] Plaintiffs argue that the waiver extends to the disputed documents and related testimony because Defendants' express waiver of the attorney-client privilege as to documents 434 through 437 but assertion of the privilege to documents concerning the same subject matter would impermissibly permit them "to simultaneously wield the privilege as a sword and a shield." ECF No. 37 at 11. Plaintiffs claim that Defendants cannot waive

---

[6] The parties stipulated that they agree that any documents not listed in their Joint Notice is not protected by attorney-client privilege. ECF No. 52 at 1. This stipulation indicates that Defendants' voluntary waiver extends beyond Documents 434 through 437 and encompasses other documents not listed in the Joint Notice. *See id.* However, because the parties' dispute arose at Lewis's first deposition when Defendants voluntarily waived attorney-client privilege for Documents 434 through 437, specifically, the Court focuses its waiver analysis on those documents and the subject matter they address. *See* ECF No. 41 at 8.

7

attorney-client privilege for a select few communications without waiving the privilege for "all other communications related to the same subject matter." ECF No. 46 at 3 (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curium)). In the alternative, Plaintiffs argue that Defendants implicitly waived attorney-client privilege for all of the documents by placing Attorney Wiggins's advice "at issue." ECF No. 37 at 10. In the Answer to the Complaint, Defendants claim that Attorney Wiggins's independent review of the Town's zoning code led to the Town's decision to send the Letter to Plaintiffs. *See* ECF No. 20 at ¶ 109. Plaintiffs argue that the Defendants' presentation of this alternative explanation as a defense to the retaliation claim, Defendants made Wiggins's advice to the Town relevant to the case and therefore discoverable. ECF No. 37 at 10.

Defendants argue that Plaintiffs "put the [Letter to Plaintiffs] at issue" in their retaliation claim, which left Defendants no choice but to "provide privileged communications through a limited waiver of attorney-client privilege" to counter that claim. ECF No. 41 at 11. Defendants claim that they waived attorney-client privilege for the emails contained in Documents 434 through 437 only, not the disputed documents and testimony from the second depositions of Lewis and Russell. *Id.*

Given the circumstances under which the disputed documents were disclosed, there are potentially two ways in which Defendants could have waived attorney-client privilege for the disputed documents. First, Defendants may have waived attorney-client privilege for the disputed documents by voluntarily producing the disputed documents to Plaintiffs pursuant to an agreement between the parties following the deposition. Second, and in the alternative, by Defendants' disclosure of Documents 434 through 437 at Lewis's first deposition, Defendants could have

waived attorney-client privilege for the disputed documents because they allegedly relate to the same subject matter as Documents 434 through 437. The Court will analyze both alternatives.

*1.  Legal Standard.*

In federal court, "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege . . ." unless the United States Constitution, a federal statute, or rules prescribed by the United States Supreme Court provides otherwise. Fed. R. Evid. 501. "[F]ederal common law supplies the applicable law of privilege in a federal question case" even when "a court exercises jurisdiction over pendent state law claims in addition to federal claims." *Minor v. Bostwick Lab'ys, Inc.*, No. 3:09CV343, 2012 WL 13028137, at *1 (E.D. Va. July 5, 2012) (quoting *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 125 (E.D. Va. 2009)).

A municipal organization may assert the attorney-client privilege. *Chase v. City of Portsmouth*, 236 F.R.D. 263, 265 (E.D. Va. 2006); *Ross v. City of Memphis*, 423 F.3d 596, 601-03 (6th Cir. 2005) (citing *In re Grand Jury Investigation*, 399 F.3d 527, 532 (2d Cir. 2005); *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 917 n.7 (8th Cir. 1997); *In re Allen*, 106 F.3d 582, 600–05, 600–01 n.8 (4th Cir. 1997)). The party seeking to assert attorney-client privilege must claim the privilege, prove that the attorney-client relationship exists, prove that the privilege applies to each communication between client and attorney, and prove that the privilege has not been waived. *See Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004); *Gibbs v. Stinson*, No. 3:18CV676, 2021 WL 4853575, at *6 (E.D. Va. Oct. 17, 2021). The Fourth Circuit applies the following test to determine whether a party properly asserts a claim of attorney-client privilege for a specific attorney-client communication:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of

which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Jones*, 696 F.2d at 1072; *see also Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 346 (E.D. Va. 2015). In other words, the attorney-client privilege protects "(1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of seeking, obtaining, or providing legal assistance to the client" and must both be claimed and not waived. *Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 742 (D. Md. 2011) (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 65 (5th ed. 2007)). The Fourth Circuit instructs district courts to "construe [the attorney-client and work product] privileges quite narrowly, recognizing them 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Rambus, Inc.*, 220 F.R.D. at 271 (quoting *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998)).

To waive attorney-client privilege, "there must first be a 'disclosure of a communication or information covered by the attorney-client privilege . . .'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018) (quoting Fed. R. Evid. 502). When a party voluntarily discloses privileged information, that party "typically" waives attorney-client privilege for that information. *In re Grand Jury 16-3817 (16-4)*, 740 F. App'x 243, 246 (4th Cir. 2018) (unpublished) (citing *In re Martin Marietta Corp.*, 856 F.2d 619, 622–23 (4th Cir. 1988)). "Selective disclosure for tactical purposes waives the attorney-client privilege," *Jones*, 696 F.2d at 1072, so "[a party] must choose between confidentiality and disclosure. He cannot have both." *In re Grand Jury Subpoena*, 204 F.3d 516, 522 (4th Cir. 2000); *In re Zetia (Ezetimibe) Antitrust*

*Litig.*, No. 2:18-MD-2836, 2022 WL 4354620, at \*3 (E.D. Va. Aug. 15, 2022).   If a party voluntarily discloses a single communication protected by the attorney-client privilege, it waives the privilege for that communication and any other communications covering the same subject matter. *Hawkins*, 148 F.3d at 384 n.4; *see also Jones*, 696 F.2d at 1072.

