**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**THESLET BENOIR AND
CLEMENE BASTIEN, A MARRIED COUPLE,
AND EBEN-EZER HAITIAN FOOD TRUCK, LLC,**

       **Plaintiffs,**

**v.**                          **Case No. 2:24-cv-00064**

**TOWN OF PARKSLEY, VIRGINIA;
and
HENRY NICHOLSON, in his official
and individual capacities,**

       **Defendants.**

<u>**DEFENDANTS TOWN OF PARKSLEY, VIRGINIA, AND HENRY NICHOLSON'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

      **COME NOW** Defendants Town of Parksley, Virginia ("Parksley") and Henry Nicholson ("Nicholson") (together, "Defendants"), by counsel, pursuant to Federal Rule of Civil Procedure 56 and in support of their <u>Motion for Summary Judgment</u> in their favor and to dismiss this case in its entirety, state as follows:

## I.      <u>INTRODUCTION AND EXHIBITS</u>

      Parksley, with a population of approximately 800 people, is located on the Eastern Shore of Virginia. In 2023, its town government consisted of six councilmembers and a mayor, some of whom out of necessity and despite having private-sector full time jobs, personally worked alongside the few town employees. Its status as a small town did not insulate it from big problems. In 2023, after spending hundreds of thousands of dollars, Parksley still struggled to maintain its fragile sewer system, the functionality of which was inextricably intertwined with the survival of many of its existing businesses.

1

Concurrent with Parksley's sewer system problems, Plaintiffs had been operating the Eben-Ezer Haitian Variety Market in Parksley since 2019. During the COVID-19 Pandemic, in a gesture that hardly indicates any animus towards Plaintiffs, Parksley supported Plaintiffs' Eben-Ezer Haitian Variety Market by providing it with thousands of dollars sourced from the federal government. Plaintiffs even chose to <u>expand</u> their existing business in Parksley in early 2023[1] through the addition of a towable food truck trailer equipped to cook food. However, Plaintiffs subsequent actions related to their food truck trailer operations threw into jeopardy Parksley's ongoing efforts to protect its sewer system and, therefore, the viability of the businesses already connected to it. Plaintiffs violated applicable laws and ordinances in the operation of their Eben-Ezer Haitian Food Truck trailer ("EEHFT"), including by admittedly connecting a wastewater pipe directly into the Parksley sewer system without permission and in spite of being specifically told not to do so by Nicholson. Ironically, Plaintiffs' business license, issued in May 2023, was issued by the Parksley Town Clerk, Lauren Lewis ("Lewis"), without the contemporaneous knowledge that the license itself violated the existing town zoning ordinance restrictions pertaining to its commercial district.

Through the operation of EEHFT, Plaintiffs persisted in illicit conduct of concern to both Parksley and state officials. A series of actions followed by Parksley officials and employees regarding Plaintiffs' food truck trailer. Those actions were intended to preserve the functionality of the Town's sewer system and to protect the viability of its other constituent businesses already connected to the same. This included direct action by Parksley officials and employees specifically responsible for protecting its sewer system. Legislative efforts by elected Parksley

---

[1] Tellingly, Plaintiffs do not allege any illegal conduct or animus on the part of Defendants between 2019, when they opened the Eben-Ezer Variety Market, and 2023, when they opened the food truck in question in this litigation.

councilmembers culminated in October 2023 in the short-lived enactment of Ordinance 23-01 Governing the Use of Mobile Food Units ("Ordinance 23-01"). This legislation was repealed in November 2023 (and never enforced against anybody or any entity).

Ultimately, instead of obtaining, or even merely applying for, a Parksley Special Use Permit ("SUP") that would have allowed Plaintiffs to continue EEHFT operations, they opted to bring this lawsuit. They seek a mixture of compensatory damages, nominal damages, declaratory relief, and injunctive relief.

The following Exhibits are attached to this Memorandum of Law in Support of Motion for Summary Judgment:

A.      Charter for the Town of Parksley, Virginia is attached as Exhibit ("Ex.") 1 and cited herein as Ex. 1 (also Parksley Deposition Ex. 60).

B.      The November 14, 2024, deposition of Defendant Henry Nicholson is attached hereto as Ex. 2 and cited herein as "Nicholson Depo."

C.      The December 10, 2024, deposition of Parksley Councilman Bradley York is attached hereto as Ex. 3 and cited herein as "York Depo."

D.      The November 14, 2024, deposition of Parksley Councilman Richard Taylor is attached hereto as Ex. 4 and cited herein as "Taylor Depo. (Vol. 2)"

E.      The September 19, 2024, deposition of Parksley Mayor Frank Russell is attached hereto as Ex. 5 and cited herein as "Russell Depo."

F.      The September 19, 2024, deposition of Parksley Councilman Mark Layne is attached hereto as Ex. 6 and cited herein as "Layne Depo."

G.      The October 29, 2024, deposition of Parksley Councilman Francis Welch is attached hereto as Ex. 7 and cited herein as "F. Welch Depo."

H.     A Resolution for the Supervision of Town Employees is attached hereto as Ex. 8 and cited herein as Ex. 8 (also Parksley deposition Ex. 28).

I.     Meeting Minutes from March 13, 2023, Parksley Town Council Meeting is attached as Ex. 9 and cited herein as Ex. 9 (also Parksley deposition Ex. 24).

J.     The October 29, 2024, deposition of Parksley employee Michael McCready is attached hereto as Ex. 10 and cited herein as "McCready Depo."

K.     The September 27, 2024, deposition of Parksley Councilman Richard Taylor is attached hereto as Ex. 11 and cited herein as "Taylor Depo. (Vol. 1)"

L.     The September 16, 2024, deposition of Parksley Town Clerk Lauren Lewis is attached hereto as Ex. 12 and cited herein as "Lewis Depo."

M.     Town of Parksley Business License for 2023 is attached as Ex. 13 and cited herein as Ex. 13 (also Parksley Deposition Ex. 12).

N.     June 16, 2023, text between Michael McCready and Lewis is attached as Ex. 14 and cited herein as Ex. 14 (also Parksley Deposition Ex. 49).

O.     The September 19, 2024, deposition of Councilwoman Janice Welch is attached hereto as Ex. 15 and cited herein as "J. Welch Depo."

P.     The September 16, 2024, deposition of Virginia Department of Health ("VDH") employee William Pfeiffer is attached hereto as Ex. 16 and cited herein as "Pfeiffer Depo."

Q.     July 17, 2023, Food Establishment Inspection Report is attached hereto as Ex. 17 and cited herein as Ex. 17 (also Parksley Deposition Ex. 6).

R.     October 9, 2023, Town Council Meeting Minutes are attached hereto as Ex. 18 and cited herein as Ex. 18 (also Parksley Deposition Ex. 25).

S.      Town of Parksley Water/Sewage Ordinance is attached hereto as Ex. 19 and cited herein as Ex. 19 (also Parksley Deposition Ex. 61).

