IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

THESLET BENOIR AND
CLEMENE BASTIEN, A MARRIED COUPLE,
AND EBEN-EZER HAITIAN FOOD TRUCK, LLC,

      Plaintiffs,

v.                              Case No. 2:24-cv-00064

TOWN OF PARKSLEY, VIRGINIA;
and
HENRY NICHOLSON, in his official
and individual capacities,

      Defendants.

**DEFENDANTS TOWN OF PARKSLEY, VIRGINIA, AND HENRY NICHOLSON'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT**

      **COME NOW** Defendants Town of Parksley, Virginia ("Parksley") and Henry Nicholson

("Nicholson") (together, "Defendants"), by counsel, and for their Response in Opposition to

Plaintiffs' Motion for Summary Judgement state as follows:

## I.    BRIEF INTRODUCTION

      Parksley, Virginia, is a town of approximately 800 residents located on the Eastern Shore

of Virginia. Due to its small population and having only a few employees, the Town's elected

officials frequently wear "more than one hat" to ensure the continued operations of local

government. In March 2023, Mayor Frank A. Russell ("Mayor Russell"), with the approval of the

Parksley Town Council, appointed Nicholson as Supervisor of Parksley's Public Works and its

fragile water and sewage system—a system in which the Town has invested several hundred

thousand dollars in recent years to maintain. Mayor Russell and members of the Town Council,

1

almost all of whom maintain full-time employment in the private sector, voluntarily return their annual $2,000 salaries to the Town.

Plaintiffs moved to Parksley in 2018. They opened a brick-and-mortar business, the Eben-Ezer Variety Market, at 24312 Bennett Street, Parksley, Virginia 23421 (the "Property") in the Town's commercial district in 2019. ECF No. 54 at ¶¶ 18-20. In 2023, they launched a second venture on the Property: the Eben-Ezer Haitian Food Truck ("EEHFT"). Id. at ¶ 21. Tellingly, Plaintiffs have not alleged any misconduct by Defendants between the opening of their store in 2019 and June 16, 2023, the latter date which is a subject of this litigation.

On June 15, 2023—one day before the June 16, 2023, events underlying most of Plaintiffs' six causes of action—Benoir and Bastien illegally connected EEHFT to the Parksley sewer system, despite previous instructions from Nicholson not to do so. Plaintiffs also lacked a pump-out agreement required by the Virginia Department of Health ("VDH") to properly dispose of EEHFT waste until June 26, 2023. See ECF No. 35 at ¶¶ 20, 22; ECF No. 35-7.

Ultimately, Plaintiffs always had the opportunity to apply for a Parksley Special Use Permit ("SUP") to operate EEHFT. Yet, despite being informed of this option, Benoir and Bastien never pursued it. Instead, they opted to file this lawsuit.[1] On April 21, 2025, both Defendants and Plaintiffs filed their respective motions for summary judgment. Plaintiffs seek summary judgment on all counts of their Amended Complaint except their Equal Protection claims under Counts III and IV.

---

[1] Plaintiffs' lawsuit was brought with the support of the non-profit public interest law firm, the Institute for Justice ("IJ"). IJ is a nonprofit public interest law firm with offices in multiple states.

## II.    RESPONSE TO PLAINTIFFS' "UNDISPUTED" MATERIAL FACTS

### a. Facts That are Undisputed for Purposes of Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment.

Defendants accept the following paragraphs as undisputed solely for the purposes of this Response in Opposition to Plaintiffs' Motion for Summary Judgment, and they do so without waiving their positions and arguments in any other pleading in this action: 2, 3, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 25, 28, 31, 32, 35, 36, 37, 41, 42, 56, 57, 63, 87, 88, 89, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 109, 110, 114, 117, 118, 119, 120, 122, 124, 129, and 133.

### b. Facts That are Undisputed with Specified Clarifications.

For the sole purpose of Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgement, and without waiving Defendants' positions and arguments in any other pleading in this action, Defendants accept the following paragraphs in ECF No. 59 as undisputed with the specified clarifications:

1.      Paragraph 5 is undisputed with the clarification that Plaintiff Clemene Bastien did not hold United States citizenship at all times relevant to this litigation and became naturalized during the pendency of this case. See ECF No. 1 at ¶ 10.

2.      Paragraph 18 is undisputed with the clarification that Nicholson served as a member of Parksley's town council at all times relevant to this litigation.

3.      Paragraph 33 is undisputed with the clarification that Plaintiffs tacitly admit Nicholson acted reasonably on June 16, 2023, because he could not see that the PVC wastewater pipe was connected to an illegal storage tank. See also ECF No. 56, Defendants' Statement of Undisputed Facts ("DSUF") at ¶¶ 59, 61. Notably, the Plaintiffs had in fact illegally connected to the Parksley Sewer system the day before June 16, 2023. See ECF No. 35 at ¶¶ 14-15; Exhibit ("Ex.") 1 (Town of Parksley Water/Sewage Ordinance) at Arts. I ("Unlawful sewer deposits

generally," subsection (a)) and IV ("Application for sewer connections"); see also ECF No. 59-16, Pfeiffer Depo. 14:14-14:15.

4.      Paragraph 38 is undisputed with the clarification that Defendants do not know whether the Eben-Ezer Variety Market store was open or closed.

5.      Paragraph 83 is undisputed with the clarification that discussion participants raised many other points besides restaurant competition during the September 2023 meeting while discussing the developing ordinance pertaining to food trucks. See ECF No. 59-18.

6.      Paragraph 86 is undisputed with the clarification that under Ordinance 23-01, permanent food trucks could operate if they obtained a SUP. See Ex. 2 (Town Zoning Ordinance of Town of Parksley, Virginia) at Art. III-4.3 (DEF000376-77). Despite having been provided with the information about obtaining a SUP, Plaintiffs have never applied for such a permit. See, infra, Additional Statements of Undisputed Fact ("ASOF") ¶¶ 154-155; ECF No. 35 at ¶ 28; ECF No. 59-5, Taylor Depo. (11/14/24) 67:5-67:7; Ex. 6 (November 16, 2023, emails between Parksley Town Clerk Lauren Lewis ("Lewis") and Monel); ECF No. 59-2, Lewis Depo. 15-25-16:12.

7.      Paragraph 125 is undisputed with the clarification that all attendees—not just Reverend Calherbe Monel ("Monel")—were required to leave their phones in a different room from where the meeting took place.

### c.  Facts That are Undisputed in Part and Disputed in Part.

1.      Paragraph 51 is undisputed in that Nicholson ordered Parksley employee Michael McCready ("McCready") to cut Plaintiffs' PVC wastewater pipe on June 16, 2023. However, it is disputed whether Nicholson and McCready entered the Property, as the two men remained on the public right of way while severing the PVC wastewater pipe. ECF No. 59-6, McCready Depo.