The Court must also consider Federal Rule of Evidence 502, which governs waiver alongside common-law principles.[7]  *United States v. Moazzeni*, 906 F. Supp. 2d 505, 512 (E.D. Va. 2012). Rule 502(a) limits the scope of a waiver of attorney-client privilege.[8]  Pursuant to Rule 502(a), a waiver of attorney client privilege waives the privilege as to other, undisclosed communications between lawyer and client only if (1) the waiver is intentional, (2) the disclosed and undisclosed communications concern the same subject matter, and (3) the disclosed and undisclosed communications should, in fairness, be considered together.   Fed. R. Evid. 502(a).

> By requiring a fairness analysis, Congress recognized that [t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties in permitting or prohibiting future disclosures.[9]

---

[7] "[Rule 502] makes no attempt to alter federal or state law on whether a communication or information is protected under the attorney-client privilege or work-product immunity as an initial matter.  Moreover, while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally." Fed. R. Evid. 502 advisory committee's notes; *see United States v. Moazzeni*, 906 F. Supp. 2d 505, 513 (E.D. Va. 2012).  Courts recognize that, despite the Advisory Committee's explanation, the relationship between Rule 502(a) and traditional waiver doctrine is unclear.  *See Miller v. Heimuller*, No. 3:23-CV-293-SI, 2025 WL 573261, at \*6 n.9 (D. Or. Feb. 21, 2025) ("It is unclear whether this Rule codifies or supplants the existing common law doctrine of express waiver.").   Following Rule 502's adoption, this Court has analyzed subject matter waiver according to both common law precedent and the framework set forth in the Rule itself.  *Compare AMF Bowling Centers, Inc. v. Tanase*, No. 3:23-CV-00448, 2024 WL 3298454, at \*2 (E.D. Va. May 9, 2024) (analyzing a claim of subject-matter waiver according to Rule 502's factors) *with Moazzeni*, 906 F. Supp. 2d at 512 (considering Fourth Circuit precedent in conjunction with the Rule 502 limit on subject matter waiver).

[8] "[S]ubject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Fed. R. Evid. 502 advisory committee's notes.

[9] Indeed, before the adoption of Rule 502, the Fourth Circuit "ha[d] not developed a precise test for determining what constitutes 'the same subject matter,'" but "it ha[d] suggested that the term should be interpreted narrowly, stating that in order to fall under the scope of the subject-matter waiver rule, the other

*Moazzeni*, 906 F. Supp. 2d at 513 (quoting *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 503 (2009)) (internal quotation marks omitted); *see also In re Zetia (Ezetimibe) Antitrust Litigation*, 2022 WL 4354620 at *8 ("There is no bright line test for determining what constitutes the boundaries of waiver with respect to a particular subject. . . . Examining the context of the evidence is the best way to ensure that the court is fair to both parties on this topic.").

With these principles in mind, the Court turns to the question of whether Defendants have satisfied their burden to prove that the attorney-client privilege applies to the disputed documents and that it has not been waived.

2. *The attorney-client privilege applies to the disputed documents.*

Before considering waiver, Defendants must demonstrate that an attorney-client relationship exists, that the client asserted the privilege, and that the privilege applies to the disputed documents. *See Jones*, 696 F.2d at 1072. First, an attorney-client relationship exists between Wiggins, the attorney, and the Parksley Town Council, the client.[10] *Id.* Second,

_____

documents must 'be directly related [to the disclosed subject].'" *Rambus*, 220 F.R.D. at 289. This Court previously referred to the following seven-factor test to determine whether undisclosed information touches on the same subject matter as disclosed, non-privileged information:

> (1) [T]he general nature of lawyer's assignment; (2) the extent to which the lawyer's activities in fulfilling that assignment are undifferentiated and unitary or are distinct and severable; (3) the extent to which the disclosed and undisclosed communications share, or do not share, a common nexus with a distinct activity; (4) the circumstances in and purposes for which disclosure originally was made; (5) the circumstances in and purposes for which further disclosure is sought; (6) the risks to the interests protected by the privilege if further disclosure were to occur; and (7) the prejudice which might result if disclosure were not to occur.

*Id.* at 289 (quoting *United States v. Skeddle*, 989 F.Supp. 917, 919 (N.D. Ohio 1997)).

[10] A municipal entity may assert attorney-client privilege. *Chase*, 236 F.R.D. at 265 (finding that because the city attorney served at the pleasure of the city council according to the city charter, the city council was the city attorney's client for the purpose of analyzing attorney-client privilege). Here, the Town Council, a municipal entity, appointed Wiggins to the position of town attorney and he serves at its pleasure, Parksley

Defendants clearly asserted the attorney-client privilege between Wiggins and the Parksley Town Council by objecting to Plaintiffs' discovery requests regarding communications between the Town and Wiggins on the basis of attorney-client privilege. ECF No. 37, attach. 7 at 31. Third, the privilege applies to the disputed documents, as they contain communications between Wiggins and Lewis about Wiggins's legal advice, and the parties do not dispute that, before Lewis's first deposition, they were privileged. *See* ECF No. 37 at 6 (calling the disputed documents "formerly privileged documents"). Therefore, the Court finds that an attorney-client relationship exists between the Town and Wiggins, that Defendants—specifically the Town of Parksley—asserted the attorney-client privilege, and that the privilege applies to the disputed documents.