T.      Town Zoning Ordinance is attached hereto as Ex. 20 and cited herein as Ex. 20 (also Parksley Deposition Ex. 62).

U.      Funds Paid to Maintain Parksley Sewer System is attached hereto as Ex. 21 and cited herein as Ex. 21 (also Parksley Deposition Ex. 59).

V.      November 14, 2023 Town Council Meeting Minutes are attached hereto as Ex. 22 and cited herein as Ex. 22 (also Parksley Deposition Ex. 26).

W.      Pfeiffer photo of grease buckets behind Plaintiffs' shed is attached hereto as Ex. 23 and cited herein as Exhibit 23 (also Parksley Deposition Ex. 8).

X.      Emails between Town of Parksley and Calherbe Monel are attached hereto as Ex. 24 (also Parksley Deposition Ex. 27).

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOF")

1.      Plaintiff Theslet Benoir ("Benoir") is, and was at all times relevant, a United States citizen, as well as a co-member and the registered agent of Defendant Eben-Ezer Food Truck, L.L.C. ECF No. 54 at ¶ 11; ECF No. 35 at ¶ 2.

2.      Plaintiff Clemene Bastien ("Bastien") is a United States citizen, as well as a co-member and the registered agent of Defendant Eben-Ezer Haitian Food Truck, L.L.C. ECF No. 54 at ¶ 12; ECF No. 35 at ¶ 3.

3.      Plaintiff Eben-Ezer Haitian Food Truck, L.L.C. is, and was at all times relevant, a Virginia Limited Liability Company located in Parksley. ECF No. 54 at ¶ 13.

4.      Parksley is a municipal corporation duly chartered by the Commonwealth of Virginia. Ex. 1.

5.      Parksley is governed by six town councilmembers and a mayor. Id. at § 3.1.

6.      The Parksley Town Council meets at most twice a month, including for work sessions. Nicholson Depo. 72:17-72:21; see York Depo. 7:20-7:25.

7.      Each Parksley Town Council member donates his or her $2,000 council salary back to Parksley. Russell Depo. 19:2-19-3; Nicholson Depo. 18:12-18:13.

8.      Each Parksley Town Council member has a full-time job unrelated to being a Parksley councilmember,[2] and none of the Parksley councilmembers have legal backgrounds. Taylor Depo. (Vol. 2) 58:8-58:14; Russell Depo. 20:15-20:18.

9.      Nicholson is, and was at all times relevant to this litigation, a Parksley Town councilmember and a resident of Parksley. ECF No. 54 at ¶ 15.

10.     Nicholson is, and was at all times relevant, the Supervisor of Parksley Public Works. Nicholson Depo. 18:6-18:8; Taylor Depo. (Vol. 2) 60:10-60:16.

11.     Nicholson was officially appointed Supervisor of Parksley Public Works by Mayor Russell pursuant to a March 13, 2023, Resolution passed by the Parksley Town Council, and with the consent of the Parksley Town Council. Russell Depo. 18:3-18:4, 60:11-61:9; Layne Depo. 62:10-62:11; F. Welch 15:8-15:13; Ex. 8; Ex. 9 at DEF000251, DEF000253.

12.     Parksley Public Works and Nicholson, as its Supervisor, were, at all times relevant, in charge of both Parksley's water and sewer systems. Nicholson Depo. 213:11-213:16; F. Welch Depo. 13:14-13:17.

13.     As Supervisor of Parksley Public Works, Nicholson directed its employees in their daily tasks. Nicholson Depo. 25:14-26:20; Russell Depo. 18:5-18:14; McCready Depo. 14:24-15:2, 19:11-19:14; F. Welch Depo. 16:2-16:6; York Depo. 11:23-12:12.

---

[2] This excludes Councilman York, who is retired. York Depo. at 7:19-7:25.

14.     Since 2019, Plaintiffs have owned and operated the Eben-Ezer Variety Market, located at 24312 Bennett Street, Parksley, Virginia 23421 ("the Property"), which sells groceries, home goods, and other merchandise. ECF No. 54 at ¶ 20; ECF No. 35 at ¶ 1.

15.     In 2020, Parksley provided Plaintiffs and the Eben-Ezer Variety Market with over six-thousand dollars in funding from the federal government related to the COVID-19 Pandemic. ECF No. 35 at ¶ 8; Russell Depo. 9:18-9:20; Taylor Depo. 32:19-33:7.

16.     In addition to the Eben-Ezer Variety Market, Plaintiffs are the owners and operators of EEHFT, which has been located at the Property since 2023. See ECF No. 54 at ¶¶ 21, 28; ECF No. 35 at ¶¶ 4, 9-13; see also ECF No. 35-4 (picture of EEHFT).

17.     EEHFT sold food stuffs cooked and prepared within the trailer for consumption by customers outside of the trailer. ECF No. 35 at ¶ 5.

18.     EEHFT, with no independent means of self-propelled mobility, is permanently parked at the Property, and is located in a Parksley district zoned for Commercial-General uses. Taylor Depo. (Vol. 2) 57:24-58:7; ECF No. 35 at ¶¶ 10-13; ECF No. 35-4; Ex. 20 at Art. III (DEF000365).

19.     EEHFT was the first permanent food truck in Parksley, whereas in the past other food trucks came into Parksley temporarily for special events and obtained special event permits distinct from SUPs. Russell Depo. 15:7-15:22; Taylor Depo. (Vol. 1) 36:1-36:19; Taylor Depo. (Vol. 2) 47:23-48:12, 50:13-51:2, 58:15-60:9; F. Welch Depo. 27:11-27:17; Nicholson Depo. 62:17-63:14, 213:17-213:24.

20.     Under the Parksley Zoning Ordinance, those uses not specified as permissible in the district zoned for Commercial-General uses can apply for a SUP. Ex. 20 at Arts. III-4.2, III-4.3; Taylor Depo. (Vol. 2) 48:13-48:15.

21.    Lewis, as Parksley Town Clerk, works with Parksley Town Council, attends its meetings, takes minutes, collects tax revenue, sends out tax bills, keeps town records, and communicates with the Parksley Town Attorney. Lewis Depo. 10:4-10:10; Taylor Depo. (Vol. 2) 26:10-26:16.

22.    As Parksley Town Clerk, Lewis takes care of many of the day-to-day tasks in running the Parksley town government and contacts the Parksley Mayor when she has questions. Russell Depo. 8:12-8:15.

23.    As Parksley Town Clerk, Lewis did not have authority to waive any zoning requirements or ordinances. Lewis Depo. 73:13-73:16.

### Pre-June 16, 2023

24.    Prior to EEHFT, Parksley had food trucks in town only temporarily on a short-term basis for special events, normally on public property. Nicholson Depo. 60:24-61:4, 61:23-62:8, 63:18-63:21; Taylor Depo. (Vol. 2) 47:23-48:12, 50:13-51:2, 58:15-60:9.