14:5-14:14, 41:14-41:22; ECF No. 59-8, Nicholson Depo. 140:7-140:17, 219:11-219:17, 220:14-221:1, 227:12-230:21.

2.      Paragraph 77 is undisputed regarding the expiration of the restraining order on its own terms, but Defendants deny that Nicholson or any other Defendant engaged in any harassment.

3.      Paragraph 116 is undisputed, except that Defendants dispute the characterization that Town Attorney André Wiggins ("Wiggins") realized the zoning code issue "long after" the October 19, 2023, email. Defendants assert that, at most, only twelve days passed, which does not constitute "long after."

**d. Disputed Statements of Fact.**

Defendants dispute the following paragraphs in Plaintiffs' "Statement of Undisputed Material Facts," ECF No. 59 at pp. 1-17:

1.      Paragraph 1 is disputed. Plaintiffs are misleadingly presenting the testimony by lifting phrases from sections eight pages apart and portraying them as a single statement.

2.      Paragraph 4 is disputed. Plaintiffs provide no cited support for the first sentence. They mislead with the second sentence by implying something about Parksley residents and the Haitian immigrants not supported by the cited Nicholson deposition testimony.

3.      Paragraph 12 is disputed. Plaintiffs failed to apply for the required SUP. See ECF No. 35 at ¶ 28. They also failed to meet all applicable requirements to operate a food truck on June 16, 2023, because, for example, they operated that day without a pump-out agreement in place. See ECF No. 35 at ¶¶ 20, 22, 23; ECF No. 35-7; ECF No 59-16, Pfeiffer Depo. 17:13-18:10. The Virginia Department of Health ("VDH") does not approve external storage tanks like the one

Plaintiffs used on June 16, 2023. ECF No. 59 at ¶ 29; see also ECF No 59-16, Pfeiffer Depo. 43:14-43:19, 44:7-45:8.

4.    Paragraph 17 is disputed. The Town Charter does not state the Town Council does not have any executive powers. See Ex. 3 (Charter of the Town of Parksley). Further, Plaintiffs have not defined "executive powers."

5.    Paragraph 19 is disputed. Mayor Russell appointed Nicholson as Supervisor of Parksley Public Works. Council members may have supplemental duties and wear more than one hat in this town of 800 people. The citations do not support the purported fact.

6.    Paragraph 20 is disputed. It is misleading. Nicholson supervised Parksley's Public Works as part of his council member duties, in accordance with a Town Council Resolution and appointment by Mayor Russell. See Ex. 4 (Resolution for Supervision of Town Employees) and Ex. 5 (Meeting Minutes from March 13, 2023, Parksley Town Council Meeting) at DEF000251, DEF000253. Nicholson did not receive compensation as an employee of Parksley for his role as Supervisor. See ECF No. 59-8, Nicholson Depo. at 18:12-18:16.

7.    Paragraph 21 is disputed. See the response to disputed paragraph 20. Additionally, Nicholson has also served as a firefighter. ECF No. 59-8, Nicholson Depo. 92:2-93:3.

8.    Paragraphs 22 and 23 are both disputed. Mayor Russell does not "purport" to delegate. See, e.g., ECF Nos. Ex. 4 and Ex. 5 at DEF000251, DEF000253.

9.    Paragraph 24 is disputed. There was no requirement for the public to vote on this "'delegation' to Nicholson" to supervise Parksley Public Works. See ECF Nos. Ex. 4 and Ex. 5 at DEF000251, DEF000253.

10.    Paragraph 26 is disputed. It is misleading. See cited deposition testimony.

11.     Paragraph 27 is disputed. It is misleading. The deposition testimony cited by Plaintiffs does not support this purported fact.

12.     Paragraph 29 is disputed. It is misleading because it is mischaracterizing the cited Nicholson deposition testimony. See cited deposition testimony.

13.     Paragraph 30 is disputed. Plaintiffs did not sign the pump-out agreement until June 26, 2023, so it was not in effect on June 16, 2023. See ECF No. 35-7. Further, the pump-out agreement covered services for EEHFT, not for an external storage tank. See id. (Agreement certifies that pumping and hauling of gray water will be "from" EEHFT); ECF No. 59-8, Nicholson Depo. at 144:2-145:14 (Nicholson testified that Plaintiff Benoir told him on June 16, 2023, that he was going to dispose of the EEHFT wastewater in the external tank via taking it as trash to a landfill.).

14.     Paragraph 34 is disputed. The PVC wastewater pipe appeared the same from the street on June 16, 2023, as it did the day before when it was illegally connected to Parksley's sewer. ECF No. 59-6, McCready Depo. 10:15-10:20, 13:24-14:1; ECF No. 59-8, Nicholson Depo. 219:19-221:7.

15.     Paragraphs 39 and 40 are disputed. Nicholson and McCready did not enter the Property until Benoir invited them to do so. ECF No. 59-8, Nicholson Depo. 218:6-218:23. They remained on the public right of way until invited. ECF No. 59-8, Nicholson Depo. 218:6-218:23, 227:15-229:13, 229:14-229:16.

16.     Paragraph 43 is disputed. What is "obvious" is an opinion.

17.     Paragraph 44 is disputed. This purported fact is pure speculation by Plaintiffs as to what Nicholson knew regarding the business hours for the Eben-Ezer Variety Market and EEHFT.

18.    Paragraph 45 is disputed. This purported fact is pure speculation and opinion by Plaintiffs and is not a fact.

19.    Paragraph 46 is disputed. Nicholson and the employee, McCready, never trespassed. See ECF No. 59-8, Nicholson Depo. 218:6-218:23, 227:15-229:13, 229:14-229:16; see also Ex. 1 at Arts. I (Violations of chapter generally (b)), IV (Inspections and repairs (a)). Furthermore, they had legal authority to enter the Property, id., though both men remained on the public right of way until Benoir invited them, ECF No. 59-8, Nicholson Depo. 218:6-218:23, 227:15-230:1.

20.    Paragraphs 47 and 48 are disputed. From where Nicholson and McCready stood on the public right of way, the PVC wastewater pipe appeared to be reconnected to the Parksley sewer system. ECF No. 59-6, McCready Depo. 10:15-10:20, 13:24-14:1; ECF No. 59-8, Nicholson Depo. 141:20-141:24, 219:11-219:17, 219:19-221:7. Ironically, according to Plaintiffs' argument, Nicholson and McCready would have been trespassing if they had walked onto the Property to examine the PVC wastewater pipe connection.

21.    Paragraph 49 is disputed. This purported fact is pure speculation because Nicholson had no way of knowing what Plaintiffs "would have told and shown" him on June 16, 2023.