3. *The Court assumes, without deciding, that because of an agreement between the parties, Defendants did not waive attorney-client privilege when they produced the disputed documents to Plaintiffs.*

The parties' dispute as to waiver is unusual because Defendants voluntarily produced the disputed documents[11] to Plaintiffs after Lewis's first deposition "on the understanding that such a production would not serve as a basis for arguing waiver." ECF No. 41 at 10. Plaintiffs adhered

---

Town Charter §§ 4.1, 4.3; *see Chase*, 236 F.R.D. at 265 Following this Court's precedent in *Chase*, the Court finds that the attorney here is Wiggins, and the client is the Parksley Town Council.

[11] When a party asserts that attorney-client privilege protects documents sought during discovery, the party generally provides its opponent a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A). A producing party may comply with Rule 25(b)(5)(A)'s requirements for asserting privilege by providing a privilege log that "identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *Sky Angel US, LLC v. Discovery Communications, LLC*, 28 F. Supp. 3d 463, 483 (D. Md. 2014). The "primary purpose" of the privilege log is to "provide information about the nature of withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 233 (W.D. Va. 2015) (quoting *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*, No. 11 Civ. 6746, 2014 WL 2518959, at *5 (S.D.N.Y. June 4, 2014)). Defendants were clearly aware of this procedure. When Plaintiffs initially requested that Defendants produce communications between the Town and Attorney Wiggins, Defendants objected on the basis of the work-product doctrine or attorney-client privilege. ECF No. 37, attach. 7 at 31. They argued that "even producing a privilege log would infringe on the attorney-client privilege, as it would include dates and frequency" of communications between attorney and client. *Id.*

to that agreement and did not argue that the production of the disputed documents waived the attorney-client privilege for those documents. *See generally* ECF No. 37. However, now the parties' dispute focuses on whether Defendants' waiver extends to additional documents not included in the voluntary waiver of Documents 434 through 437.

Usually, "[a]ny voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *Jones*, 696 F.2d at 1072. Defendants do not deny that they voluntarily produced the disputed documents to Plaintiffs to allow Plaintiffs to evaluate their retaliation claim. *See* ECF No. 41 at 10 (describing the agreement between the parties). Instead, Defendants argue that despite their voluntary disclosure to opposing counsel—a third party outside the attorney-client relationship—they did not waive attorney client privilege because the agreement stipulated that Defendants' voluntary disclosure of the disputed documents did not waive the privilege. *See id.* In other words, because the agreement proposed that Defendants were not waiving attorney-client privilege, Defendants did not waive attorney-client privilege, even though they sent privileged communications to the opposing party.

At the hearing, Defendants could not cite to the Court any authority supporting the validity of the agreement's effect on the waiver of attorney-client privilege for the disputed documents. But some authority contemplating such an agreement exists. Federal Rule of Evidence 502(e) states that "[a]n agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order." The Advisory Committee's notes accompanying Rule 502 explain that Rule 502(e) "codifies the well-established proposition that parties can enter an agreement to limit the effect of waiver by disclosure between

14

or among them. Of course such an agreement can bind only the parties to the agreement." Fed.

R. Evid. 502 advisory committee's note.

The Fourth Circuit examined a waiver-limiting agreement made pursuant to Rule 502(e)

in *In re Grand Jury 16-3817 (16-4)*, 740 Fed. Appx. 243, 246 (4th Cir. 2018). In that case, the

appellant corporation entered a waiver-limiting agreement with the United States Attorney's

Office for the Eastern District of Virginia and the Fraud Section of the United States Department

of Justice (collectively, "the Government"). *Id.* at 244. The Government was investigating the

corporation. *Id.* The corporation agreed to allow its employees to share privileged information

with the government pursuant to several conditions, including that the government acknowledge

that "to the extent any Protected Information is provided to the Fraud Section or EDVa pursuant

to this agreement, [the corporation and its directors] do not intend to waive the protection of the

attorney work product doctrine, the attorney-client privilege, or any other privilege." *Id.* at 244–

45. Later, the government subpoenaed one of the corporation's employees to testify before a grand

jury about privileged information the employee shared with the government pursuant to the

agreement. *Id.* at 245. The corporation moved to intervene, arguing that the subpoena sought

privileged information and that, pursuant to the agreement, the corporation had never waived the

privilege as to that information. *Id.* The corporation then moved for a protective order to quash

the subpoena. *Id.* The Court held that the corporation did not waive privilege as to the information

disclosed in the employee's testimony. *Id.* at 246. It recognized the validity of the party's waiver-

limiting agreement pursuant to Rule 502(e), and after interpreting that agreement according to

contract interpretation principles, held that:

> [T]he [a]greement maintains the status quo regarding [the corporation's]
> privileges. It nullifies the effect of both Doe's initial disclosure of privileged
> information and the Government's later disclosure of the same information on [the
> corporation's] ability to assert privilege against the government. As a result, [the

15

corporation] may assert the privilege here as if [the employee] had never disclosed the information in the first instance.

*Id.* at 249.