25.    Over the years preceding this litigation, Parksley had spent hundreds of thousands of dollars to repair and maintain the functionality of its delicate town sewer system. Ex. 21; Taylor Depo. (Vol. 2) 54:17-55:5; Russell Depo. 22:11-22:14, 35:16-35:20.

26.    If the Parksley sewer system is not functional, e.g., if it has to be shut down because grease is pumped directly into the sewer system, then that circumstance threatens every business in Parksley. Russell Depo. 22:15-22:20, 33:1-33:11; Layne 42:5-42:16; Nicholson Depo. 215:5-217:21.

27.    If wastewater is put directly into the Parksley sewer system, it can kill the bugs that process the sewer system's contents and maintain its compliance with VDH requirements, thereby

costing Parksley thousands of dollars in order to "reseed" the bugs in the Parksley sewer system. Nicholson Depo. 215:5-216:11.

28.     In May 2023, Plaintiffs applied for, and obtained from Lewis, a Parksley business license for EEHFT. Lewis Depo. 12:17-12:19; Ex. 13.

29.     At the time the Parksley business license was issued to Plaintiffs, Parksley believed food trucks were authorized under its town zoning and ordinances. Taylor Depo. (Vol. 1) 37:9-37:14.

30.     Lewis neither told Plaintiffs they could connect EEHFT to the Parksley sewer system nor did she have the authority to authorize Plaintiffs to connect EEHFT to the Parksley sewer system. Lewis Depo. 73:21-74:2.

31.     Shortly after issuing EEHFT's business license, Lewis called Nicholson and informed him that Plaintiffs wanted approval of a water connection to EEHFT. Nicholson Dep. 117:13-118:9.

32.     After talking with Lewis, Nicholson proceeded to visit the EEFHT, where Benoir and Bastien proceeded to show Nicholson the inside and outside of the trailer. At that time the wastewater line was not yet connected, but, upon noticing a hose and the lack of a tank for the disposal of wastewater, Nicholson advised Plaintiffs they were not allowed to connect the food truck's wastewater to the Parksley sewer system. Nicholson Depo. 118:11-121:23, 130:9-130:14, 131:18-132:11.

33.     Plaintiffs began operating EEHFT by June 9, 2023, at least seven days before June 16, 2023. Institute for Justice. (2024, January 23). *Raging Councilman Physically Destroys Innocent Business*. YouTube. https://www.youtube.com/watch?v=MhpE4VsW5kM (see video at 1:06 to 1:32).

9

34.     Prior to June 15, 2023, Nicholson had witnessed Plaintiffs serving customers from EEHFT, though prior to that date the food truck was not known to be hooked up to the Parksley sewer system. Nicholson Depo. 113:10-113:22, 135:22-136:8, 138:20-139:10.

35.     On **June 15, 2023**, Nicholson was driving past EEHFT on his routine morning trip to purchase coffee at Royal Farms, when he noticed that EEHFT was directly connected via PVC pipe to the Parksley sewer system (against Nicholson's initial advisement). Nicholson Depo. 112:15-113:8, 132:21-133:2; SOF ¶ 32; ECF No. 35 at ¶ 14.

36.     Plaintiffs had run a PVC pipe carrying wastewater from the EEHFT alongside the Eben-Ezer Variety Market building, into the Parksley sewer system's sewage collection tank. Russell Depo. 64:4-66:14, 68:9-69:7.

37.     Pumping grease from the EEHFT directly into the Parksley sewer system threatened to damage the sewer system and cost the Town thousands of dollars to fix. Layne Depo. 42:5-42:16; SOF ¶¶ 26-27; Ex. 21.

38.     After seeing the PVC pipe connection to the Parksley sewer system on June 15, 2023, Nicholson called Parksley Public Works employee Percy Smith ("Smith") to come to EEHFT. Nicholson Depo. 114:5-114:21.

39.     Smith, under Nicholson's direction, cut the PVC pipe running wastewater from EEHFT into the Parksley sewer system. Nicholson Depo. 114:5-114:7; ECF No. 35 at ¶¶ 14-15.

40.     The PVC pipe carrying wastewater from EEHFT needed to be cut immediately to prevent damage inflicted by wastewater on the Parksley sewer system. Russell Depo. 35:21-35:23; Nicholson Depo. 215:5-216:11; see SOF ¶¶ 26-27.

41.     Benoir arrived on scene at the EEHFT as Smith was cutting the PVC pipe to the Parksley sewer system. Nicholson Depo. 114:5-114:6, 116:16-116:20.

42.     After Benoir's arrival at EEHFT on June 15, 2023, Nicholson proceeded to personally tell Benoir for a second time EEHFT could not be hooked up to the Parksley sewer system. Nicholson Depo. 116:22-116-24, 134:2-135:7.

## June 16, 2023

43.     Michael McCready ("McCready") has been an employee of the Parksley Public Works Department since March 2023. McCready Depo. 9:10-9:18.

44.     In addition to being a Parksley Public Works employee, McCready was also the Parksley Acting Zoning Administrator from June 1, 2023, to March 1, 2024. McCready Depo. 7:22-8:2.

45.     On **June 16, 2023**, Lewis asked McCready via text message to go to the Eben-Ezer Haitian Food Truck trailer because a complaint had been received by Parksley that Plaintiffs had re-connected their food truck directly to the Parksley sewer system. McCready Depo. 10:10-10:14, 12:2-12:9; Ex. 14.

46.     Nicholson, as Supervisor of Public Works, was informed by Mayor Russell on June 16, 2023, that Plaintiffs had re-connected to the Parksley sewer system and Nicholson was already at the Eben-Ezer Haitian Food Truck when McCready arrived on scene. Taylor Depo. (Vol. 2) 60:10-60:16; McCready Depo. 12:24-13:3; Nicholson Depo. 137:14-137:21, 219:11-220:12.

47.     From where Nicholson and McCready were physically located on the public sidewalk in front of EEHFT on June 16, 2023, it appeared to both men that the food truck had been re-connected to the Parksley sewer system located behind the Eben-Ezer Variety Market. McCready Depo. 10:15-10:20, 13:24-14:1; Nicholson Depo. 141:20-141:24, 219:11-219:17, 220:14-221:1.

11

48.     Nicholson also believed that Plaintiffs had re-connected EEHFT to the Parksley sewer system based on their earlier disregard of his instructions not to do so. Nicholson Depo. 221:2-221:7; see SOF ¶ 32.

49.     Nicholson, believing that the PVC pipe was re-connected from EEHFT to the Parksley sewer system, told McCready to cut that PVC pipe again for a second time. McCready Depo. 12:24-13:3, 14:2-14:14; Nicholson Depo. 142:24-143:2; Ex. 14; see SOF ¶ 39.

50.     McCready believed that Nicholson was instructing him to cut the PVC pipe in Nicholson's capacity as Supervisor of Public Works. McCready Depo. 41:14:41:22.