22.    Paragraph 50 is disputed. This purported fact is pure speculation because Nicholson and McCready saw what appeared to be an illegal hookup to the Parksley sewer system on June 16, 2023, similar to the illegal connection Plaintiffs made on June 15, 2023. ECF No. 59-6, McCready Depo. 10:15-10:20, 13:24-14:1; ECF No. 59-8, Nicholson Depo. 141:20-141:24, 219:11-219:17, 219:19-221:7.

23.    Paragraphs 52 through 55 are disputed. Paragraph 36 of Defendants' Answer does not show that Nicholson admitted responsibility for "wrongfully" cutting the PVC wastewater pipe

on June 16, 2023. <u>See</u> ECF No. 20 at ¶ 36. Instead, in paragraph 36 of the <u>Answer</u>, Nicholson stated that he severed an illegal sewer connection on June 15, 2023—an action Plaintiffs do not dispute. <u>See</u> ECF No. 35 at ¶¶ 14-15. Additionally, Nicholson said that he made a mistake, i.e., that the PVC wastewater pipe was no longer connected to the Parksley sewer system, but to the illegal external storage tank. ECF No. 59-16, Pfeiffer Depo. 43:14-43:19, 44:7-45:8. Thus, while he stated in <u>hindsight</u> that he "probably wouldn't" have cut it, he was not saying cutting it in itself was "wrongful."

24.    Paragraphs 58 and 59 are disputed. They are misleading. Although Nicholson initially agreed to fix the PVC wastewater pipe severed on June 16, 2023, he and Benoir later agreed that same day to repair the pipe once Plaintiffs obtained VDH approval for EEHFT's external storage tank. ECF No. 59-8, Nicholson Depo. 146:25-147:11.

25.    Paragraph 60 is disputed. Lacking a sewage disposal pipe will not cause food to spoil.

26.    Paragraph 61 is disputed. It is misleading to say Nicholson "returned" to the Property as if he did so unprompted. In reality, Nicholson was driving to Royal Farms to get coffee when he saw a tractor trailer parked on top of the Town's sidewalk, near a known waterline, and within inches of the Eben-Ezer Variety Market. ECF No. 59-8, Nicholson Depo. 77:15-80:6. When Nicholson drove back into Parksley, he saw that the truck was still there, so, as Supervisor of Public Works, he got out of his vehicle to see what was going on. <u>Id.</u> at 77:15-80:6, 96:18-98:12.

27.    Paragraph 62 is disputed. The claim that Nicholson was "not apologetic" and "enraged" reflects opinion, not fact.

28.     Paragraph 64 is disputed. Plaintiffs fabricated this alleged fact and support it only with their own self-serving and unverified statements. See ECF No. 59-8, Nicholson Depo. 77:15-81:3. Such alleged statements also have no relevance to this case.

29.     Paragraph 65 is disputed. Plaintiffs fabricated this alleged fact and support it only with their own self-serving and unverified statements. Nicholson specifically denied this allegation during his deposition. ECF No. 59-8, Nicholson Depo. 107:14-107:24.

30.     Paragraph 66 is disputed. After speaking with the tractor trailer driver who was parked on the public sidewalk near a waterline, Nicholson called the Sheriff himself.  ECF No. 59-8, Nicholson Depo.78:24-79:7, 80:23-81:3.

31.     Paragraph 67-68 are disputed. Plaintiffs fabricated this alleged fact and support it only with their own self-serving and unverified statements.

32.     Paragraph 69 is disputed. Plaintiffs fabricated this alleged fact and support it only with their own self-serving and unverified statements. It also contains hearsay regarding what the officers allegedly told Nicholson.

33.     Paragraph 70 is disputed. Plaintiffs fabricated this alleged fact and support it only with their own self-serving and unverified statements.

34.     Paragraph 71 is disputed. Plaintiffs fabricated this alleged fact and support it only with their own self-serving and unverified statements. It also contains hearsay regarding what the officers allegedly told Nicholson.

35.     Paragraph 72 is disputed. The driver of the trailer moved it into the middle of the road lane before the Sheriff's office arrived. ECF No. 59-8, Nicholson Depo. 80:20-83:15.

36.     Paragraph 73 is disputed. Plaintiffs fabricated this alleged fact and support it only with their own self-serving and unverified statements. Furthermore, Nicholson parked his truck in

a parking spot in front of Mayor Russell's store, not in front of Plaintiffs' businesses. ECF No. 59-8, Nicholson Depo. 90:20-91:8. Nicholson parked there because he, as Supervisor of Public Works, wanted to prevent the driver from re-parking on the public sidewalk above the waterline. Id. at 91:9-91:11, 96:18-97:3, 98:18-99:22, 100:1-100:22. Deliveries were still able to be made to Plaintiffs' store. Id. at 100:18-100:22.

37.    Paragraph 74 is disputed. No one ordered Nicholson to move his vehicle. The Parksley police chief informed him that he was being asked to move it, and Nicholson complied. Id. at 101:2-103:2.

38.    Paragraph 75 is disputed. This purported fact is pure speculation and opinion by Plaintiffs and is not a fact. Further, Nicholson complied when asked to move his vehicle. See responses to paragraph 74. And the tractor trailer driver was still able to make deliveries to the Eben-Ezer Variety Market during these series of events. See responses to paragraph 73.

39.    Paragraph 76 is disputed. The purported fact consists of hearsay.

40.    Paragraph 78 is disputed. The cited portion does not support Plaintiffs' alleged fact, as it completely misrepresent the substance of Councilmember Mark Layne's deposition testimony. See ECF No. 59-3, Layne Depo. 47:10-19.

41.    Paragraph 79 is disputed. Plaintiffs' purported fact that Layne was doing nothing more than trying to get Plaintiffs in trouble is pure speculation. Defendants also dispute that Layne "repeatedly" contacted VDH, which is nothing more than a self-serving characterization of the contacts that is not supported by Pfeiffer's deposition testimony.

42.    Paragraph 80 is disputed. The first sentence is misleading as it is Plaintiffs' opinion. The remainder of the paragraph is not supported by the citation to Councilmember Richard Taylor's deposition testimony.

43.    Paragraph 81 is disputed. Plaintiff misrepresents the cited Pfeiffer deposition testimony. The testimony does not support any of the alleged facts in paragraph 81. The cited testimony discusses how complaints against potential VDH rule violators are not uncommon and how non-complaint based violations are common. <u>See</u> cited deposition testimony.

44.    Paragraph 82 is disputed. Ordinance 23-01 does not support the alleged fact Plaintiffs cite. Rather, paragraph 82 reflects Plaintiffs' speculation, not a statement of fact.