Several distinctions and unanswered questions suggest that *In re Grand Jury 16-3817 (16-4)* and Rule 502(e) generally do not automatically render the parties' agreement in this case a valid defense to waiver. First, the parties in *In re Grand Jury 16-3817 (16-4)* entered an agreement with specific, written terms and conditions, which they then presented to the Court when the dispute arose. *Id.* at 244–45. Plaintiffs and Defendants have not submitted a formal agreement here despite the emails and complementary descriptions of the agreement in their briefing. They also dispute the terms of the agreement they claim to have made. ECF No. 41 at 10 ("[T]his more broad production of the privileged documents . . . and agreeing to second depositions of Lewis and Mayor Russell . . . was undertaken with the understanding by Defendants that Plaintiffs were evaluating dropping, not amending, the retaliation claim . . . ."). Second, *In re Grand Jury 16-3817 (16-4)* is an unpublished case, meaning that it is not binding Fourth-Circuit precedent. 740 Fed. App'x at 243. Third and finally, the explanatory notes accompanying Rule 502 state that "while establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally." Fed. R. Evid. 502 advisory committee's notes. There is, therefore, a question as to how Rule 502(e), which allows inter-party agreements to limit the effect of inter-party disclosures of privileged material, interacts with the traditional common-law understanding of voluntary waiver. *See Jones*, 696 F.2d at 1072 ("Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter.").

These distinctions, and the fact that Defendants were unable to cite authority supporting the validity of the waiver-limiting agreement, make the Court reluctant to find that Defendants

avoided waiving the privilege when they produced the privileged documents to the Plaintiffs pursuant to the waiver-limiting agreement. But Plaintiffs did not challenge Defendants' assertion that the waiver-limiting agreement preserved the privilege, and the parties themselves do not dispute the validity of the agreement. Therefore, the Court will assume without deciding that the agreement between the parties did not constitute Defendants' waiver of attorney-client privilege when they produced the disputed documents to Plaintiffs.

4. *When Defendants waived attorney-client privilege as to Documents 434 through 437 at Lewis's Deposition, they also waived attorney-client privilege for the disputed documents because they relate to the same subject matter.*

Even assuming the agreement between the parties did not constitute Defendants' waiver of the attorney-client privilege for the disputed documents they voluntarily produced for Plaintiffs' review, Defendants waived the privilege for most of the disputed documents once they voluntarily produced Documents 434 through 437 at Lewis's first deposition. This voluntary production at the deposition extends to documents concerning the same subject matter as Documents 434 through 437. Most of the communications in the disputed documents cover the same subject matter as Documents 434 through 437. As such, these communications are no longer privileged.

Rule 502(a) sets forth the three factors the Court must consider in determining whether subject-matter waiver occurred. Subject-matter waiver occurs when "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). First, the parties do not dispute that Defendants intentionally waived the privilege as to Documents 434 through 437 at Lewis's deposition.[12] *See* ECF No. 41 at 8 (describing the use of Documents 434 through

---

[12] Plaintiffs argue that Defendants both expressly and impliedly waived attorney-client privilege for the disputed documents. ECF No. 37 at 7–11. However, Defendants conceded that they waived the privilege for Documents 434 through 437, so the Court's inquiry shifts to the scope of that waiver. Additionally, only the client can waive the attorney-client privilege. *Moazzeni*, 906 F. Supp. 2d at 513. The Town, acting

437 as a "limited waiver"); ECF No. 52 at 1 ("The parties agree that any documents not listed are not privileged."). Defendants argue that their waiver was "limited" to only Documents 434 through 437. However, Defendants cite no authority to support the idea of a "limited" waiver.

To the extent Defendants argue their waiver was not intentional because it was only a "limited waiver," that argument is not persuasive. Defendants waived attorney-client privilege for Documents 434 through 437 by intentionally disclosing those communications to opposing counsel—a party outside the attorney-client relationship—at Lewis's deposition and asking Lewis questions about those communications. *See* ECF No. 37, attach. 8 at 5–7. As discussed below, disclosing a privileged communication to a third party automatically waives the privilege for that communication and any other undisclosed communication concerning the same subject matter that ought, in fairness, be considered alongside the disclosed communication. Fed. R. Evid. 502(a)(1)-(3). Thus, Defendants' argument that they have merely engaged in a "limited waiver" restricted only to Documents 434 through 437 is unpersuasive. The Court must now determine which of the disputed documents concern the same subject matter as documents 434 through 437 and are therefore no longer protected by attorney-client privilege.

At issue are the two other considerations listed in Rule 502(a): whether the disputed documents pertain to the same subject matter, and whether they ought, in fairness, to be considered alongside Documents 434 through 437. Fed. R. Evid. 502(a)(1)–(3). Again, "there is no bright line test for determining what constitutes the subject matter of a waiver," and that the purpose of the rule is to prevent one party from tactically disclosing one communication while simultaneously withholding related communications that would provide context. *Moazzeni*, 906 F. Supp. 2d at

---

through and with its attorneys, agrees that it voluntary disclosed the communications contained in Documents 434 through 437. Defendants do not contend that their attorneys attempted to disclose these communications without authorization. Therefore, the Court finds that in this case, the Town of Parksley and its Town Council have voluntarily waived the attorney client privilege for Documents 434 through 437.

513 (quoting *Eden Isle Marina, Inc.*, 89 Fed. Cl. at 503); *see Richardson*, 764 F. Supp. 2d at 744 (refusing to order production of additional privileged communications after an initial disclosure because "*in camera* review . . . showed that fairness does not require that the undisclosed documents be considered with the disclosed documents because there is no evidence of misleading or unfair selective disclosure of attorney-client privileged information").