51.     Nicholson, as Supervisor of Public Works, felt compelled to cut the Plaintiffs' PVC pipe on the morning of June 16, 2023, because Plaintiffs could begin EEHFT operations at any moment that day. Nicholson believed Plaintiffs' illicit connection would place the efficacy of the Parksley sewer system in jeopardy, including through action by VDH. Nicholson Depo. 234:12-234:14, 237:12-238:1, 239:1-239:8, 241:21-242:9; J. Welch Depo. 15:20-15:22.

52.     Nicholson believed on June 16, 2023, that waiting and discussing with Plaintiffs the perceived re-connection of the PVC pipe running wastewater from the EEHFT to the Parksley sewer system would be futile, given Plaintiffs had already previously disregarded directions against such a connection. Nicholson Depo. 234:24-235:7, 236:8-236:11; see SOF ¶ 32.

53.     Nicholson could not call upon law enforcement because Parksley employs one police officer and he was not on duty the morning of June 16, 2023. Nicholson Depo. 240:11-241:10.

54.     McCready, at the direction of Nicholson, proceeded to cut the PVC pipe that they believed was directly re-connected to the Parksley sewer system, all the while both men remained

on the public sidewalk. McCready Depo. 14:5-14:14, 41:14-41:22; Russell Depo. 25:6-25:9; Nicholson Depo. 140:7-140:17, 227:12-227:21, 229:4-230:21.

55.     Nicholson and McCready did not enter Plaintiffs' leased property to cut the PVC pipe. They remained on the Town's right of way for access to the water meter. Nicholson Depo. 227:15-229:13, 229:14-229:16; ECF No. 35-1 at #6.

56.     As McCready cut the PVC pipe on June 16, 2023, Benoir approached and informed Nicholson that EEHFT was no longer hooked up to the Parksley sewer system. Nicholson Depo. 141:6-141:17, 143:5-143:10.

57.     Nicholson remained on the public sidewalk while the PVC pipe was cut by McCready on June 16, 2023. After the PVC pipe was cut, Benoir personally took Nicholson around the back side of EEHFT and showed him that EEHFT had actually been connected to an external storage tank located at the back of the Property that day. Nicholson Depo. 140:1-140:5, 143:12-143:17; see SOF ¶ 61.

58.     It was only after the cutting of the PVC pipe on June 16, 2023, and after being taken around to the backside of EEHFT by Benoir, that Nicholson and McCready learned that while the PVC pipe had initially appeared visually similar to June 15, 2023, the PVC pipe was that day running wastewater from EEHFT to an external storage tank also located on the rear of the Property. Nicholson Depo. 232:19-233:6; McCready Depo. 12:5-12:15, 13:11-13:16, 15:16-16:1, 33:1-33:9; Layne Depo. 25:4-25:12; ECF No. 35 at ¶ 18; ECF No. 35-5; ECF No. 35-6; see SOF ¶¶ 35-36, 47, 57.

59.     The external storage tank to which EEHFT was actually connected on June 16, 2023, was not an integral part of EEHFT. McCready Depo. 42:9-42:15; see SOF ¶ 61.

60.     On June 16, 2023, Nicholson and Benoir agreed that Nicholson would fix the PVC pipe severed that day if Plaintiffs got approval of the external storage tank from VDH— approval which never occurred. Nicholson Depo. 147:4-147:11.

61.     VDH neither approves the use of external wastewater holding tanks for food trucks like EEHFT, nor connections from a food truck to a municipal septic and sewer system. Pfeiffer Depo. 14:4-14:15, 43:14-43:19, 44:7-45:8.

62.     Violations of state laws and regulations are violations of the Parksley Water/Sewage Ordinances. See Nicholson Depo. 147:16-148:1; Ex. 19 at Art. I at p. 2 (violations (b)).

63.     At no point on June 16, 2023, did any Plaintiff ask Nicholson to leave; in fact, Nicholson only entered the Property when invited to do so by Benoir, and Benoir gave no indication to Nicholson that his presence on the premises was unwelcome that day. Nicholson Depo. 218:6-218:23; SOF ¶ 57.

64.     Parksley understood that Nicholson's actions on June 16, 2023, involving cutting the PVC pipe connection from the EEHFT were undertaken in Nicholson's capacity as the Supervisor of Parksley Public Works, fell within the legitimate scope of that position's duties, and were not motivated by any animus. Taylor Depo. (Vol. 2) 60:10-61:7.

65.     Though legally required for its operations, Plaintiffs did not have a pump-out agreement for EEHFT in effect prior to, or on, June 16, 2023. ECF No. 35 at ¶¶ 20, 22; ECF No. 35-7; Nicholson Depo. 149:3-149:12; Pfeiffer Depo. 17:13-18:10.

66.     A pump out agreement involves a licensed pump and hauler coming to a mobile unit such as a food truck, connecting to the mobile unit, and pumping out the wastewater from the mobile unit, with the wastewater being disposed of in a lawful manner. Pfeiffer Depo. 42:23-43:41; see ECF No. 35-8.

67.     The hose connection that carried water <u>into</u> the Eben-Ezer Haitian Food Truck was never cut at any point by Nicholson or anyone acting on Defendants' behalf; only the PVC pipe carrying **wastewater** <u>out</u> of the food truck was severed. McCready 39:24-40:7.

### **<u>Post-June 16, 2023</u>**

68.     On June 17, 2023, Nicholson, as Supervisor of Public Works, approached a delivery truck driver parked in front of the Eben-Ezer Haitian Variety Market, because the truck was parked on top of a public sidewalk with a waterline underneath. Nicholson Depo. 78:3-80:6. This precipitated a series of interactions that resulted in no civil or criminal liability against Nicholson. Nicholson Depo. 7:10-7:11.

69.     On July 17, 2023, Councilmember Mark Layne ("Layne") accompanied William L. Pfeiffer ("Pfeiffer"), an employee with VDH, during Pfeiffer's investigation into illegal dumping by Plaintiffs onto the Property. During that time, the two men found grease buckets behind the food truck on the back of the Property by a shed and black spots indicating the grease had been dumped. Pfeiffer Depo. 30:22-31:5, 33:2-32:11; Layne Depo. 18:25-19:1, 19:18-21:8, 98:9-102:1; Ex. 23 (photo of grease buckets).

70.     On July 17, 2023, based on Pfeiffer's reported observations, as well as his own observations, McCready issued a "Code and Ordinance Violation Notice" to Benoir for the discharge of wastewater from EEHFT in violation of Parksley's Water/Sewage Ordinance. McCready Depo. 21:18-21:20, 22:6-23:17; Ex. 17; ECF No. 35-10.

71.     The July 17, 2023, Code and Ordinance Violation Notice to Benoir was based on wastewater being discharged onto the ground behind EEHFT. McCready 22:15-22:24; ECF No. 35-10.