45.    Paragraph 84 is disputed. <u>See</u> ECF No 19-17. The ordinance only banned permanent food trucks that did not have SUPs.

46.    Paragraph 85 is disputed. In addition to acquiring a Parksley SUP for permanent operations, Ordinance 23-01 also allows food trucks to operate on a temporary basis for up to 72 hours if they obtain a special event permit. <u>See</u> ECF No. 59-17. Plaintiffs never applied for a SUP. ECF No. 35 at ¶ 28; ECF No. 59-5, Taylor Depo. (11/14/24) 67:5-67:7. In addition, Plaintiffs have never alleged that they even attempted to start or complete the process to obtain a Parksley SUP. <u>See</u>, <u>generally</u>, ECF Nos. 1 and 54.

47.    Paragraph 90 is disputed. Defendants have no idea what Plaintiffs "realized." However, Plaintiffs support this alleged fact only with their self-serving declarations, and no other person substantiates it.

48.    Paragraph 91 is disputed. Defendants have no idea what Plaintiffs were doing. However, Plaintiffs support this alleged fact only with their self-serving affidavits, and no other person substantiates it.

49.    Paragraphs 92 through 94 are disputed. Defendants were not involved with Plaintiffs' media efforts. The intentions Plaintiffs describe in paragraphs 92 through 93 are

supported solely by their self-serving affidavits, which are not subject to cross-examination, and no other person substantiates them.

50.    Paragraph 95 is disputed. Defendants do not know what Plaintiffs mean by "attracted the attention of town officials" but dispute any inference that they responded to the media attention in a negative way. In addition, the authority cited by Plaintiffs only establishes that Mayor Russell and Lewis were aware of the media presence, as opposed to "town officials."

51.    Paragraph 108 is disputed. Plaintiff presents a misleading and out-of-context alleged fact. The cited testimony does not say the media coverage angered Russell; it says the situation upset him in the context of the lawsuit and in hindsight. The testimony does not state that he was angry at the time of the media coverage. See cited deposition testimony.

52.    Paragraph 111 is disputed. The first sentence in the paragraph is not a fact and its contents are grossly misleading in terms of understanding the quote in the second sentence. See ECF No. 59-10, Russell Depo. 88:23-99:11. The quoted text refers to actions by the Institute of Justice and its actions, and not the "media attention."

53.    Paragraph 112 is disputed. Defendants do not know what Plaintiffs knew or did not know, and Plaintiffs support the alleged fact only with their self-serving affidavits, which are not subject to cross-examination.

54.    Paragraph 113 is disputed. It is misleading and the cited documents in no way establish or support the alleged fact in paragraph 113.

55.    Paragraph 115 is disputed. It is an irrelevant legal conclusion, not a fact.

56.    Paragraph 121 is disputed. Defendants have neither any idea what Plaintiffs' reaction was to the Wiggins Letter nor when Plaintiffs received it. Furthermore, Plaintiffs' alleged fact is supported solely by their self-serving affidavits, which are not subject to cross-examination.

57.     Paragraph 123 is disputed. While Defendants do not know what was going through Plaintiffs' minds, Monel's cited declaration does not support the claim that Plaintiffs were "trying to work things out." Instead, it focuses on the contents of one meeting with Parksley officials. Furthermore, during that meeting, officials informed Monel—Plaintiffs' representative—about the SUP option, but Plaintiffs never chose to even attempt to apply for one. ECF No. 59-2, Lewis Depo. 15:25-16:12; ECF No. 59-35 at ¶ 9; Ex. 6; ECF No. 35 at ¶¶ 27-28; ECF No. 59-35 at ¶¶ 5-6, 9; ECF No. 35-2 at Interrogatory # 16.

58.     Paragraph 126 is disputed. Nobody was allowed to bring their phone to the meeting. Plaintiffs' alleged fact is supported solely by Monel's self-serving declaration.

59.     Paragraph 127 is disputed. Plaintiffs mischaracterize Mayor Russell's comments as he neither talked at length in relation to the Plaintiffs regarding the media attention, nor was he angry. Plaintiffs alleged fact is supported solely by Monel's self-serving declaration, which is not subject to cross-examination.

60.     Paragraph 128 is disputed. Mayor Russell never said he viewed Plaintiffs' talking to the media as a betrayal. Plaintiffs alleged fact is supported solely by Monel's self-serving declaration, which is not subject to cross-examination.

61.     Paragraph 130 is disputed. This misstates the Parksley Zoning Ordinance, which only mentions obtaining "written comments," not "written permission." And if "written comments" cannot be obtained, an applicant may submit a postal receipt. Ex. 1; ECF No. 59-5, Taylor Depo. (11/14/24) 64:2-66:6. Plaintiffs alleged fact is supported solely by Monel's self-serving declaration, which is not subject to cross-examination.

62.     Paragraph 131 is disputed. Nicholson's property is not within the 500 feet needed to require Nicholson to submit written comments (permission was <u>not</u> required of property owners within 500 feet, <u>see</u> Ex. 2 at Art. IX-2(E) (DEF000387)).

63.     Paragraph 132 is disputed. It is pure self-serving speculation by Plaintiffs through Monel's declaration.

## III.    <u>ADDITIONAL STATEMENTS OF UNDISPUTED FACT ("ASOFs")</u>

The following additional facts are numbered to follow sequentially from the facts numbered 1-133 in Plaintiffs' <u>Brief in Support of Motion for Summary Judgment</u>, ECF No. 59:

134.     The Parksley Town Council is the policy maker governing body in Parksley and consists of six members, a majority vote of which is required to act. <u>See</u> ECF No. 59-12 (DEF000339-40).

135.     Each Parksley Town Council member donates his or her $2,000 council salary back to Parksley. ECF No. 59-1, Russell Depo. 19:2-19:3; ECF No. 59-8, Nicholson Depo. 15:9-15:18.

136.     Nicholson's appointment as Supervisor of Public Works provided him with supplemental duties on top of those associated with his being a councilmember and he received no compensation for performing these supplemental duties. <u>See</u> Ex. 4; Ex. 5; ECF No. 59-8, Nicholson Depo. 18:12-18:16, 25:14-26:20; Russell Depo. 18:22-19:1.

137.     As Supervisor of Parksley Public Works, Nicholson was in charge of both Parksley's water and sewer systems. ECF No. 59-8, Nicholson Depo. 213:11-213:16; ECF No. 59-5, Taylor Depo. (11/14/24) 60:24-61:7; ECF No. 59-7, F. Welch Depo. 13:14-13:17.

138.     As Supervisor of Parksley Public Works, Nicholson had discretionary authority in terms of directing Public Works employees in their daily tasks. ECF No. 59-8, Nicholson Depo.