Courts define "subject matter" with varying levels of specificity and an eye toward Rule 502(a)'s emphasis on fairness. In *Moazzeni*, the Court described the subject matter of a particular disclosure broadly, defining it as an attorney's representation of the defendant. 906 F. Supp. 2d at 518. By calling one of his attorneys as a witness and "eliciting testimony about her representation of him," the Defendant engaged in a waiver that was "sufficiently broad" to encompass additional documents relating to that attorney's representation. *Id.*

For two communications to concern the same subject matter, "[m]ore than a mere 'touch' is required." *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 392 (S.D.N.Y. 2016) (ordering the parties to produce disputed documents for *in camera* review so the court could decide which documents concerned the same subject matter as the disclosed communications). In *Mount Sinai Hospital*, the defendant expressly waived attorney-client privilege and work product protection for an internal audit report about the defendant's billing practices, "advised and guided" by in-house counsel. *Id.* In determining whether the scope of that voluntary waiver extended to undisclosed communications, the court recognized that "there must be some reason to believe that the undisclosed communications underlay or influenced the Audit, or at least were among the materials that were considered in conducting the Audit and preparing the resulting report." *Id.*; *see also Angelone v. Xerox Corp.*, No. 09–CV–6019, 2011 WL 4473534, at *3 (W.D.N.Y. Sept. 26, 2011) (requiring Xerox to produce any otherwise-privileged document or communication

19

"considered, prepared, reviewed or relied on by Xerox in creating or issuing" a previously disclosed internal report).

In *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of Western Md., Inc.*, the plaintiff alleged that the defendant violated the Endangered Species Act, 16 U.S.C. §§ 1531-1544, by confining endangered zoo animals in unsuitable conditions. Case No. PX-17-2148, 2018 WL 3546725, at *3–*4 (D. Md. Jul. 24, 2018). The plaintiff sought to present evidence obtained through witnesses' visits to the zoo. *Id.* at *3. It claimed that it would not rely on evidence obtained by other witnesses who visited the zoo, and claimed that the other witnesses' "log notes, memoranda, investigatory reports, and other correspondence" remained protected by the work product doctrine. *Id.* at 4. The court found that the undisclosed correspondence "concern[ed] the same subject matter" as the previously disclosed reports and testimony. *Id.* It defined that subject matter as "the conditions at Tri-State Zoo and the manner in which Tri-State Zoo houses and cares for its animals." *Id.*

Here, neither party explicitly conducted the multi-factor analysis required by Rule 502(a), but they clearly disagree over the scope of the initial waiver. Plaintiffs contend that the waiver includes "the full chain of relevant communications with Attorney Wiggins," ECF No. 37 at 11, while Defendants argue that they only deposed Lewis about "the relevant chronology of the Wiggins letter," ECF No. 41 at 10, so the privilege was waived only for Documents 434 through 437. At the hearing, Plaintiffs argued that the subject matter at issue is "the reason for the [Letter to the Plaintiffs]." Defendants argued that the subject matter was the "administrative" background of the letter, meaning when it was drafted by Wiggins and produced for the Town's review.

Placing these arguments in the subject-matter-focused framework of Rule 502(a), the Court finds that the subject matter of Documents 434 through 437 is the Town's food truck ordinance

and the Plaintiffs' food truck business. To reiterate, the parties agree that Defendants waived attorney-client privilege for Documents 434 through 437. *See* ECF No. 52 at 1. These documents are not limited to time stamps on emails. *See* ECF No. 37, attach. 9 at 2–5. Lewis, on behalf of the Town, instructs Wiggins to revise the food truck ordinance that the Town Council eventually repealed. *Id.* at 2. Wiggins replies with a draft of the Letter to Plaintiffs. *Id.* at 2–5. Defined simply, the subject matter of these disclosures is Plaintiffs' food truck business and the Town's later-repealed ordinance banning food trucks in the town.

Most of the communications contained in the disputed documents concern this subject matter. In Documents 400, 402, 404, 405, 430, 432, 433, 454, 456, 522, and 523, Lewis, Wiggins, and the Town Council discuss the Town's food truck ordinance and the Town Council's process of passing, editing, and ultimately repealing it. Documents 456, 522, and 523 specifically contain emails from Lewis to the Town Council explaining Wiggins's legal opinion of the food truck ordinance, attempting to schedule a meeting between the Town Council and Wiggins about the ordinance.[13] However, Documents 430, 432, and 433 contain information regarding Plaintiffs' food truck business and the Town's later-repealed ordinance banning food trucks in the town, as well as information concerning the Town's subdivision ordinance, which is not related to the subject matter described above. Therefore, the Court finds that Defendants waived the privilege for each of the communications contained in Documents 400, 402, 404, 405, 430, 432, 433, 454,

---

[13] Communications between individuals who make up a client entity may be privileged if they discuss privileged communications or advice from an attorney and are not disclosed to a third party outside the entity. *See Rueter v. Dep't of Com.*, 63 F.4th 1357, 1373 (Fed. Cir. 2023) ('It is well established that communications between non-attorneys within an agency may be protected by the attorney-client privilege provided those communications transmit legal advice provided by an attorney."); *Baltimore Scrap Corp. v. David J. Joseph Co.*, No. CIV. L-96-827, 1996 WL 720785, at *6 (D. Md. Nov. 20, 1996) ("Courts have consistently recognized that this type of intra corporate distribution of legal advice received from counsel does not vitiate the privilege even though the legal advice is relayed indirectly from counsel through corporate personnel.").