72.     The July 17, 2023, Code and Ordinance Violation Notice imposed a fine of $2,500.00 on Benoir. ECF No. 35-10.

73.     The $2,500.00 fine pursuant to the July 17, 2023, Code and Ordinance Violation Notice remains unpaid by Plaintiffs. ECF No. 35 at ¶ 26.

74.     The unlawful discharge for which Benoir was cited in the July 17, 2023, Code and Ordinance Violation Notice included an area of wetness behind the food truck concentrated in a spot which appeared to include food particles and other things that would be considered waste. McCready Depo. 25:25-26:3, 27:22-28:1.

75.     McCready's July 17, 2023, letter informed Benoir that illegal dumping in violation of the Parksley Water/Sewage Ordinance caused a potential hazard to not only the Town's residents, but also to Parksley's water and sewer system, "which we take very seriously." ECF No. 35-9; Ex. 19.

76.     On October 9, 2023, the Parksley Town Council unanimously passed a motion appointing André Wiggins ("Wiggins") as Town Attorney. Lewis Depo. 78:21-78:25; Ex. 18 at DEF00124.

77.     Also on October 9, 2023, the Parksley Town Council passed Ordinance 23-01. Lewis Depo. 78:5-78:7; Ex. 18 at DEF000123.

78.     Parksley and Nicholson first learned that food trucks, i.e., the Eben-Ezer Haitian Food Truck, were not a permissible use of property in the Parksley Commercial-General District under the Parksley Zoning Ordinance after Wiggins advised them of such, which occurred shortly after Ordinance 23-01 was enacted into law. See Russell Depo. 29:17-32:1; Layne Depo. 34:11-35:8, 79:17-79:20, 81:23-82:1; F. Welch Depo. 34:24-35:3; J. Welch Depo. 16:5-16:8, 20:21-20:23; York Depo. 15:3-15:7; Lewis Depo. 14:12-14:14.

79.     On November 1, 2023, Wiggins emailed a letter (the "Wiggins letter") to Lewis regarding Plaintiffs' violation of the Parksley Zoning Ordinance through operation of EEHFT. Lewis Depo. 84:12-84:20, 86:8-86:15, 86:23-87:2, 89:16-89:23.

80.     Wiggins sent the Wiggins Letter to Lewis for the purpose of Mayor Russell's review. Lewis Depo. 92:15-92:19.

81.     That same day, November 1, 2023, Lewis provided to Mayor Russell the Wiggins Letter addressed to Plaintiffs so that Mayor Russell could review it. Lewis Depo. 92:20-93:12.

82.     Still on November 1, 2023, Mayor Russell reviewed the Wiggins letter regarding Plaintiffs' violation of the Parksley Zoning Ordinance and approved it with no changes. Lewis Depo. 93:10-93:13, 96:9-97:2; Russell Depo. 52:8-53:5.

83.     Lewis conveyed to Wiggins via email Mayor Russell's approval of the Wiggins Letter at 2:58 p.m. on November 1, 2023. Lewis Depo. 96:15-97:5.

84.     Parksley Town Council did not learn about the Wiggins Letter, SOF ¶¶ 79-83, until after it was mailed out to Plaintiffs. Taylor Depo. (Vol. 2) 27:5-27:16; Nicholson Depo. 211:4-211:6.

85.     Ordinance 23-01 was repealed by the Parksley Town Council on November 14, 2023, at the next Town Council meeting following its enactment on October 9, 2023. Lewis Depo. 80:23-80:25; Ex. 18 at DEF000123; Ex. 22 at DEF000129.

86.     Lewis had previously informed Plaintiffs' representative Pastor Calherbe Monel ("Pastor Monel") that Plaintiffs could continue to operate EEHFT in Parksley if Plaintiffs would apply for a SUP, and she supplied Pastor Monel with documents so Plaintiffs could apply for a SUP. ECF No. 35-2 at #16; Lewis Depo. 15:18-16:12, 15:18-15:20, 16:9-16:12, 82:4-82:10, 83:4-83:6.

87.    On November 16, 2023, the day after Ordinance 23-01 was repealed, Lewis, via email, again informed Pastor Monel that Plaintiffs could apply for a SUP in order operate EEHFT in Parksley; also, Lewis informed Pastor Monel that Plaintiffs had not come into the Parksley Town Office or approached anyone regarding pursuing that SUP option. Lewis Depo. 82:11-83:6; Ex. 24.

88.    SUPs can be permanent if the holder abides by the conditions attached to it, do not require the permission of neighboring parties, can be applicable to private property, and do not have to be annually reviewed. Taylor Depo. (Vol. 2) 58:14-60:9.

89.    Plaintiffs have never filed for a Parksley SUP. Lewis Depo. 81:25-82:82:2.

### III.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is appropriate when there is no issue of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A moving party is entitled to judgment if the non-movant fails to provide sufficient evidentiary support for an essential element of the case on which it has the burden of proof. See Houchens v. American Home Assurance Co., 927 F.2d 163, 165 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Facts must be deemed "material" if they are necessary to the resolution of the case and "genuine" if they are based on more than speculation or inference. Thompson Everett, Inc. v. Nat'l Cable Adver., 57 F.3d 1317, 1323 (4th Cir. 1995). While the Court should view all of the evidence in the light most favorable to the non-movant, there is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.    ARGUMENT

### a.    Plaintiffs lack standing to bring this lawsuit because their Parksley business license was void *ab initio.*

Plaintiffs are suing Defendants in relation to their EEHFT business activities <u>that were never legal within Parksley in the first place</u>, notwithstanding the fact they had been issued a Parksley business license. <u>See</u> SOF ¶¶ 18, 20, 23, 78. Plaintiffs' business license was void from the start and they have no Article III standing to bring this lawsuit. Standing under the U.S. Constitution can be raised at any point during litigation as it is a jurisdictional question. <u>See</u> Fed. R. Civ. P. 12(h)(3).

Plaintiffs were issued a business license in May 2023. SOF ¶ 28. They began operating EEHFT no later than June 9, 2023. SOF ¶ 33. However, it was not until post-enactment of Ordinance 23-01 in October 2023 that Defendants learned from their Town Attorney, Wiggins, that EEHFT <u>had never legally operated</u> in Parksley. SOF ¶¶ 77-78. Simply, Parksley Town Council members, none of whom were lawyers, SOF ¶ 8, were all unaware that the operation of food trucks was an impermissible use on the Property where EEHFT was permanently parked. Ex. 20 at Art. III; SOF ¶¶ 18, 78. The Parksley Zoning Ordinance never allowed for the operation of food trucks, including at the time Plaintiffs received a business license for EEHFT in May 2023. <u>See</u> Ex. 20 at Article III-4.2. Article III-4.2 of the Parksley Zoning Ordinance specifically lists the uses and structures permitted by right in the commercial district where EEHFT was permanently parked. <u>id.</u> at § III-4.2 (A)-(CC); <u>id.</u> at § II (Definitions); ECF No. 35 at ¶¶ 10-13; SOF ¶¶ 17-18. Food trucks are not among the enumerated permissible uses; thus, Plaintiffs always needed a SUP to legally operate EEHFT on the Property, <u>see</u> Ex. 20 at § III-4.3(A)-(M).