25:14-26:20; ECF No. 59-1, Russell Depo. 18:4-18:14; ECF No. 59-6, McCready Depo. 14:24-15:2.

139.    Over the years preceding this litigation, Parksley had spent hundreds of thousands of dollars to preserve the functionality of its delicate sewer system. Ex. 7 (Town of Parksley Transaction Report – Water/Sewage Expenditures); ECF No. 59-5, Taylor Depo. (11/14/24) 54:17-44:5; ECF No. 59-1, Russell Depo. 22:11-22:14, 35:16-35:23.

140.    Parksley had never had a permanent food truck similar to EEHFT. See ECF No. 59-7, F. Welch Depo. 27:11-27:17; ECF No. 59-1, Russell Depo. 31:7-31:9; ECF No. 59-5, Taylor Depo (9/27/24) 36:1-36:19; ECF No. 59-8, Nicholson Depo. 60:19-61:4.

141.    Prior to EEHFT, food trucks in Parksley were temporary and limited to special events. ECF No. 59-1, Russell Depo. 15:7-15:22; ECF No. 59-5, Taylor Depo. (9/27/24) 36:1-36:10, Taylor Depo. (11/14/24) 47:23-48:12; ECF No. 59-7, F. Welch Depo. 27:11-27:17; ECF No. 59-8, Nicholson Depo. 62:17-63:14, 213:17-213:24.

142.    On June 15, 2023, the Plaintiffs connected EEHFT's PVC wastewater pipe to the Parksley sewer system without the town's permission, even though Nicholson had previously told them not to after noticing that the food truck lacked an integral wastewater tank. ECF No. 59-8, Nicholson Depo. 111:21-111:23, 113:10-113:22, 120:1-120:12, 131:24-132:11, 135:22-136:8, 138:20-139:10; ECF No. 59-1, Russell Depo. 65:21-66:23.

143.    On June 15, 2023, Nicholson directed Parksley employee Percy Smith to cut the PVC wastewater pipe connecting EEHFT to the Parksley sewer system. ECF No. 59-8, Nicholson Depo. 114:5-114:7; ECF No. 35 at ¶¶ 14-15.

144.    On June 16, 2023, Plaintiffs had connected EEHFT to an external storage tank located at the back of their Property. ECF No. 35 at ¶ 15; ECF No. 59 at ¶¶ 28-29.

145.    VDH does not approve the use of external wastewater storage tanks for food trucks like EEHFT. ECF No. 59-16, Pfeiffer Depo. 43:14-43:19, 44:7-45:8 (stating the VDH "would not allow an operator to pump to an external tank and then have that tank pumped out by the [pump-out] truck.").

146.    VDH does not approve connections from food trucks to municipal sewer systems. ECF No. 59-16, Pfeiffer Depo. 14:4-14:15.

147.    On June 16, 2023, Mayor Russell called Nicholson and told him that Plaintiffs had re-connected to the Parksley sewer system. ECF No. 59-8, Nicholson Depo. 137:13-137:21, 140:1-140:3.

148.    From where Nicholson and McCready stood on the public sidewalk in front on EEHFT on June 16, 2023, it visually looked to both men that Plaintiffs had re-connected to the Parksley sewer system. ECF No. 59-6, McCready Depo. 13:22-14:1; ECF No. 59-8, Nicholson Depo. 141:20-141:24, 219:11-219:17, 220:14-221:1.

149.    Nicholson ordered McCready to cut the PVC wastewater pipe on June 16, 2023, because he was concerned about the immediate damage the wastewater could cause to the Parksley sewer system. ECF No. 59-8, Nicholson Depo. 234:12-234:14, 237:12-238:1, 239:1-239:8, 241:21-242:9.

150.    On June 16, 2023, Nicholson and McCready remained on the public sidewalk/right of way while they cut Plaintiffs' PVC wastewater pipe running from EEHFT and only entered the Property when invited to do so by Benoir. ECF No. 59-8, Nicholson Depo. 140:1-140:5, 143:12-143:17, 218:6-218:23.

151.    Prior to severing the pipe on June 16, 2023, Nicholson and McCready also did not enter Plaintiffs' leased Property because they remained on the Town's right of way for access to

17

the water meter. ECF No. 59-8, Nicholson Depo. 227:15-229:16; ECF No. 35-1 at Interrogatory #6.

152.    Thereafter, Benoir took Nicholson to the back of the Property and showed him that EEHFT had actually been connected to an external storage tank located at the back of the Property that day. ECF No. 59-8, Nicholson Depo. 143:12-143:17; ECF No. 59-6, McCready Depo. 42:9-42:15.

153.    The Town Council made no formal decision to allow the Plaintiffs to operate EEHFT until their business license expired, nor did it hold a vote regarding their continued operation. See ECF No. 59-5, Taylor Depo. (11/14/24) 20:17-20:24.

154.    Lewis supplied Plaintiffs with information regarding applying for a Parksley SUP during a meeting with Monel around November 18, 2023. ECF No. 59-2, Lewis Depo. 15:25-16:12; ECF No. 59-35 at ¶ 9; Ex. 6.

155.    Plaintiffs have never applied for a Parksley SUP permit to operate EEHFT at the Property. See ECF No. 35 at ¶ 28; ECF No. 59-5, Taylor Depo. (11/14/24) 67:5-67:7.

156.    Plaintiffs filed this lawsuit on January 23, 2024. ECF No. 1.

**IV.    LEGAL STANDARD**

According to Rule 56 of the Federal Rules of Civil Procedure, a party seeking summary judgment has the initial burden of establishing that (1) no genuine dispute as to any material facts exists and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). In order the determine the appropriateness of summary judgment the Court must inquire into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

V.    **ARGUMENT**

Plaintiffs' Motion for Summary Judgment lacks any merit. First and foremost, Plaintiffs lack standing to even bring this lawsuit. In Segaloff v. Newport News, 209 Va. 259, 261 (1968), the Supreme Court of Virginia held that a permit (in this case, a business license) issued in violation of an ordinance is void *ab initio*. A permit issued under those circumstances "confers no greater rights upon [Plaintiffs] than an ordinance itself, for the permit cannot in effect amend or repeal an ordinance." Id. Because the Parksley authorities issued the Plaintiffs' business license (permit) for EEHFT in violation of its own zoning law, ECF No. 59-26 (DEF000422) and Ex. 2 at Art. III-4, they issued it without authorization and the permit was therefore always void, see Segaloff, 209 Va. at 261. While Parksley's Zoning Ordinance provides for a SUP as an exception to zoning restrictions, Ex. 2 at Art. III-4.3 (DEF000376), the Plaintiffs have not even attempted to apply for one despite Defendants' efforts to help them, see ASOF ¶¶ 154-155.