456, 522, and 523, but did not waive the privilege with respect for the specific conversations about the Town's lack of a subdivision ordinance in Documents 430, 432, 433, and may not use those documents or any testimony related to the Town's lack of a subdivision ordinance.

Documents 394 and 395 discuss the Plaintiffs' food truck business and the Plaintiffs' interactions with Town authorities and the media. Documents 422, 426, and 427 contain a discussion between Lewis and Wiggins about a letter the Town received from Pastor Calherbe Monel. In that discussion, Lewis addresses the business license the Town granted the Plaintiffs before they opened their food truck business. Documents 446, 450, 451, 452, and 453 contain Lewis and Wiggins's communications about the Letter to the Town and how the Council will respond to it. Documents 458, 459, 460, and 461 discuss the Town Council and Russell's interactions with the Plaintiffs and the zoning ordinance violation described in the Letter to Plaintiffs. In Documents 418 and 420, Lewis and Wiggins attempt to schedule a phone call about food trucks. Each of these documents contains communications about the subject matter of the initial disclosure—Plaintiffs' food truck business and the Town's later-repealed ordinance banning food trucks in the town—so the Court finds that Defendants have waived attorney-client privilege for these documents and the communications contained therein.

Documents 462, 466, 470, 566, and 568 discuss a Freedom of Information Act request for communications about the Plaintiffs' food truck, other food trucks in the Town, the Town's ordinance banning food trucks, and any disputes involving Nicholson. Therefore, the conversation between Wiggins and Lewis about this request clearly relates to the subject matter of the initial disclosure, Plaintiffs' food truck business and the Town's later-repealed ordinance banning food trucks in the town, and are no longer privileged.

22

Documents 480, 481, 518, 519, and 520 contain emails between Lewis on behalf of the Town and individuals who appear to be previous Town Attorneys and legal counsel. Had Lewis's emails to these other attorneys been produced separately, Defendants could potentially argue that they were protected and separate from Lewis's conversations with Wiggins. But these communications were sent to Wiggins as part of his review of the materials produced according to the FOIA request, and again, they concern the Town's food truck ordinance. Doc. 470 (sending Wiggins the proposed response to the FOIA request relating to the food truck ordinance and food trucks generally). Therefore, they cover the same subject matter as the initial disclosure and are no longer privileged.

Documents 569, 570, 571, and 572 contain Wiggins's billing statements to the Town. "Typically, the attorney-client privilege does not extend to billing records and expense reports." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999). But when the billing records contain information that reveals specific research, a litigation strategy, or the advice sought by the client, those records are privileged. *Id.* at 402–03. Defendants claim that the statements are privileged. *See* ECF No. 52 at 2. Because the statements contain details about the specific legal work the Town asked Wiggins to perform, the Court agrees and finds that Defendants have established that they contain privileged communications.

The question is whether each of Wiggins's entries on the billing statements concerns tasks related to the Plaintiffs' food truck or the food truck ordinance and are therefore subject to waiver. The Court finds that they do, and that the attorney-client privilege is waived for all of the entries contained in Wiggins's billing statements except for the entries listed for October 26, 2023, and November 23, 2023. Docs. 569, 571, 572. From the text of the October 26, 2023, and November 23, 2023, entries, the Court cannot determine whether they are related to the subject matter of the

initial disclosures and thus waiver cannot be established. Docs. 569, 571. Therefore, Defendants waived attorney-client privilege for the entries listed in Documents 569, 570, 571, and 572 except for the entries listed for October 26, 2023, and November 23, 2023.

The Court has also considered whether the documents "ought in fairness to be considered together." Fed. R. Evid. 502. The Court's findings as to waiver adheres to Rule 502(a)'s stated purpose of penalizing "the selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. 502 advisory committee's notes. Defendants disclosed Documents 434 through 437 at Lewis's deposition for the tactical purpose of proving when Wiggins sent the Letter to Plaintiffs, and that the letter Wiggins sent to Lewis dated November 1 was the same one he sent to Plaintiffs postmarked November 3. ECF No. 41 at 11 (arguing that Defendants were left "in the fundamentally unfair position of having to provide privileged communications through a limited waiver of attorney-client privilege to counter Plaintiffs' bogus mail fraud claims"). In doing so, they used the privilege as a sword. *See In re Zetia (Ezetimibe) Antitrust Litigation*, 2022 WL 4354620 at *3. Then, they attempted to use the privilege as a shield by claiming that it protected the remaining, disputed documents. *Id.*

Most of the emails between Wiggins and the Town relates to the same subject matter discussed in Documents 434 through 437, namely the Town's food truck ordinances and its interactions with Plaintiffs. These disputed communications also contextualize Documents 434 through 437 by demonstrating the Town's process of considering whether Plaintiffs' business should be allowed to continue to operate, its evaluation of its eventually repealed food truck ordinance, and its decision to send the Letter to Plaintiffs. *See, e.g.*, Doc. 394 (asking for Wiggins's assistance with the food truck ordinance and describing the conflict between Town officials and Plaintiffs); Doc. 430 (requesting that Wiggins draft a letter to the Plaintiffs "regarding being out

24

of compliance with the zoning ordinances and having to move"); Doc. 470 (sending Wiggins the Town's proposed response to a FOIA request seeking documents relating to food trucks and the food truck ordinance, specifically).