Based on long-standing Virginia Supreme Court precedent in <u>Segaloff v. Newport News</u>, Parksley officials could not possibly authorize a violation of the Town's Zoning Ordinance through

the business license issued to Plaintiffs in May 2023, rendering the license invalid *ab initio*. See Segaloff v. Newport News, 209 Va. 259, 261 (1968) (noting that a permit issued in violation of an ordinance "confers no greater rights upon a permittee than an ordinance itself, for the permit cannot in effect amend or repeal an ordinance" and the issuance of such a permit "by such a municipal officer is unauthorized and void."). Standing to bring suit requires an "injury in fact" to a "legally protected interest." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs never had a vested interest when it came to operating a food truck in Parksley, see Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 147-48 (4th Cir. 2018), because it was always illegal for them to do so absent their obtaining a SUP for operating the EEHFT.

As Plaintiffs never had a valid business license per Segaloff to operate EEHFT in Parksley, they do not have standing. Defendants are entitled to summary judgment on all Counts of the Amended Complaint.

### b.  **Plaintiffs have failed to exhaust their administrative remedies.**

Plaintiffs' claims are barred for their failure to exhaust administrative remedies. They have always had the option of obtaining a Parksley SUP in order to legally operate EEHFT. See SOF ¶¶ 20, 86-89; Ex. 20 at Art. III-4.3(M). Parksley's Zoning Ordinance states that special exceptions may be made to the uses permitted by right within the Commercial-General District of Parksley where EEHFT is located upon obtaining a SUP. SOF ¶¶ 18, 20; Ex. 20 at Art. III-4.3. Plaintiffs have deliberately chosen legal action over pursuing a SUP, despite having been made aware by Parksley officials of this alternative, and perhaps permanent, permit option to run EEHFT. SOF ¶¶ 86-89.

c. **Counts Against Parksley**

Parksley is entitled to sovereign immunity on all Counts alleged against it in the Amended Complaint.

      i. *Section 1983 Claims Against Parksley – Counts II (Illegal Search and Seizure) and IV (Equal Protection).*

Parksley is entitled to summary judgment on Plaintiffs' Monell claims brought under Counts II and IV of the Amended Complaint. Plaintiffs seek declaratory and injunctive relief. ECF No. 54 at ¶¶ 255, 256, 355, 356. Plaintiffs also seek nominal damages and compensatory damages. Id.

The U.S. Supreme Court held in Monell v. Department of Social Services that local governments, generally, are not liable under Section 1983 for constitutional violations committed by individual employees except where official policy or custom resulted in a constitutional or statutory violation. Monell v. Department of Social Services, 436 U.S. 658 (1978). Municipalities cannot be liable based on a respondeat superior theory of liability. Pachaly v. Lynchburg, 897 F.2d 723, 726 (4th Cir. 1990). The Monell Court wrote:

> A municipality cannot be held liable solely because it employs a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat *superior theory* . . . . It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose ethics or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell, 436 U.S. at 691. A "policy or custom" may manifest in different forms:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decision of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 533 (4th Cir. 2022).

It is unclear which basis for <u>Monell</u> liability Plaintiffs are asserting, though they allege a Parksley "custom or policy" a number of times. ECF No. 54 at ¶¶ 211, 312, 345, 346. Yet those "allegations" are all Plaintiffs provide in support of their <u>Monell</u> claims. Plaintiffs, after extensive discovery, cannot "point to an 'express policy,' that is, 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" <u>Howard v. City of Durham</u>, 68 F.4th 934, 952 (4th Cir. 2023). Plaintiffs also cannot "show that 'a pattern of comparable practices has become actually or constructively known to responsible policymakers.'" <u>Id.</u> Plaintiffs have not alleged nor provided evidence of any pattern of unconstitutional comparable practices by Nicholson or any Parksley government official or employee that would equate to "actual or constructive knowledge" by the Parksley councilmembers. On the contrary, Parksley believed that all of Nicholson's actions relating to Plaintiffs' EEHFT on and before June 16, 2023, fell within the scope of his official duties as Supervisor of Parksley's Public Works Department, and were in no way motivated by animus or hatred towards Plaintiffs. SOF ¶¶ 10-13, 64.

Based on the foregoing, Defendant Parksley is entitled to summary judgment on Counts II and IV of the Plaintiffs' <u>Amended Complaint</u>

### ii.  *Section 1983 Federal Retaliation Claim Against Parksley – Count VI.*

Under Count VI, Plaintiffs claim violations of their First Amendment rights by Parksley.

To establish a Section 1983 First Amendment retaliation claim, a plaintiff must establish that his or her speech was protected, that defendant's alleged retaliatory action adversely affected that constitutionally protected speech, and that there was a causal relationship between the speech and the defendant's retaliatory action. <u>Suarez Corp. Indus. V. McGraw</u>, 202 F.3d 676, 685-86 (4th Cir. 2000). Plaintiffs assert Parksley reinterpreted its zoning code and threatened its enforcement

in retaliation for Plaintiffs meeting with counsel, and the November 2, 2023, Institute for Justice ("IJ") letter urging the Town to rescind Ordinance 23-01 relating to mobile food units. They also claim retaliation for Plaintiffs' speaking to the media about Parksley's activities and practices. Plaintiffs seek nominal and compensatory damages from Parksley, as well as declaratory and injunctive relief. ECF No. 54 at ¶ 418.

Plaintiffs may well still be operating EEHFT to this day if they simply applied for a Parksley SUP, thereby avoiding any alleged damages from the purported First Amendment violation. See ECF No. 54 at ¶¶ 140-146; SOF ¶¶ 86-89. Parksley is immune from this retaliation claim. See supra § IV(c)(i). Regardless of immunity, Parksley's sending the Wiggins Letter to Plaintiffs was not caused by the November 2, 2023, IJ letter regarding Ordinance 23-01, and was certainly not out of any animus towards Plaintiffs. Parksley officials and employees were not aware Plaintiffs had conferred, consulted, or retained counsel prior to receiving IJ's November 2, 2023, letter. See ECF No. 35 at ¶ 27. The Wiggins Letter, though postmarked on November 3, 2023, was drafted and approved on November 1, 2023, the day before Plaintiffs' counsel emailed its November 2, 2023, letter. ECF No. 54 at ¶¶ 106-107; SOF ¶¶ 79-84. Thus, the Wiggins letter could not have been "substantially motivated against the [Plaintiffs'] exercise of constitutionally protected conduct." ECF No. 54 at ¶ 390. If the letter was written and approved on November 1, 2023, before Parksley even knew of, let alone received the November 2, 2023, IJ letter, it is literally and legally impossible for it to be retaliation. See SOF ¶ 84. "When" Wiggins mailed the letter on November 3, 2023, is irrelevant. Further, the Wiggins letter did not cause Plaintiffs to suffer injury, as they could have applied for a SUP. SOF ¶¶ 20, 86-89.