By not moving for summary judgment on their Equal Protection claims under Counts III and IV of the Amended Complaint, see ECF No. 54 and ECF No. 59 at p. 18, fn. 2, Plaintiffs implicitly concede, as they must, that these claims are invalid. Plaintiffs acknowledge EEHFT was the first permanent food truck to come to Parksley. ECF No. 54 at ¶¶ 1, 21; ECF No. 59 at ¶ 8. As such, since previous food trucks were temporary and for special events, ASOF ¶ 141, Plaintiffs cannot point to others who are "similarly situated" and to which they received comparatively "unequal treatment." Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020); Stevens v. Holder, 966 F. Supp 2d 622, 641 (E.D. Va. Aug. 16, 2013); see also ASOF ¶ 140. Therefore, the Court

should grant summary judgment in favor of Defendants on Counts III and IV. See Defendants'
Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 57 at pp. 21-28.

Conversely, for the reasons below, Plaintiffs are not entitled to summary judgment against
Defendants on any of the Counts included in their Motion for Summary Judgment and Brief in
Support, ECF Nos. 58 and 59.

### a. Plaintiffs are not entitled to Summary Judgment against Nicholson for Claims against him in his Personal Capacity.

#### i. Fourth Amendment Claim Against Nicholson, Personally.

Plaintiffs seek summary judgment against Nicholson, in his personal capacity, under Count
I of their Amended Complaint. This Count arises from Nicholson instructing McCready on June
16, 2023, to sever the PVC wastewater pipe running from EEHFT to an illegal external storage
tank at the back of Plaintiffs' property. See ASOF ¶¶ 144-145, 149.

Nicholson did not illegally "search" Plaintiffs' property or "seize" Plaintiffs' illegal PVC
wastewater pipe connection. Plaintiffs support their position with soundbites of cherry-picked law
that are inapplicable to these facts and circumstances before the Court. In reality, there was no
unconstitutional "search" because on June 16, 2023, Nicholson and McCready did not enter
Plaintiffs' rented Property until they were invited to enter by Benoir. ASOF ¶¶ 148, 150-152.
Nicholson and McCready were on the public sidewalk and over the public right of way even when
they severed Plaintiffs' illegal PVC wastewater pipe connection to the external storage tank. Id.
Their actions were based on what was in plain view from that vantage point. See ASOF ¶ 148.
Further, Nicholson still had the right to access the property to protect the Town's sewer system
under the Parksley Water/Sewage Ordinance and Plaintiffs' duty to comply with all applicable laws
under their Lease to Purchase Option Agreement. See Ex. 1 at Art. IV(a); ECF No. 35-3 at § 5(1)
(PLS00026).

There also was no unconstitutional "seizure." Parksley had spent hundreds of thousands of dollars in the preceding years fixing its sewer system and bringing it into compliance with various legal requirements. ASOF ¶ 139. Plaintiffs had not received VDH approval for connecting EEHFT to the external storage tank, see ASOF ¶¶ 144-145, and Nicholson felt compelled to act as Supervisor of Public Works because Plaintiffs could cause substantial damage to the Town sewer system if that waste was disposed of directly into Parksley's sewer system, ASOF ¶ 149.

Nicholson is entitled to Qualified Immunity on Count I. Qualified Immunity "shields federal and state officials from [civil] monetary damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011). Its protections apply to Nicholson's action on June 16, 2023, because his actions constituted discretionary functions which were within the scope of his supplemental duties as Supervisor of Parksley Public Works. ASOF ¶¶ 137, 138, 149; see Anderson v. Creighton, 483 U.S. 635, 638-39 (1987).

Plaintiffs' argument that Nicholson was illegally "holding more than one of the listed offices at a time" is unfounded. ECF No. 59 at p. 21. Nicholson's appointment as Supervisor of Public Works did not violate the Virginia Constitution or state law. In Fauber v. Town of Cape Charles, 79 Va. App. 660 (Va. Ct. Appeals Jan. 30, 2024), the Virginia Court of Appeals found that a mayor who had temporarily assumed the powers and duties of the vacant town manager position pursuant to the town charter, and then subsequently exercised those powers when he terminated a town employee, neither violated the Virginia Constitution nor Virginia Code. Id. Fauber makes it clear that when elected officials like Nicholson assume supplemental duties without additional compensation it does not equate to holding a second job. Further, it is illogical for Plaintiffs to

claim that Nicholson was acting in a "law enforcement" capacity when he severed Plaintiffs' PVC wastewater pipe that was illegally connected to an external storage tank on June 15, 2023. Water and utility connections and disconnections are routinely performed by ordinary workers. Law enforcement does not connect or disconnect utilities.

What happened on June 16, 2023, was not a violation of a "clearly established right," but if anything, no more than a reasonable mistake which is covered by Qualified Immunity. For a right to be clearly established, the law must have been sufficiently clear that every reasonable person would understand what he is doing is unlawful. District of Columbia v. Wesby, 138 S. Ct 577, 589-90 (2018) (legal principle must be settled law, dictated by controlling authority or a robust consensus of cases; it is not enough that the rule is suggested by then-existing precedent). Both Nicholson and McCready believed that Plaintiff had re-connected directly to the Parksley sewer system. ASOF ¶¶ 147-148. Plaintiffs had admittedly connected to the Parksley sewer system without the required permission from the town on June 15, 2023—a fact Plaintiffs omit entirely from their motion for summary judgment brief for obvious reasons, as it makes Nicholson's action the following day objectively reasonable, see ASOF ¶¶ 142-143, 146; Ex. 1 at Arts. I (Violations of chapter generally, subsection (b)), IV, IV(a)). Even though Nicholson was incorrect in his belief that the Plaintiffs had re-connected the PVC wastewater pipe to the Parksley sewer system for a second time on June 16, 2023, Qualified Immunity allows for "reasonable but mistaken judgments," and protects all but the plainly incompetent or those who knowingly violated the law." Messerschmidt v. Millender, 565 U.S. 535, 546 (2012). It is reasonable for Nicholson, based on his visual observations and the information provided to him (see ASOF ¶ 147), as well as the events of June 15, 2023, to believe that Plaintiffs had once again illegally re-connected on June 16, 2023, to the Parksley sewer system.

22

For the foregoing reasons, Plaintiffs' motion for summary judgment on Count I of their Amended Complaint should be denied.

> ii. *Virginia Trespass Claims against Nicholson, Personally.*

As argued above in response to the unreasonable search and seizure claims under Count I, for the same reasons, Nicholson neither committed trespass against Plaintiffs' rented property nor did he commit trespass to chattels. See, supra, Section V(a)(i) at pp. 20-21; see also Defendants' Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 57 at Section IV(d)(iii), which is incorporated by reference herein.