Defendants have failed to meet their burden to prove that these documents remain protected by attorney-client privilege, and they failed to cite a single case demonstrating why their concept of a "limited waiver" should be credited. Fairness dictates that Defendants' waiver of attorney-client privilege for Documents 434 through 437 waived attorney-client privilege for the other disputed documents as outlined above, and that Plaintiffs may use those documents going forward. Additionally, because the Court finds that the disputed documents are not protected by attorney-client privilege, Plaintiffs may use the second depositions of Lewis and Russell as they relate to the disputed documents.[14]

### B. The Court Grants in Part and Denies in Part Plaintiffs' Motion to Amend the Complaint.

Using information gathered from the disputed materials and throughout discovery, Plaintiffs seek to amend their Complaint by:

(i) Streamlining Count III and IV, which are equal protection claims, by deleting some of the alternative bases for those claims.

(ii) Deleting Counts V and VI, which were due process claims regarding connections to utilities.

(iii) adding allegations regarding the retaliation claim (formerly Count VIII, now Count VI) to clarify that the town government's retaliation was not only for Plaintiffs' counsel's letter but was also for Plaintiffs' other constitutionally protected activities, including publicly criticizing the government's new policy and speaking with news reporters.

---

[14] This ruling is limited to the documents in dispute and the second depositions of Lewis and Russell. The Court does not hold that any other communications between the Town and Wiggins that were not produced by the parties in connection with this dispute are no longer privileged.

(iv) Amending the relief sought to include a claim for punitive damages against Councilmember Nicholson in his personal capacity.

ECF No 37 at 13. Defendants argue that the request to amend the complaint is prejudicial and made in bad faith. ECF No. 41 at 4–5. In their briefing, Defendants make several arguments to support their claim that the proposed amended complaint is prejudicial. *See id.* at 4–7. However, at the hearing, the Defendants narrowed[15] their opposition to the Motion to Amend to a single argument: that allowing Plaintiffs to amend their complaint to add a claim for punitive damages would be prejudicial to Defendants because it would require additional discovery late in the litigation process and would subject Nicholson, specifically, to additional liability.

As explained in further detail below, the Court finds that adding a claim of punitive damages would unfairly prejudice Nicholson, so the Court **DENIES** Plaintiffs' Motion to Amend the Complaint to add a claim of punitive damages, but **GRANTS** the Motion to Amend in all other respects.

*1. Legal Standard.*

Federal Rule of Civil Procedure 15(a)(2) states that the Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, "the federal rules strongly favor granting leave to amend." *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993). "Leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Boone v. Dejoy*, No. 2:21CV597, 2022 WL 1811187, at *1 (E.D. Va. June 2, 2022) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503,

---

[15] At the hearing, the Court noted: "Taking [punitive damages] out of the equation, I still don't understand what discovery has to be done because of these allegations as they've been amended." Defense counsel replied: "There is none." Before moving to the issue of punitive damages, the Court then asked: "Is there any form or fashion by which the defense is prejudiced by allowing an amended complaint?" Defense counsel replied: "I don't think so, Your Honor."

509 (4th Cir. 1986)).  "The mere possibility—or even likelihood—that the Court, at a later date, may find for [the party opposing the motion to amend] does not render an amended complaint legally insufficient." *Id* at 2.

"Whether an amendment is prejudicial will often be determined by the nature of amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).  Delay alone is "an insufficient reason to deny [a party's] motion to amend." *Id.*   An amendment that raises a new legal theory "that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial" would be prejudicial. *Id.* (quoting *Johnson*, 785 F.2d at 509).  "Courts often deny motions for leave to amend that come 'near or at the close of discovery' for prejudice." *Celebrate Va. S. Holding Co., LLC v. CVAS Prop. Mgmt., LLC*, No. 3:21CV261, 2022 WL 20581965, at *1 (E.D. Va. Jan. 27, 2022) (citing *McKinney v. UPS Freight*, No. 7:08-2264, 2009 WL 10710976, at *3 (D.S.C. Sept. 3, 2009)).

   2. *Plaintiffs' addition of a punitive damages claim against Nicholson is unfairly prejudicial.*

   Plaintiffs argue that their punitive damages claim arises from statements Nicholson made during his deposition. *See* ECF No. 37 at 13.  Plaintiffs allege that at his deposition, Nicholson indicated that he "made no effort whatsoever to see whether the pipe connected to Plaintiffs' food truck should be cut before he ordered it to be cut." *Id.*  Plaintiffs further allege Nicholson said that he should not have cut the pipe, and that he knew that he should not have cut the pipe "around the same time that the pipe was finished being cut." *Id.*   Plaintiffs argue that these additional statements show that Nicholson acted with the intent necessary to sustain a claim of punitive damages. *Id.*   Based on the new evidence of Nicholson's mental state gathered during his deposition, Plaintiffs argue that they should be permitted to amend their Complaint to include a claim of punitive damages. ECF No. 37 at 13.

Evidence of the Defendant's intent or mental state may be relevant to the question of punitive damages with respect to Plaintiffs' claims under 42 U.S.C. § 1983 and Virginia tort law. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *Deavers v. Vasquez*, No. 3:14CV365, 2014 WL 12917627, at *2 (E.D. Va. Oct. 3, 2014) ("Punitive damages are warranted [in Virginia] only where the plaintiff demonstrates that the defendant acted with actual malice or with such willful or wanton negligence as to evince a conscious disregard to the rights of others.") (quoting *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 327 (Va. 1990) and *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 277 (Va. 1967)); *Fellerman v. Am. Ret. Corp.*, No. 3:09cv803, 2010 WL 1780406, at *6 (E.D. Va. May 3, 2010) ("The Supreme Court of Virginia has defined [the standard for punitive damages] as 'action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause the injury of another.'") (quoting *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003)).