In addition, there is absolutely no evidence in this case's record that Defendants retaliated against Plaintiffs for speaking publicly and to the media about the Parksley government's activities

and policies. Plaintiffs have said their activities described above are the "only plausible catalyst for the town attorney's letter to Plaintiffs . . . ." ECF No. 54 at ¶ 122. This "evidence" is legally insufficient and can in no way enable a reasonable factfinder to return a verdict for Plaintiff on Count VI. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In other words, Plaintiffs cannot defeat Defendants' Motion for Summary Judgment by relying on such "mere speculation," the "building of one inference upon another," or the "mere existence of a scintilla of evidence." See Anderson, 477 U.S. at 252 (1986); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D.Va. 2004).

For the foregoing reasons, Parksley is entitled to summary judgment against Count VI of Plaintiffs' Amended Complaint.

### d.  Nicholson

#### i.  §1983 Claims Against Nicholson, Official Capacity.

Plaintiffs have sued Nicholson in his official capacity under Section 1983 in Counts II (Illegal Search and Seizure) and IV (Equal Protection). They seek declaratory and injunctive relief, and nominal and compensatory damages. ECF No. 54 at. ¶¶ 255, 256, 355, 356.

Pursuant to Kentucky v. Graham, official-capacity lawsuits against government officials are "treated as a suit against the entity" because the entity "is the real party in interest." Kentucky v. Graham, 473 U.S. 159, 166 (1985). "Official-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Id. at 165. "In an official-capacity action . . . for a government entity [to be] liable under § 1983" the entity itself must be a "moving force behind the deprivation" and "the entity's 'policy or custom' must have played a part in the violation of federal law." Id. at 166 (citing Monell, 436 U.S. at 690, n. 55 (1978)). As stated

above herein, supra Section IV(c)(i), Plaintiff has not provided a scintilla of evidence that a Parksley "policy or custom" played a part in any violation of Plaintiffs' federal constitutional rights. As a result, the official capacity Counts against Nicholson must fail.

For the foregoing reasons, Nicholson is entitled to summary judgment against Counts II, and IV of Plaintiffs' Amended Complaint.

> ii. *1983 Claims Against Nicholson, Personal Capacity.*

Under Counts I (Illegal Search and Seizure) and III (Equal Protection), Plaintiffs have alleged the same Section 1983 claims against Nicholson as in Counts II and IV, but now in Nicholson's personal capacity. They seek both nominal and compensatory damages, as well as declaratory relief. ECF No. 54 at ¶¶ 201, 202, 303, 304. Qualified immunity protects Nicholson from these personal-capacity claims. Even when viewed in a light most favorable to Plaintiffs, they have not established violations of Plaintiffs' constitutional or statutory rights, let alone that these rights were clearly established at the time of Nicholson's alleged conduct.

Discovery has shown that Plaintiffs' allegations in the Amended Complaint, including those concerning Nicholson, are frequently either completely false or misrepresentations. That said, qualified immunity "shields federal and state officials from [civil] monetary damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011). For immunity to attach, a government official must have acted within the scope of his employment and performing a discretionary function during the alleged conduct. See Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). The doctrine allows for "reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012). It is meant to

ensure that public employees are not held liable for bad guesses in gray areas, but only for bright line transgressions, <u>Maciariello v. Summer</u>, 973 F.2d 295, 298 (4th Cir. 1992).

As required, Nicholson acted within the scope of his appointed capacity as Supervisor of Public Works on June 16, 2023, and at all other times relevant to the <u>Amended Complaint</u>. SOF ¶¶ 10-13, 31-32, 38-42, 46-58, 60, 64. Nicholson was officially appointed Supervisor, and matters relating to the Parksley sewer system fell within the scope of his supervisor duties. SOF ¶¶ 9-12. His actions relating to EEHFT and Plaintiffs, including on and around June 16, 2023, were based on (1) his first-hand observations, and (2) information obtained from others, that Plaintiffs were violating Parksley law by connecting directly to its fragile sewer system. <u>See</u> ¶¶ 25-26, 35, 46-47. Further, Nicholson was performing discretionary functions at all times relevant in relation to the Plaintiffs and EEHFT. He used his judgment on both when and how to perform his duties as Supervisor of Public Works regarding the same, including directing employees. <u>See</u>, <u>e.g.</u>, SOF ¶¶ 13, 49-54, 60.

Nicholson never violated Plaintiffs' statutory or constitutional rights. Regarding Count I, an illegal "search" takes place under the Fourth Amendment where the government violates a person's "reasonable expectation of privacy." <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967). Nicholson and McCready did not illegally "search" the food truck on June 16, 2023, as they did not enter the Property until <u>after</u> they were invited to enter the Property by Benoir. SOF ¶¶ 47, 54-55, 57, 63. Nor did Nicholson violate the Fourth Amendment prohibition against "unreasonable seizures" by ordering the cutting of the PVC pipe by McCready that was connected illegally to an external storage tank. <u>See</u> SOF ¶¶ 49, 59, 61. Plaintiffs were violating Parksley's Water/Sewage Ordinance, and Nicholson, as Supervisor of Public Works, instructed McCready to sever the PVC

pipe because the damage Plaintiffs might inflict meant time was of the essence and the sole Parksley police officer was not then on duty. SOF ¶¶ 51-53, 62.

Furthermore, Plaintiffs fail to state any violation of clearly established rights. A right is "clearly established if the contour of the right are sufficiently clear so that a reasonable [person] would have understood under the circumstances at hand, that his behavior violated that right." Campbell v. Galloway, 483 F.3d 258, 270-71 (4th Cir. 2007). Nicholson could not have understood based on the circumstances at hand that he was violating Plaintiffs' Fourth Amendment rights. Regarding claims of an illegal search, the severed PVC pipe was in public view from where Nicholson and McCready stood on the sidewalk, see SOF ¶ 47, and neither of these men entered the Property until invited by Benoir. SOF ¶ 63. It appeared to both Nicholson and McCready from where they were standing, that the Plaintiffs had, again, illegally re-connected to the Parksley sewer system. SOF ¶ 47. Thus, they acted reasonably when they acted to remedy what they believed was an imminent threat to the Town. Importantly, Nicholson and Benoir agreed that if VDH approval for the external storage tank was obtained by Plaintiffs, Nicholson would repair the severed pipe. SOF ¶ 60. That approval of Plaintiffs' external storage tank never occurred. Id.