For those foregoing reasons, Plaintiffs' motion for summary judgment on Count V of their Amended Complaint should be denied.

> b. **Plaintiffs are not entitled to Summary Judgment against Parksley.**

> i. *Fourth Amendment Claim against Parksley.*

Plaintiffs assert they are entitled to summary judgment against Parksley on their Fourth Amendment claim under Count II. This count is rooted in Nicholson's instructions to McCready to sever EEHFT's PVC wastewater pipe on June 16, 2023. While the PVC wastewater pipe was no longer illegally connected to the Parksley sewer system on that specific date, it did prove to be illegally connected to an external storage tank. See ASOF ¶¶ 144-145. Plaintiffs base this Monell claim against Parksley on the allegations that Mayor Russell impermissibly delegated oversight of the Parksley Public Works Department to Nicholson. ECF No. 59 at p. 22. Plaintiffs further argue that this delegation made Nicholson the relevant "policymaker," and they contend that delegating such authority to councilmembers constituted an official "policy and custom." Id. at pp. 25-26.

First, as previously argued herein, there was no underlying constitutional violation of the Fourth Amendment to the U.S. Constitution on June 16, 2023. See, supra, Section V(a)(i) regarding Fourth Amendment claim against Nicholson, personally.

Second, Plaintiffs incorrectly argue that Nicholson acted as a "policymaker." Nicholson is not a Parksley policymaker. The Parksley Town Council, is the policy maker and consists of six members, a majority vote of which is required to act. ASOF ¶ 134.

Third, Plaintiffs fail to identify any actual "policy or custom" that might have led to any unconstitutional activity. The delegation of supervisory authority to Nicholson as a duty supplemental to his role as a councilmember was not in itself a Parksley "policy or custom." Plaintiffs specifically argue the delegation was a "policy" as opposed to a "custom." See ECF No. 59 at p. 26. Contrary to the examples of qualifying delegations cited in Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987), the singular appointment of Nicholson as Supervisor of Public Works—see Ex. 4 and Ex. 5 at DEF000251, DEF000253—was a one-time action, not a policy. It stands in stark contrast to the types of general policymaking delegations discussed in Spell, such as the delegation of law enforcement authority to a police chief or a county prosecutor's authority conferred by state law.

What Plaintiffs have alleged, at best, is a single solitary incident of Nicholson allegedly acting illegally on June 16, 2023, when he severed for a second time Plaintiffs' PVC wastewater pipe, which was illegally connected to an external storage tank on the back of the leased property. ASOF ¶¶ 144-145. Plaintiffs have not alleged in their Amended Complaint, or cited to, other similar incidents. In the U.S. Fourth Circuit, "proof" "of a single incident of unconstitutional activity is not sufficient to impose liability under Monell . . . ." Jordan by Jordan v. Jackson, 15 F.3d 333, fn.4, 338, 339 (4th Cir. 1994); Estate of Jones v. City of Martinsburg, 961 F.3d 661, 672

(4th Cir 2020) ("a single incident is almost never enough to warrant municipal liability."). Interestingly, Plaintiffs do not argue that Nicholson violated their constitutional rights on **June 15, 2023**—the day before **June 16, 2023**—when he severed their PVC wastewater pipe running from EEHFT for the first time, which at that time was illegally connected to the Parksley sewer system. See ASOF ¶¶ 142-143, 146; Ex. 1 at Arts. I ("Unlawful sewer deposits generally" subsections (a)-(b)) and Art. III ("Sewer connection charges" subsection (b)). All they complain of under Count II is one discrete act with which they do not agree, and "a single act does not a policy or custom make." In addition, Plaintiffs have not established that the alleged violation of Plaintiffs' Fourth Amendment rights was caused by the referenced delegation of supervisory responsibilities for Public Works to Nicholson. See Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

For the foregoing reasons, Plaintiffs' motion for summary judgment on Count II of their Amended Complaint should be denied.

### ii. First Amendment Retaliation Claim against Parksley.

Initially, Plaintiffs claimed Defendants violated their First Amendment rights under the U.S. Constitution in retaliation for a letter sent by IJ on November 2, 2023. See ECF No. 1. After Defendants refuted that claim in subsequent pleadings and through discovery, Plaintiffs amended their initial Complaint to also base the retaliation on Plaintiffs' media efforts under a new Count VI. See ECF No. 54. Plaintiffs argue that Parksley planned not to enforce their recently enacted "food truck ban," Ordinance 23-01, until Plaintiffs began speaking to the media in a manner unpalatable to Parksley officials. Plaintiffs speculate that this, in turn, caused Parksley to change its "decision" to let them operate until the expiration of their Parksley business license and to send a letter through its new Town Attorney instructing Plaintiffs to shut down. See ECF No. 59 at pp. 26-28. However, in reality, no such formal decision had been made, nor had a vote been taken by

the Town Council with regard to allowing their continued operation until the expiration of their legally void business license. See ASOF ¶ 153.

As Plaintiffs have conceded, they must show a causal relationship between Plaintiffs' media efforts and Parksley's allegedly retaliatory actions. ECF No. 59 at p. 27. They have not done so. Literally, Plaintiffs' entire argument relies on speculation, stating such retaliation must be inferred as "nothing happened during the ten days other than Plaintiffs talking with the reporters and the resulting media attention, which would have caused Mayor Russell to change his mind." Id.

The argument that Mayor Russell retaliated because he was angry about the media coverage misrepresents his deposition testimony. Id. Mayor Russell was upset not about the media attention in itself, but, understandably, because but for the media attention generated by IJ's involvement, he believed the matter could have been resolved without Court intervention. ECF No. 59-10, Russell Depo. 98:17-98:20. He believed IJ was using the case to increase its donations. Id. at 87:10-87:16, 96:18-97:1. Mayor Russell was also upset by the weeks-long and non-stop harassment from the public caused by the media attention and the detrimental impact it had on Parksley employees like Lewis. Id. at 41:25-42:7. Yet Plaintiffs go as far as to rely on Monel's self-serving interpretation of Mayor Russell's demeanor at a meeting occurring around November 18, 2023, weeks after the allegedly retaliatory letter, to somehow support their retaliation claim. They also rely on several citations to Mayor Russell's January 2025 deposition that are taken out of context and misrepresented to infer support for their retaliation claim. Regardless, Plaintiffs have nothing other than rank speculation that the media attention led to a change of heart regarding permitting the Plaintiffs to continue EEHFT operations until the expiration of their business license. Mayor Russell's allegedly related angst is a "red herring," as Plaintiffs try to obscure the

fact that they have provided no factual evidence of any retaliation, whether from the media attention or otherwise.