At the hearing, Defendants claimed that that they would need to conduct additional discovery to rebut Plaintiffs' contention that when Nicholson acted, he possessed the state of mind required to support a claim of punitive damages. Specifically, they claimed that they would need to investigate by "talk[ing]" to the councilmembers who appointed Nicholson director of public works and "talk[ing]" to the Plaintiffs regarding Nicholson's prior conduct. Defendants also noted at the hearing that the Town's insurance would not cover Nicholson if he were found liable for a claim for punitive damages.

At this stage of litigation, adding a punitive damages claim to the Complaint would unfairly prejudice Nicholson. According to Defendants, the Town's insurance would not indemnify a punitive damages claim against Nicholson personally, so that claim would subject Nicholson to significantly greater financial liability when discovery has already closed and trial looms. Faced with this increased financial risk, Nicholson did not have the opportunity to retain personal counsel during the discovery process, including during his deposition. Retaining his own attorney this late in the litigation process would certainly prejudice his efforts to defend himself against the new punitive damages claim so late in the case. In *Orix Credit All., Inc. v. Taylor Mach. Works, Inc.*, the Seventh Circuit held that a similar late addition of a claim for punitive damages that would potentially require a defendant to obtain his own counsel was prejudicial. 125 F.3d 468, 481 (7th Cir. 1997). The Court recognized that:

> Moreover, the new counts do add an element of surprise—they add the prospect of punitive damages for [the defendant]. [The defendant] persuasively points out that had he known of the fraud claim prior to trial, he may have taken different measures—such as retaining counsel independent from Taylor—to protect himself from the additional liability. The potential prejudice to [the defendant], coupled with Orix's undue delay in seeking to amend its complaint, provided the district court with adequate grounds to deny Orix's motion for leave to amend. We therefore find that the court did not abuse its discretion in doing so.

*Id.* Clearly, Nicholson may very well have planned his defense in the litigation differently had he known he faced the prospect of personal liability from punitive damages earlier.

Perhaps Plaintiffs addition of punitive damages would be justified, and less prejudicial, if they had discovered glaring examples of Nicholson's alleged wanton and reckless behavior mere days before the close of discovery. But Plaintiffs deposed Nicholson on November 14, 2024, three months before filing the instant motion, and now claim that all the new evidence supporting a claim of punitive damages came from that deposition. ECF No. 37, attach. 11 at 3; ECF No. 37 at 13. Moreover, the evidence obtained during Nicholson's deposition related to his mental state is

29

not so new that it departs entirely from the allegations contained in the original Complaint.  In the original Complaint, Plaintiffs allege that Nicholson intentionally cut the pipe, that "there was no legitimate reason" to cut the pipe, Nicholson did not have permission to cut the pipe, Nicholson had no lawful reason to cut the pipe, the constitutional violations at issue "were, or reasonably should have been, obvious to Nicholson," and that "Councilmember Nicholson had, and continues to have, animus toward the Plaintiffs."  ECF No. 1 at ¶¶ 42, 164, 182, 415, 448.  They claim that Nicholson's admissions during his deposition—for example, that he admitted that the pipe should not have been cut and that he knew that it should not have been cut—warrant an amended complaint seeking punitive damages.  ECF No. 37 at 13.  But the Court finds that these admissions are not such a material departure from the allegations contained in the original Complaint to justify the prejudice to Defendant caused by the addition of a punitive damages claim so late in the litigation process.

The remaining amendments to the complaint seek to streamline, clarify and further support Plaintiffs' allegations as developed through discovery, and are not unfairly prejudicial to Defendants.  Therefore, the Court **DENIES** Plaintiffs' Motion to Amend the Complaint by adding a claim of punitive damages against Nicholson, but **GRANTS** the Motion to Amend the Complaint in all other respects.

### C. The Court Denies Plaintiffs' Request to Prevent Defendants from Relying on Wiggins's Testimony in the future.

Lastly, Plaintiffs request that the Court order the Defendants to not "rely on Attorney Wiggins's testimony in the future." ECF No. 37 at 14.  At the hearing, Defendants represented to the Court that they did not plan to depose Wiggins or use his testimony in the future based on the current complaint.  Based on the Court's rulings in this order, numerous formerly privileged documents are now available for the parties to use, and it is possible Attorney Wiggins's

30

testimony may be relevant in the future.  That is a question that must be deferred until it is more apparent whether and to what extent Defendants might seek to use such testimony.  Therefore, the Court **DENIES** Plaintiffs' request to prevent Wiggins from testifying in the future.

### III. CONCLUSION

The Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion to Use Privileged Materials and Amend Complaint, ECF No. 36, in the following respects:

1) The Court **GRANTS** that part of Motion to Use Privileged Materials to the extent Plaintiffs may use the disputed documents and deposition testimony, except for the few partial communications that remain privileged as outlined above, in future stages of this litigation.

2) The Court **DENIES** that part of the Motion to Amend the complaint to the extent it seeks to add a claim of punitive damages against Defendant Nicholson, but **GRANTS** the Motion to Amend in all other respects.  Plaintiffs are directed to file the Amended Complaint within five days of the date of this Order, **April 16, 2025**.

3) The Court **DENIES** that part of the motion seeking to prevent Attorney Wiggins from testifying.

Additionally, having previously suspended the summary judgment deadline, the Court **ORDERS** that the deadline for summary judgment motions to be filed is ten days from the date of this Order, **April 21, 2025**.

The Clerk is **DIRECTED** to forward this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 11, 2025