Equally, Nicholson is entitled to summary judgment on Plaintiffs' Equal Protection claim relating to June 16 and 17, 2023. To prove such a claim, a Plaintiff must show that he or she was "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of purposeful or intentional discrimination." Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020). In other words, it keeps governmental authorities "from treating differently persons who are in all relevant respects alike." Id. (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). Nicholson's actions relating to Plaintiffs in 2023 were motivated solely out of his desire to protect the Parksley sewer system. See, e.g., SOF ¶¶ 12, 25-27, 37, 38-42, 46-51, 68. Moreover, the facts

show that Plaintiffs were not subjected to unequal treatment to those "similarly situated." "In the equal protection context, 'similarly situated' means the individuals 'are in all revenant respects alike.'" Stevens v. Holder, 966 F. Supp 2d 622, 641 (E.D. Va. Aug. 16, 2013). The facts show that Plaintiffs were not similarly situated to other food trucks that had come to Parksley. This was Parksley's first permanent food truck, SOF ¶¶ 19, 24, and they had engaged in illegal conduct by directly connecting to the Parksley sewer system, SOF ¶ 36. There is no right to engage in illegal conduct. Furthermore, Plaintiffs have not alleged there was any other permanent food truck in Parksley, let alone one treated differently.

For the foregoing reasons, Nicholson is entitled to summary judgment against Counts I and III of Plaintiffs' Amended Complaint.

> ### iii. *Trespass to Land and Trespass to Chattels against Nicholson, Personally – Count V.*

Plaintiff asserts under Count V that Nicholson, in his personal capacity, committed a "trespass to land" on June 16, 2023, when he purportedly entered the Plaintiffs' leased Property. Plaintiffs contend Nicholson committed a "trespass to chattels" that same day by severing a PVC pipe running from EEHFT. They seek nominal and compensatory damages from Nicholson, personally, for these alleged violations of Virginia law, as well as declaratory relief. ECF No. 54 at ¶¶ 382-383.

### 1. Trespass to Land

A trespass to land is "an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." Cooper v. Horn, 248 Va. 417, 423 (1994).

Plaintiffs' trespass to land claim is unfounded. As Nicholson pointed out in his deposition, on June 16, 2023, McCready, a Public Works employee, cut the pipe at Nicholson's direction while both men were physically located on public property. SOF ¶¶ 43, 54-55. These actions on June 16,

2023, were done in Nicholson's capacity as Supervisor of Parksley's Public Works Department. SOF ¶¶ 10-13, 50, 64. Nicholson and McCready only entered the Plaintiffs' leased property thereafter when invited by Benoir. SOF ¶¶ 57, 63. Additionally, the Parksley Water/Sewage Ordinance gives Nicholson, as Supervisor of Public Works, the right to access the Property for the purposes of protecting the Town's public sewage system. Ex. 19 at Art. IV(a). Finally, Plaintiffs have a duty to allow Nicholson's access under Section 5 of their Lease to Purchase Option Agreement for the Property, which obligates them to comply with all Parksley Ordinances. See ECF No. 35-3 at § 5(1) (PLS00026).

2. <u>Trespass to Chattels</u>

"Trespass to chattels" is the intentional use or intermeddling with the personal property of another without authorization from the property's owner. <u>America Online v. LCGM, Inc.</u>, 46 F.Supp. 2d 444, 451-52 (E.D. Va. Nov. 10, 1998).

The undisputed material facts establish that Nicholson did not commit a trespass to chattels against Plaintiffs on June 16, 2023. While there does not appear to be Virginia law on point, other states have acknowledged that conduct that would ordinarily be trespass to chattels can be excused when it is committed by a public official acting in the scope of his duties, as long as it is incident to such duties. <u>See</u> <u>Foremost Ins. Co. V. PSC</u>, 985 S.W.2d 793, 797 (Ct. App. Mo. Aug. 25 1998).

Even if Nicholson had committed trespass to chattels, Plaintiffs should be barred from recovering due to their "unclean hands." Notwithstanding its Parksley business license, EEHFT had no legal right to be operating in Parksley on June 16, 2023, <u>see</u> SOF ¶¶ 20, 33, 78, 86-89, because it was a violation of the Town's Zoning Ordinance, <u>Segaloff</u>, 209 Va. at 259, and a connection from the food truck to an external storage tank was not permissible according to VDH, SOF ¶ 61. Yet Nicholson agreed to fix the PVC severed on June 16, 2023, if Plaintiffs would get

29

their connection to an external storage tank approved by VDH (which they never did). SOF ¶ 60. Plaintiffs were also operating without a pump out agreement in place. SOF ¶ 65. Further, damages associated with any trespass to chattels here would be de minimis. Nicholson severed the PVC pipe carrying wastewater <u>from</u> EEHFT, as opposed to potable water <u>to</u> it. <u>See</u> SOF ¶ 67. A defendant is liable to the plaintiff for actual damages suffered by reason of loss of the chattel's use. <u>Vines v. Branch</u>, 244 Va. 185 (1992). It is illogical to claim that severing the PVC pipe from EEHFT on June 16, 2023, could have caused the spoilage of thousands of dollars in food. ECF No. 54 at ¶ 368. This would mean Plaintiffs' damages would be limited to the cost of repairing the PVC pipe illegally connected to the external storage tank.

For the foregoing reasons, Nicholson is entitled to summary judgment against Count V of Plaintiffs' <u>Amended Complaint</u>.

## V.     <u>CONCLUSION</u>

**WHEREFORE**, for the reasons set forth herein, the Defendants respectfully request that this Court grant their motion for summary judgment in their favor and dismiss the <u>Amended Complaint</u> in its entirety, and for any other relief this cause may require.

Respectfully submitted,

**TOWN OF PARKSLEY, VIRGINIA AND HENRY NICHOLSON**

<u>/s/ Andrew C. Harding</u>
Of Counsel

30

Richard H. Matthews, Esq.
Virginia State Bar No. 16318
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462-3026
(757) 490-6256 – Telephone/ Facsimile
Email: rmatthew@pendercoward.com
*Counsel for Defendants*

Anne C. Lahren, Esq.
Virginia State Bar No. 73125
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462-3026
(757) 490-6293 – Telephone/ Facsimile
E-Mail: alahren@pendercoward.com
*Counsel for Defendants*

Andrew C. Harding, Esq.
Virginia State Bar No. 96820
PENDER & COWARD, P.C.
709 Greenbriar Parkway
Chesapeake, VA 23320
(757) 490-6251 – Telephone/ Facsimile
E-Mail: aharding@pendercoward.com
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of April 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such electronic filing (NEF) to the following:

Paul M. Sherman, Esq.
Dylan Moore, Esq.
Matthew Liles, Esq.
INSTITUTE FOR JUSTICE
901 Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320 – Telephone
(703) 682-9321 – Facsimile
E-Mail: psherman@ij.org
E-Mail: dmoore@ij.org
E-Mail: mliles@ij.org
*Counsel for Plaintiffs*

Justin Pearson, Esq.
INSTITUTE FOR JUSTICE
2 South Biscayne Blvd., Suite 3180
Miami, Florida 33131
(305) 721-1600 - Telephone
(305) 721- 1601 - Facsimile
E-Mail: jpearson@ij.org
*Counsel for Plaintiffs*

*/s/ Andrew C. Harding*
Of Counsel