Moreover, all of the foregoing arguments by Plaintiffs continue to ignore the seminal fact that EEHFT was in violation of the pre-existing Parksley Zoning Ordinance. In the recent case Nazario v. Guitierrez, 103 F.4th 213, 236-37 (4th Cir. 2024), the U.S. Fourth Circuit recognized there can be no First Amendment retaliation violation when there is probable cause to believe the underlying crime has been committed. Similarly, in this civil context, there was no First Amendment violation when notice is given that a business is operating in violation of a municipal ordinance.

As a practical matter, Plaintiffs' First Amendment speech has not been adversely affected or "chilled." ECF No. 59 at pp. 27-28. Since November 2023 (when Parksley allegedly changed its mind about Plaintiffs' continued operation of EEHFT until the expiration of its business license), Plaintiffs have continued to criticize Parksley in the media, so it is disingenuous for them to assert such a blatantly false legal argument.[2]

---

[2] See e.g., *Virginia Retaliation - Institute for Justice*. (2025, February 19). Institute for Justice. https://ij.org/case/virginia-retaliation/;

Curtis, S. (2024, January 24). *Parksley Food Truck Owners File Federal Lawsuit Against Town, Councilmember*. WBOC TV. https://www.wboc.com/news/parksley-food-truck-owners-file-federal-lawsuit-against-town-councilmember/article_6582241c-ba14-11ee-b73e-0b0b81f80e7f.html;

Ponton, B. (2024, January 24). *Haitian food truck owners sue Eastern Shore councilman & town, allege harassment*. News 3 WTKR Norfolk. https://www.wtkr.com/news/haitian-food-truck-owners-sue-eastern-shore-councilman-town-allege-harassment;

Reese, B. (2024, January 25). *Haitian food truck owners sue Parksley, council member; say constitutional rights were violated*. WAVY.com. https://www.wavy.com/news/local-news/accomack-county/haitian-food-truck-owners-sue-parksley-council-member-say-constitutional-rights-were-violated/;

For the foregoing reasons, Plaintiffs' motion for summary judgment on Count VI of their Amended Complaint should be denied.

### c.  Plaintiffs are not entitled to Summary Judgment against Nicholson for Claims against him in his Official Capacity.

Plaintiffs are not entitled to summary judgment against Nicholson, in his official capacity, for Fourth Amendment violations under Count II. As argued in Defendants' Memorandum of Law in Support of Motion for Summary Judgment, ECF No. 57 at pp. 24-25, official-capacity lawsuits against government officials are "treated as suits against the entity" as the entity, i.e., Parksley, "is the real party in interest." Kentucky v. Graham, 473 U.S. 159, 166 (1985). "In an official-capacity action . . . for a government entity [to be] liable under 1983" the entity itself must be a "moving force behind the deprivation" and "the entity's 'policy or custom' must have played a part in the violation of federal law." Id. at 166.

---

*They opened a Haitian food truck. Then they were told, "Go back to your own country," lawsuit says.* (2024, February 9). AP News. https://apnews.com/article/haitian-food-truck-lawsuit-virginia-3d282e6d29015b7999ab32eda2b5aa59;

Metcalfe, T. (2024, March 6). *Eastern Shore town, council member deny most allegations in food truck civil rights lawsuit.* The Virginian-Pilot. https://www.pilotonline.com/2024/03/06/eastern-shore-town-council-member-deny-most-allegations-in-food-truck-civil-rights-lawsuit/; and

Shockley, Ted. (2025, April 25). *In deposition, mayor said attention kept food truck closed.* Eastern Shore Post. https://easternshorepost.com/wp-content/uploads/2025/04/20250425_post_up.pdf (page 7).

For the foregoing reasons argued in Section V(b)(i) ("Fourth Amendment Claim Against Parksley") above, Plaintiffs' <u>Motion for Summary Judgment</u> on Count II of their <u>Amended Complaint</u> should be denied.

### d.  <u>Plaintiffs are not entitled to Declaratory Relief against Nicholson or Parksley.</u>

Further, Plaintiffs are not entitled to declaratory relief against Nicholson or Parksley. Plaintiffs cite cherry-picked language from <u>S.C. State Bd. of Dentistry v. FTC</u>, 455 F.3d 436, 447 (4th Cir. 2006) to support declaratory relief but the case is not helpful to them. That is an unfair competition case concerning the application of a relevant statute and has no application to the current litigation. Further, Qualified Immunity is a defense against alleged constitutional violations from tortious and unconstitutional conduct. A declaratory action interprets a statute, contract, or legal document and has nothing to do with a tortious act or constitutional violation. If you have a claim for monetary damages, you do not file for declaratory relief.

### VI.    <u>CONCLUSION</u>

**WHEREFORE**, for the reasons set forth herein, this Court should (1) deny Plaintiffs' <u>Motion for Summary Judgment</u>; (2) grant Defendants' <u>Motion for Summary Judgment</u> on all counts of Plaintiffs' <u>Amended Complaint</u> and dismiss the same with prejudice, and (3) provide such other and further relief as the justice of the cause requires.

Respectfully submitted this 5th day of May 2025:

**TOWN OF PARKSLEY, VIRGINIA AND HENRY NICHOLSON**

<u>/s/ Andrew C. Harding</u>
Of Counsel

Richard H. Matthews, Esq.
Virginia State Bar No. 16318
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462-3026
(757) 490-6256 – Telephone/ Facsimile
Email: rmatthew@pendercoward.com
*Counsel for Defendants*

Anne C. Lahren, Esq.
Virginia State Bar No. 73125
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462-3026
(757) 490-6293 – Telephone/ Facsimile
E-Mail: alahren@pendercoward.com
*Counsel for Defendants*

Andrew C. Harding, Esq.
Virginia State Bar No. 96820
PENDER & COWARD, P.C.
709 Greenbriar Parkway
Chesapeake, VA 23320
(757) 490-6251 – Telephone/ Facsimile
E-Mail: aharding@pendercoward.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such electronic filing (NEF) to the following:

Paul M. Sherman, Esq.
Dylan Moore, Esq.
Matthew Liles, Esq.
INSTITUTE FOR JUSTICE
901 Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320 – Telephone
(703) 682-9321 – Facsimile
E-Mail: psherman@ij.org
E-Mail: dmoore@ij.org
E-Mail: mliles@ij.org
*Counsel for Plaintiffs*

Justin Pearson, Esq.
INSTITUTE FOR JUSTICE
2 South Biscayne Blvd., Suite 3180
Miami, Florida 33131
(305) 721-1600 - Telephone
(305) 721- 1601 - Facsimile
E-Mail: jpearson@ij.org
*Counsel for Plaintiffs*

*/s/ Andrew C. Harding*
Of Counsel